## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHER DIVISION

RICHARD L. BAIRD,

      Plaintiff,

v

DANA M. NESSEL, FADWA A.
HAMMOUD, and KYM L. WORTHY,

      Defendants.

_____/

Case No.: 2:24-cv-11205

Judge: Robert J. White

Magistrate: Kimberly G. Altman

**42 USC 1983**
**Oral Argument Requested**

---

## PLAINTIFF'S ANSWER TO DEFENDANT ATTORNEY GENERAL DANA NESSEL'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)

The Plaintiff, Richard L. Baird ("Mr. Baird"), through his attorneys, concedes that Defendant Dana M. Nessel ("Defendant" or "Nessel") has filed her Motion to Dismiss under FRCP 12(b)(6). However, Plaintiff rejects her claim that she enjoys absolute or qualified prosecutorial immunity for the actions enumerated in the Complaint initiating this lawsuit.

Moreover, Mr. Baird asserts that FRCP 12(b)(6) is ill-suited for Defendant's Motion, which argues her non-involvement in the criminal case against Mr. Baird, a contention properly addressed under Rule 56 through a Motion for Summary Judgment. Therefore, Mr. Baird demands the opportunity for discovery on this matter before this Honorable Court renders its decision.

Respectfully Submitted By:

Dated: August 22, 2024

*/s/ Michael B. Rizik, Jr.*
Michael B. Rizik, Jr. (P33431)
RIZIK & RIZIK
Attorney for Plaintiff
9400 S. Saginaw St., Ste. E
Grand Blanc, MI 48439
Phone: (810) 953-6000
Cell: (810) 610-2673
lawyers@riziklaw.com


Dated: August 22, 2024

*/s/ Michael W. Edmunds*
Michael W. Edmunds (P55748)
Gault Davison, PC
Co-Counsel for Plaintiff
8305 S. Saginaw St., Ste. 8
Grand Blanc, MI 48439
Phone: (810) 234-3633
medmunds@gaultdavison.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHER DIVISION

RICHARD L. BAIRD,

      Plaintiff,

v

DANA M. NESSEL, FADWA A.
HAMMOUD, and KYM L. WORTHY,

      Defendants.

_____/

Case No.: 2:24-cv-11205

Judge: Robert J. White

Magistrate: Kimberly G. Altman

**42 USC 1983**
**Oral Argument Requested**

## PLAINTIFF'S BRIEF OPPOSING DEFENDANT DANA NESSEL'S
## MOTION TO DISMISS

Michael B. Rizik, Jr. (P33431)
RIZIK & RIZIK
Attorney for Plaintiff
9400 S. Saginaw St., Ste. E
Grand Blanc, MI 48439
Phone: (810) 953-6000
Cell: (810) 610-2673
lawyers@riziklaw.com

Michael W. Edmunds (P55748)
Gault Davison, PC
Counsel for Plaintiff
8305 S. Saginaw St., Ste. 8
Grand Blanc, MI 48439
Phone: (810) 234-3633
medmunds@gaultdavison.com

Dated: August 22, 2024

## **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

Table of Contents ……………………………………………………...……………i

Index of Authorities ……………………………………………………………ii-iv

Index of Exhibits ……………………………………………………………………...v

Concise Statement of Issues Presented ………………………………….……...….vi

Controlling Or Most Appropriate Authority …………………...……………….…...vi

Introduction ……………………………………………………….……………1

Statement of Facts ……………………………………………………………2

Standard of Review …………………………………………………………...2

Argument ……………………………………………………………………..4

I.    Dana Nessel was involved in the underlying criminal prosecutions, despite publicly posturing that there was an ethical firewall between the criminal case and the underlying civil water cases. In any event, Nessel presented facts outside the Complaint, and the Court should disregard them or treat this as a Rule 56 Motion for Summary Judgment and allow discovery on her involvement …………………...……………….……...………………4

II.   Attorney General Dana Nessel does not enjoy absolute prosecutorial immunity from this 42 USC 1983 lawsuit …………………………………...7

III.  Attorney General Dana Nessel does not enjoy qualified prosecutorial immunity from this 42 USC 1983 lawsuit ………………………………….14

Conclusion and Relief Requested ……………………………………………22

Certificate of Service (E-Filing)………………………………………………...23

i

# INDEX OF AUTHORITIES

**Cases**                                                                    <u>Page</u>

<u>Albright</u> v. <u>Oliver</u>, 510 U.S. 266, 269-71; 114 S. Ct. 807, 810-812 (1994) ...…16, 17

<u>Amini</u> v. <u>Oberlin Coll</u>*.,* 259 F.3d 493, 502 (6th Cir. 2001) …………………..…….3

<u>Ashcroft</u> v. <u>Iqbal</u>, 556 US 662, 678; 129 S Ct 1937; 173 L Ed 2d 868,
        884 (2009) ...........................................................................................4, 11, 12

<u>Bassett</u> v. <u>NCAA</u>, 528 F3d 426, 430 (CA 6, 2008) ………..……………………….3

<u>Buckley</u> v. <u>Fitzsimmons</u>, 509 U.S. 259; 113 S. Ct. 2606; 125
        L Ed 2d 20 (1993) ………...........................................……………...8, 11

<u>Coleman</u> v. <u>Alabama</u>*,* 399 US 1; 90 S Ct 1999; 26 L Ed 2d 387 (1970) …...……..20

<u>Courser</u> v. <u>Michigan House of Representatives</u>, 404 F. Supp. 3d 1125,
        1139 (W.D. Mich. 2019) ......................…………………...………………...3

<u>Gerstein</u> v. <u>Pugh</u>, 420 U.S. 103, 125 n26; 95 S. Ct. 854; 43
        L Ed 2d 54 (1975) …………...........................................................…..16

<u>Greenholz</u> v. <u>Nebraska Penal Inmates</u>, 442 U.S. 1…....…………...……..………...19

<u>Hicks</u> v. <u>Oklahoma</u>*,* 447 U.S. 343; 100 S. Ct. 2227; 65 L
        Ed 2d 175 (1980) ...........................................………....…..….... 18-20

<u>Holloway</u> v. <u>Brush</u>, 220 F.3d 767, 775 (CA 6, 2000) ……………..….………...11

<u>Imbler</u> v. <u>Pachtman</u>, 424 U.S. 409; 419 n 13; 96 S. Ct. 984; 47 L Ed
        2d 128, 137 (1976) ...……………………………………………………...…7

<u>Jaben</u> v. <u>United States</u>, 381 U.S. 214, 85  S. Ct. 1365, 14 L. Ed. 2d 345 (1965) ...…15

<u>Kalina</u> v. <u>Fletcher</u>*,* 522 US 118, 126; 118 S Ct 502; 139 L Ed 2d  471, 479 (1997)…..8

<u>Paul</u> v. <u>Davis</u>*,* 424 U.S. 693; 96 S. Ct. 1155;  47 L. Ed. 2d 405, (1976) …….……17

<u>People</u> v. <u>Baird</u>, 7th Cir Court Case No. 21-47375-FH ...............……………….……18

People v. Duncan, 388 Mich 489, 498-99; 201 NW2d 629 (1972) ………..……22

People v. Green, 322 Mich App 676; 913 NW2d 385 (2018) ……..………...13, 14

People v. Kennedy, ___NW2d___; 2023 Mich. App. LEXIS 9172
      (Ct App, Dec. 14, 2023) ……....….….……....…………………..…21, 22

People v. Lyon, 7ᵗʰ Judicial Circuit Case No. 21-47378-FH
      (Supreme Court No. 164191; Court of Appeals No. 360548) ..........…..13, 14

People v. Peeler, 509 Mich. 381; 984 N.W.2d 80 (2022) ……….…………… *passim*

People v. Tracy, 186 Mich App 171, 177-78; 463 NW2d 457 (1990) …………...10

Pierce v. Bailey, ___F Supp 3d___; 2023 U.S. Dist. LEXIS 134175,
      at 8 (WD Mich, July 10, 2023) ..............……..……………...………….3

Rondigo, LLC v. Twp of Richmond, 641 F.3d 673, 682 (6ᵗʰ Cir. 2011) …..……...…3

Spinelli v. United States, 382 F.2d 871, 887 (CA 8 1967) ………………………15

Spurlock v. Thompson, 330 F3d 791, 799 (CA 6, 2003) …………………………10

United States v. Mulligan, 520 F2d 1327 (6ᵗʰ Cir. 1975) …………..…...14, 15, 16

Vincent v. United States, 337 F.2d 891 (CA 8 1964) ………………….…...16

**Statutes**

18 U.S.C. § 3321-3332 ……………....…………………………………15

42 U.S.C. § 1983 …………………………………………...…… *passim*

Mich. Comp. Laws § 761.1(g) ……………………………………………20

Mich. Comp. Laws § 767.3 …………………………………..…… *passim*

Mich. Comp. Laws § 767.4 …………………………………..… *passim*

Mich. Comp. Laws § 767.42 …………………………………………...………..11, 14

Mich. Comp. Laws § 767.42(1) ………………………………………...………20

Okla. Stat. Tit. 22, § 926 (1971) …………………………...………………19

Rev. Stat. § 1979 ………………………………………………………..16

**Rules**

ABA Model Rules 1.1-1.3 …………………..…………………………………..9

ABA Model Rules 3.3 ……………………….…………………………..………9

ABA Model Rules 3.8 ………………………………………………………..9

Fed. R. Civ. P. 6 ………………………………………..…………15

Fed. R. Civ. P. 12 …………………………………………………………..4

Fed. R. Civ. P. 12(b)(6) ……………………………………………...…..*passim*

Fed. R. Civ. P. 12(d) ………………………………………………….......3

Fed. R. Civ. P. 15(a)(2) ……………………………………………....18

Fed. R. Civ. P. 56 ……………………………………………………...…..5, 7

Fed. R. Civ. P. 56(a) ………………………..…..…………………………..4

Fed. R. Evid. 201 …………………………………..…………………..…....…5, 12, 13

MRPC 3.8…………………………………………………….……………..…..9

# INDEX OF EXHIBITS

**Exhibit 1**        Plaintiff's Complaint

**Exhibit 2**        June 13, 2019, Press Release issued by Dana Nessel

**Exhibit 3**        Affidavit of James Haveman

**Exhibit 4**        Multiple emails from March 16, 2021 that include Nessel regarding the Flint criminal water cases

**Exhibit 5**        Order for Appointment of One Person Grand Jury Pursuant to MCL 767.3

**Exhibit 6**        Order to Extend One Person Grand Jury Pursuant to MCL 767.4

**Exhibit 7**        Defendant Appellant Nicolas Lyon's Supplemental Brief in Support of Bypass Application for Leave to Appeal

**Exhibit 8**        7th Circuit Court Case Details in <u>People</u> v. <u>Nicolas Lyon</u>

**Exhibit 9**        7th Circuit Court Case Details in <u>People</u> v. <u>Richard L. Baird</u>

**Exhibit 10**       Proposed First Amended Complaint

## CONCISE STATEMENT OF ISSUES PRESENTED

1. Whether Defendant Dana Nessel was involved in the underlying criminal prosecutions despite publicly posturing that there was an ethical firewall between the criminal case and the underlying City of Flint civil water cases, and whether Nessel presented facts outside of the Complaint so that this Court should disregard them or treat this as a Rule 56 Motion for Summary Judgment and allow discovery on her involvement.

2. Whether Defendant Dana Nessel enjoys absolute prosecutorial immunity from a lawsuit under 42 U.S.C. § 1983, when she and the other Defendants cut corners during the "investigative phase" of the criminal prosecution against Plaintiff, secretly indicted him, then refused to allow a preliminary examination.

3. Whether Defendant Dana Nessel is entitled to qualified immunity from a lawsuit under 42 U.S.C. § 1983 when she cut corners during the "investigative phase" of the criminal prosecution against Plaintiff, secretly indicted him, then refused to allow a preliminary examination.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

1. Albright v. Oliver, 510 U.S. 266; 114 S. Ct. 807 (1994);
2. Hicks v. Oklahoma, 447 U.S. 343; 100 S. Ct. 2227 (1980);
3. Imbler v. Pachtman, 424 U.S. 409; 96 S. Ct. 984 (1976);
4. People v. Peeler, 509 Mich. 381; 984 N.W.2d 80 (2022);
5. 42 U.S.C § 1983; and
6. MCL 767.3, 767.4 & 767.42.

## INTRODUCTION

In June 2022, the Michigan Supreme Court rebuked the Attorney General and her assistants for denying Plaintiff and others their rights to Procedural Due Process under the statutes of the State of Michigan. In a stinging denunciation of the prosecutors, Chief Justice Bridget M. McCormack wrote for the unanimous Court that MCL 767.3 and MCL 767.4 were investigative statutes that required a preliminary examination after an indictment by the so-called one-person grand jury. People v. Peeler, 509 Mich. 381; 984 N.W.2d 80 (2022). In his concurring opinion, Justice Richard Bernstein was critically blunt. He stressed that "procedure matters" (Id at p. 401), a thinly veiled euphemism for "lack of procedural due process." Without precedent in his career, he admonished the prosecutors: "The prosecution cannot simply cut corners in order to prosecute defendants more efficiently." (Id at p. 404). He said that the prosecutors may not whimsically eliminate "the guarantees underpinning that criminal process – such as the statutory right to a preliminary examination..." (Id).

Plaintiff contends that these Peeler rulings and others emphasize the only reasonable and objective interpretations of Michigan law, specifically that MCL 767.3 and MCL 767.4 are investigative statutes that never authorized prosecutors to use them to indict secretly, which Chief Justice McCormick referred to as "a Star Chamber comeback…" (Peeler, at p. 386); and the Defendants cannot shield

themselves behind absolute or qualified prosecutorial immunity for systematically denying Plaintiff his constitutional due process rights, and rights against unreasonable searches and seizures, which, in this case, includes the right to a preliminary examination. Defendants opened Pandora's box with their misfeasance and malfeasance, inviting endless cycles of retribution by successive administrations from the opposing political parties. This undermines the Constitutional due process system, potentially leading to chaos and violence. In W. B. Yeats's words, "the centre cannot hold." https://poets.org/poem/second-coming (Last viewed July 26, 2024). Mr. Baird stands crosswise to this threat and yells, "Stop!"

## STATEMENT OF FACTS

The Attorney General generally summarized this case's factual background on pages 2-8 of her Brief. Therefore, it is unnecessary to reiterate them here. However, Nessel introduced facts and documents outside the Complaint. Mr. Baird will do the same and asks this Court to admit the attached Press Releases and other government documents and the public record, and take judicial notice of them for the same reasons stated in Nessel's Brief. If further facts are necessary, Plaintiff will cite them for the Court and Defendants' counsel.

## STANDARD OF REVIEW

The Attorney General has generally but incompletely stated the Standard of Review for an FRCP 12(b)(6) Motion. Typically, "when deciding a motion to dismiss

for failure to state a claim under Rule 12(b)(6), a court's review is limited to the four corners of the pleading at issue." (Fed. R. Civ. P 12(d); *see also* <u>Courser v. Michigan House of Representatives</u>, 404 F. Supp. 3d 1125, 1139 (W.D. Mich. 2019) (noting that '[i]n general, in deciding a Rule 12(b)(6) motion to dismiss the court is limited to considering only the pleadings') (*citing* <u>Rondigo, LLC v. Twp of Richmond</u>, 641 F.3d 673, 682 (6th Cir. 2011))." (<u>Pierce v. Bailey</u>, ___F Supp 3d___; 2023 U.S. Dist. LEXIS 134175, at 8 (WD Mich, July 10, 2023).) Here, Nessel alleged that this is only a Rule 12(b)(6) Motion to Dismiss. Yet, she cited facts extraneous to the only pleading filed, namely, the Complaint. Also:

> "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss *so long as they are referred to in the Complaint* and are central to the claims contained therein. See <u>Amini</u> v. <u>Oberlin Coll.</u>, 259 F.3d 493, 502 (6th Cir. 2001)." (<u>Bassett v. NCAA</u>, 528 F.3d 426, 430 (6th Cir. 2008). Emphasis supplied.)

Many of the items referenced in Nessel's Brief and appearing in public records were not mentioned in the Complaint. However, Mr. Baird will address them in this Brief and asks the Court to admit the attached exhibits and take the same judicial notice of them for the identical reasons stated in footnote 8, on page 19 of Nessel's Brief.

A Motion to Dismiss under FRCP 12(b)(6) is not considered a pleading in the Sixth Circuit. A Motion to Dismiss under Rule 12(b)(6) is a procedural device used

to test the legal sufficiency of Mr. Baird's Complaint. It is not classified as a pleading but rather as a Motion that must be filed before the responsive pleading if one is required. (FRCP 12).

According to Ashcroft v. Iqbal, 556 U.S. 662, 678; 129 S. Ct. 1937, 1949 (2009):

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' Id. at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929. *A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.* Id. at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. *The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.* Id. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' Id. at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (brackets omitted). Emphasis supplied.

Here, Mr. Baird has stated a plausible 42 USC §1983 claim.

According to Rule 56(a):

> "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment *if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law*. The court should state on the record the reasons for granting or denying the motion." (Emphasis supplied).

## ARGUMENT

**I.  Dana Nessel was involved in the underlying criminal prosecutions, despite publicly posturing that there was an ethical firewall between the criminal case and the underlying civil water cases. In any event, Nessel presented facts outside the Complaint, and the Court should disregard**

**them or treat this as a Rule 56 Motion for Summary Judgment and allow discovery on her involvement.**

Nessel argued she was not involved in the underlying criminal cases, including Mr. Baird's. (Nessel's Br. at pp. 18-21.) In her Motion to Dismiss, the Defendant introduced facts beyond the Complaint. **(Exhibit 1)** For example, on pages 18-21 of her Brief, Nessel:

1.  Asserted that upon taking office in 2019, she established an ethical firewall between the criminal and civil Flint Water Crisis cases;

2.  Referenced multiple press releases allegedly supporting her claim of non-involvement in the criminal cases; and

3.  Requested that the Court, under Federal Rule of Evidence 201, admit and take judicial notice of these press releases and other government records, thereby treating them as uncontested evidence beyond the pleadings.

Introducing these public pronouncements and press releases was inappropriate for a Rule 12(b)(6) Motion, which should be limited to assessing the sufficiency of the allegations in the Complaint. If the Defendant asserts that there is no genuine issue regarding her involvement in the criminal prosecution, she should file a Rule 56 Motion at the conclusion of discovery, allowing Mr. Baird the opportunity to investigate her claim and the supporting facts. If the Court doesn't disregard facts outside the Complaint, then for the same legal reasons stated in the Defendant's Brief, Mr. Baird asks the Court to admit and take judicial notice of the following

evidence that Nessel was indeed involved on the criminal side. Attached as **Exhibit 2** is a **June 13, 2019**, press release issued by Nessel. In it, she expressed her absolute support for dismissing the "First Wave" of criminal cases brought against various actors associated with the Flint Water Crisis. She would unlikely offer unequivocal support for something she was unaware of or lacked control over.

Attached as **Exhibit 3** is an Affidavit of James Haveman with attached **sub-Exhibits A through D**. They include a photo by Mr. Haveman of the Defendant outside the Michigan Supreme Court Courtroom during a break in oral arguments in one of the underlying criminal cases. Also, Mr. Haveman testified that he witnessed the Defendant in the back of the Courtroom during oral arguments.

There is also a FOIA exchange, another public record, between Mr. Haveman and the FOIA coordinator in May 2021, resulting in a compiled list showing the number of times in 2019, 2020, and 2021 that Nessel and her Solicitor General, Co-Defendant, Fadwa A. Hammoud, met. It is inconceivable that they met 356 times but did not discuss the underlying criminal cases. **Exhibit 4** contains multiple emails from March 16, 2021, including Nessel, regarding the Flint criminal water cases. At one point, the late Kelly Rossman-McKinney said, "I will send this to the Freep as soon as we get sign off on this from the AG. Thanks". She was referring to the statement immediately below regarding the Flint Water Crisis:

> "The process for establishing criminal wrongdoing is the same for everyone in our state, regardless of their position. In the case of Flint,

6

the prosecution team established probable cause in order to obtain and review millions of documents before indictments were issued based on existing Michigan laws. In the case of Sen. Runestad's request, simply suggesting or suspecting there was criminal wrongdoing isn't sufficient. Criminal investigations are initiated when there is cause to believe that crimes were committed. We would - and we will, if appropriate - initiate a criminal investigation when there is cause to believe crimes were committed."

For the reasons stated above, Mr. Baird respectfully requests that the Court deny Nessel's Motion to Dismiss on this topic because she was indeed involved in the criminal cases, and treat her argument as a Rule 56 Motion to allow further discovery.

## II. Attorney General Dana Nessel does not enjoy absolute prosecutorial immunity from this 42 USC 1983 lawsuit.

The Complaint **(Exhibit 1)** alleges that the Defendants, acting under color of state law, deprived Plaintiff of his constitutional due process rights through various procedural violations, including using the misnamed "one-person grand jury," bypassing traditional criminal charging processes. These allegations indicate that the Defendants' actions were not purely within their function as prosecutors but were "investigative," which would overcome a claim of absolute prosecutorial immunity.

According to Imbler v. Pachtman, 424 US 409, 419 n 13; 96 S Ct 984; 47 L Ed 2d 128, 137 (1976), "absolute immunity defeats a suit at the outset, *so long as the official's actions were within the scope of the immunity*." (Emphasis supplied). Also, absolute immunity applies only when the prosecutor's actions are "intimately

associated with the *judicial phase* of the criminal process." (Id, at p 430). (Emphasis supplied). Therefore, the distinction between the investigative and judicial phases is crucial because it determines the potential level of immunity to which a prosecutor may be eligible. While absolute immunity is granted for actions within the judicial phase, only qualified immunity *may apply* to actions within the investigative phase.

U.S. Supreme Court decisions have held that absolute prosecutorial immunity is inapplicable when the prosecutor's actions are investigative. In <u>Buckley</u> v. <u>Fitzsimmons</u>, 509 U.S. 259; 113 S. Ct. 2606 (1993), the prosecutor engaged in what the Court later ruled were investigatory activities, but then he sought absolute immunity. The Court held that when a prosecutor engaged in "investigative activities" like a police man, he deserved no more immunity than a policeman would have, namely, only "qualified immunity" (<u>Id</u>. at p. 273), which is also subject to the exceptions Mr. Baird maintains in Argument III, below.

<u>Kalina v. Fletcher</u>, 522 U.S. 118, 126; 118 S. Ct. 502 (1997) affirmed the distinctive roles when it commented on <u>Buckley</u> and said: "Similarly, in <u>Buckley</u>, the prosecutor was not acting as an advocate either when he held a press conference, 509 U.S. at 276-278, *or when he allegedly fabricated evidence concerning an unsolved crime*." (<u>Kalina,</u> supra, 552 U.S. at 125; 118 S. Ct. at 507. Emphasis supplied).

The prosecutor's actions in fabricating evidence, misusing an investigatory

8

statute to pursue an indictment secretly, and systematically denying a statutorily guaranteed preliminary examination are fundamentally equivalent in their egregious disregard for justice. Fabricating evidence involves intentionally creating false information to secure an indictment or conviction, violating both legal and ethical standards, and severely compromising the integrity of the judicial process. Likewise, when prosecutors significantly deviate from proper procedures (as noted in J. Bernstein's concurring opinion in <u>Peeler</u>, at p. 404) by exploiting investigatory statutes to obtain a judicial outcome, they pervert the legal system to reach a desired result. This manipulation circumvents the procedures established by citizens through their elected representatives to ensure fairness and justice. Such misuse distorts the intended purpose of these statutes for wrongful ends. Both actions represent procedural due process violations and constitute an unreasonable search and seizure of Mr. Baird's liberties in his underlying criminal prosecution.

Fabricating evidence violates due process by presenting falsehoods as truth, denying a defendant a fair chance to challenge the prosecution's case. Similarly, when an investigatory statute is misused to obtain an indictment without proper procedures, such as a preliminary examination, it deprives a defendant of the opportunity to contest the evidence before formal charges, impairing their defense. Both actions represent severe prosecutorial misconduct, breaching ethical and legal standards (e.g., ABA Model Rules 1.1-1.3, 3.3, 3.8; MRPC 3.8), and abusing powers

meant for investigation, not initiating charges.

In <u>Peeler</u>, the Michigan Supreme Court field-dressed Mr. Baird's indictment when it reversed the Defendants' refusal to allow a preliminary examination. (<u>Peeler,</u> supra, 509 Mich. at p. 400) It held that MCL 767.3 and 767.4 authorized an investigation, among other things. However, "… they do not authorize the judge to issue indictments." <u>Id</u>. Defendants intentionally misapplied investigative tools to secure Mr. Baird's indictment and deny him a preliminary examination. In doing so, they exceeded their investigatory authority without properly transitioning into the judicial phase of the criminal process. In other words, "…[W]here the role as advocate has not yet begun, namely prior to indictment, … absolute immunity does not apply. (<u>Spurlock v. Thompson</u>, 330 F.3d 791, 799 (6th Cir. 2003).) Here, the role as an advocate had not commenced because Defendants were still "prior to indictment" when they "indicted" Mr. Baird under investigatory statutes and then refused to allow a preliminary examination.

The "investigatory phase" is preliminary and involves police and prosecutorial activities to gather evidence and build a case against a suspect. This phase includes obtaining search warrants, interrogating, and collecting physical evidence. During this phase, constitutional guarantees premised on criminal prosecutions, such as the right to counsel, do not apply because formal charges have not yet been filed. (<u>People</u> v. <u>Tracy</u>, 186 Mich App 171, 177-78; 463 NW2d 457 (1990)). In contrast, the

"judicial phase" begins when formal charges are appropriately filed with the Court, marking the initiation of judicial criminal proceedings. This phase includes arraignments, preliminary examinations, trials, and sentencing. The judicial phase is characterized by applying constitutional protections, such as the right to a speedy trial, the right to counsel, and the right to confront witnesses. Id.

In Mr. Baird's case, the Defendants remained confined in the investigatory phase, and their actions were restricted to investigative activities without the oversight that characterizes the judicial phase, such as presenting evidence to an independent judge or a citizen grand jury. This absence of a formal judicial process underscores that the Defendants were still operating within the investigative phase, not the judicial phase. Here, since there was no citizens grand jury, the appropriate next step would have been to present this evidence to an independent judge during a preliminary examination through MCL 767.42, allowing an independent person to assess whether probable cause existed for the bind over to trial and to deprive Mr. Baird his various liberties.

According to Holloway v. Brush, 220 F.3d 767, 775 (6th Cir. 2000):

> The actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor. Qualified immunity represents the norm . . . . The question, then, is whether the prosecutors have carried their burden of establishing that they were functioning as 'advocates' when they performed the actions complained of." (Buckley, supra, 509 U.S. at 273-74.)

Based on these arguments and when applying the Ashcroft "plausibility"

standard, Mr. Baird has pleaded appropriate *"factual content that allows the Court to draw the reasonable inference that the Defendants are liable for the misconduct alleged…"* (Ashcroft, supra, 556 U.S. at 678; 129 S. Ct. at 1949.) The Complaint extensively details the events leading up to Mr. Baird's indictment. **(Exhibit 1, ¶¶10-19; 23-45)** It alleges that Defendants violated 42 USC § 1983 by using the investigative statutes to indict Mr. Baird. (Id. at ¶48(A)). Plausible is "having an appearance of truth or reason; seemingly worthy of approval or acceptance; credible; believable…". (https://www.dictionary.com/browse/ plausible. (Last viewed on **July 12, 2024**).

It is unrebutted that on **January 9, 2020**, upon the petition of the AG's office, Hon. Duncan J. Beagle, Chief Judge of the Seventh Circuit Court in Genesee County, issued an Order appointing Judge David Newblatt to *investigate* the Flint water crisis and determine if charges should be brought. **(Exhibit 5,** Order for Appointment of One Person Grand Jury under MCL 767.3.) The Defendants and Judge were authorized *to investigate* - nothing more! **On June 4, 2020**, Judge Newblatt *sua sponte* extended his authority for another six months. **(Exhibit 6**, Order to Extend One Person Grand Jury Pursuant to MCL 767.4.) This incorporated by reference the **January 9, 2020** Order *but did not expand Judge Newblatt's powers to file criminal charges*. Mr. Baird asks the Court to judicially notice these facts pursuant to FRE 201.

Defendants contend that <u>People</u> v. <u>Green</u>, 322 Mich App 676; 913 NW2d 385 (2018), authorized their indictment of Mr. Baird without a preliminary exam under MCL 767.3 and 767.4, suggesting that they moved into the judicial phase. However, in a companion criminal case related to the Flint Water Crisis, <u>People</u> v. <u>Nicolas Lyon,</u> Genesee County Circuit Case No. 21-47378-FH (Supreme Court No. 164191; Court of Appeals No. 360548), Mr. Lyon's attorneys shot that down, quoting exact language from <u>Green</u>. They successfully argued the inconsistency between <u>Green</u>'s language and the ruling on which Defendants relied:

> <u>People v. Green</u>, 322 Mich App 676; 913 NW2d 385 (2018), upon which the trial court relied substantially, superficially appears to provide some guidance, but it is inapposite. There the defendant alleged ineffective assistance of counsel on the basis that counsel had not challenged violations of rights to counsel and confrontation due to the use of the *one-person judicial inquiry*. In rejecting the claim, the Court of Appeals observed that the procedure
>
>> '*is used to determine whether criminal proceedings should be instituted against an individual by way of an indictment, there is not yet a formal charge, preliminary hearing, indictment, information, or arraignment that indicates adversarial judicial proceedings have begun*… 322 Mich App at 685.
>>
>> <u>*Green*</u> *acknowledges that the judicial officer's function is limited to investigation, not charging*. Moreover, nothing in the dicta remotely suggests that the judicial officer has the authority to charge. It suggests otherwise. The court specifically underscored that the inquiry precedes any 'formal charge' or 'preliminary hearing.'" (**Exhibit 7,** Defendant-Appellant Lyon's Supplemental Brief In Support of Bypass Application for Leave to Appeal, p. 13. Emphasis supplied.)

Finally, the Defendant cannot claim ignorance of the proper procedures. Notably,

in <u>People</u> v. <u>Nicolas Lyon</u>, during the so-called "First Wave" of criminal cases, Defendant Nessel and the Defendants' office investigated Mr. Lyon under MCL 767.3 and 767.4. Then, they proceeded with a preliminary examination under MCL 767.42. **(Exhibit 8,** Genesee County Circuit Court Case Details in <u>People</u> v. <u>Nicolas Lyon;</u> see entries #1, 14, 15, 17 & 18). This reinforces that such steps are necessary to transition from investigation to prosecution. The failure to follow these steps in Mr. Baird's case indicates that the process did not move to the judicial phase. Mr. Baird asks this Court to admit and judicially notice these public records. Despite following proper procedure, on June 13, 2019, Defendant Nessel's office bizarrely announced the dismissal of the <u>Lyon</u> criminal case. (Nessel's Br. at p. 5).

In sum, based on the above-cited statutes, the facts, <u>Peeler</u> and <u>Green</u>, it is plausible that the Defendants acted unlawfully, do not have absolute prosecutorial immunity, and Mr. Baird should be allowed to prosecute this civil case.

## III.   Attorney General Dana Nessel does not enjoy qualified prosecutorial immunity from this 42 U.S.C 1983 lawsuit.

Next, the Defendant claims that she enjoys qualified immunity even if she doesn't enjoy absolute prosecutorial immunity. (Nessel Br. at pp 12-17). **That is false** because there are clearly established federal constitutional rights involved here: 1) Procedural Due Process guaranteed by the Fifth and Fourteenth Amendments; and 2) the Fourth Amendment right to be free of Unreasonable Searches and Seizures.

Defendant argued that <u>United States</u> v. <u>Mulligan</u>, 520 F.2d 1327 (6th Cir. 1975)

14

held no federal right to a preliminary examination. (Nessel Br. at p. 13.) However, Mulligan and Mr. Baird's underlying criminal case are objectively different. Mulligan's federal grand jury in the Eastern District of Michigan operated under federal law (e.g., 18 U.S.C § 3321-3332) and was governed by the Federal Rules of Criminal Procedure (Rule 6). It was composed of multiple jurors selected through a detailed process with the authority to investigate, make probable cause findings, and indict individuals for federal offenses. (Mulligan, supra, 520 F.2d at 1329). In contrast, Michigan's one-person grand jury in the underlying criminal case is governed by MCL 767.3 and 767.4. It involved a single judge *investigating* allegations of criminality within a defined scope. Unlike the federal grand jury, this so-called "grand juror" had significant discretion *but couldn't indict or make probable cause findings to issue criminal charges* (MCL 767.4; Peeler, supra, 509 Mich. at 394-396). Consequently, Mulligan is inapplicable.

In any case, the Mulligan Court also indicated that a preliminary examination was necessary unless a federal grand jury issued a "true bill" or formal decision by a grand jury that sufficient evidence existed to indict a person and charge them with a crime:

> "*Action by the grand jury in returning the indictment* brought formal charges against the accused and thus superseded the complaint procedure and eliminated *the necessity of a preliminary hearing*. Jaben v. United States, 381 U.S. 214, 85 S. Ct. 1365, 14 L. Ed. 2d 345 (1965); Spinelli v. United States, 382 F.2d 871, 887 (CA 8 1967), rev'd on other grounds, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969). *If the*

15

> *grand jury returns a true bill prior to the time a preliminary hearing is held, the whole purpose and justification of the preliminary hearing has been satisfied*.  <u>Vincent</u> v. <u>United States</u>, 337 F.2d 891 (CA 8 1964), cert. den.  380 U.S. 988, 85 S. Ct. 1363, 14 L. Ed. 2d 281." (<u>Mulligan</u>, <u>supra,</u> 520 F.2d at p. 1329). (Emphasis supplied).

Defendant also cited <u>Gerstein</u> v. <u>Pugh</u>, 420 U.S. 103, 125 n.26; 95 S. Ct. 854 (1975), arguing that the U.S. Constitution does not require a judicial determination of probable cause "as a prerequisite *to prosecution.*" (Nessel Br. at p. 14. Emphasis supplied). **<u>Gerstein</u> doesn't say that**. It says that "the probable cause determination is not a constitutional prerequisite to the *charging decision...*" (<u>Gerstein, supra,</u> 420 U.S. at, 125 n.26. Emphasis supplied). A *charging decision* is a preliminary step in which a prosecutor decides whether to file charges based on the evidence. The *prosecution* is the subsequent legal process in court to adjudicate the filed charges. In any event, Nessel overlooked the central holding in <u>Gerstein</u>. That case focused on *restraints on liberty* following an arrest. In fact, the <u>Gerstein</u> rulings support Mr. Baird's position and undermine the Defendant's claim of qualified immunity.

In <u>Albright v. Oliver</u>, 510 U.S. 266, 269-71; 114 S. Ct. 807, 810-812 (1994), where the Defendant voluntarily surrendered to law enforcement authorities, the Supreme Court explained <u>Gerstein</u>, stating:

> "<u>Albright</u> then instituted this action under Rev. Stat. § 1979, 42 U.S.C. §1983, against Detective Oliver in his individual and official capacities, alleging that Oliver deprived him of substantive due process under the Fourteenth Amendment -- his 'liberty interest' -- to be free from criminal prosecution except upon probable cause. The District Court granted respondent's motion to dismiss under Rule 12(b)(6) on the

16

ground that the complaint did not state a claim under § 1983. The Court of Appeals for the Seventh Circuit affirmed, 975 F.2d 343 (1992), relying on our decision in <u>Paul</u> v. <u>Davis</u>, 424 U.S. 693, 47 L. Ed. 2d 405, 96 S. Ct. 1155 (1976). *The Court of Appeals held that prosecution without probable cause is a constitutional tort actionable under § 1983 only if accompanied by incarceration or loss of employment or some other 'palpable consequence.'* 975 F.2d at 346-347. The panel of the Seventh Circuit reasoned that 'just as in the garden-variety public-officer defamation case that does not result in exclusion from an occupation, state tort remedies should be adequate and the heavy weaponry of constitutional litigation can be left at rest.' Id., at 347. 4 We granted certiorari, 507 U.S. 959 (1993), and while we affirm the judgment below, we do so on different grounds. *We hold that it is the Fourth Amendment, and not substantive due process, under which petitioner Albright's claim must be judged*. (<u>Albright, supra,</u> 510 U.S. at p. 268; 114 S. Ct. at 810. Emphasis supplied).

Although the Supreme Court stopped short of holding that a Fourth Amendment claim would support a §1983 case "since he has not presented that question in his petition for certiorari..." it did not repudiate the Seventh Circuit's holding that "prosecution without probable cause is a constitutional tort actionable under § 1983 only if accompanied by incarceration, loss of employment, or some other 'palpable consequence.'" (Id, at p. 274)

Like <u>Albright</u>, Mr. Baird's voluntary surrender to law enforcement after arraignment constituted a Fourth Amendment seizure. According to the Complaint, Defendants avoided a preliminary examination, contrary to the clear language in Michigan statutes, causing Mr. Baird to spend about $800,000.00 on his defense and suffer severe depression, pain, suffering, emotional distress, and damage to his sterling reputation. After his indictment, arraignment, and booking, his passport was

confiscated, and his travel rights within the U.S. were restricted. These were "palpable consequences" of a Fourth Amendment seizure *without a proper probable cause finding*.[1] (**Exhibit 9**, Case Details for <u>People v.</u> <u>Richard L. Baird</u>, Genesee Circuit Court Case No. 2021-47375-FH, entry #3). Plaintiff asks that **Exhibit 9** be admitted and that this Court take judicial notice of the public record.

The U.S. Supreme Court also ruled that once a state establishes a statutory procedure for a criminal defendant, the prosecutor must follow it or risk violating federal Constitutional procedural due process. In <u>Hicks v. Oklahoma</u>, 447 U.S. 343; 100 S. Ct. 2227 (1980), Hicks was convicted of distributing heroin and, due to two prior felony convictions within ten years, was sentenced to 40 years under Oklahoma's habitual offender statute. (<u>Hicks</u>, supra, 447 U.S. at p. 344) After his conviction, the provision mandating the 40-year sentence was declared unconstitutional in another case. (Id. at p. 345) Hicks appealed to vacate his sentence based on that ruling. (<u>Id.</u>) The Oklahoma Court of Criminal Appeals acknowledged the provision was unconstitutional. Still, it upheld Hicks' conviction and sentence, reasoning that his sentence was within the permissible range of another valid statute requiring at least 10 years for his offense and history. (Id). Hicks then appealed to the U.S. Supreme Court. (Id).

---

[1] Under FRCP 15(a)(2), the Plaintiff asks this Court for leave to file **Exhibit 10**, the First Amended Complaint, alleging a Fourth Amendment unreasonable search and seizure without probable cause.

The U.S. Supreme Court granted certiorari to review Hick's claim that the State deprived him of due process of law as guaranteed by the Fourteenth Amendment by not allowing a jury to sentence him. (Id. at 346-47; 2229-30.) The U.S. Supreme Court ruled that Oklahoma statute, Okla. Stat. Tit. 22, § 926 (1971), entitled the defendant to jury sentencing. (Id, at p 347). The jury could have imposed 10+ years with the proper instruction. (Id). There was a substantial possibility of less than 40 years. (Id). Hicks, therefore, had a *liberty interest* in the jury's sentencing discretion that the state arbitrarily denied by applying the invalid 40-year mandatory provision. By affirming the invalid sentence, Oklahoma deprived Hicks of his *liberty without due process*. (Id, at p. 346-347). The Court said:

> "Where, however, a State has provided for the imposition of criminal punishment in the discretion of the trial jury, *it is not correct to say that the defendant's interest in the exercise of that discretion is merely a matter of state procedural law*. The defendant in such a case has a *substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion, cf.* Greenholz v. Nebraska Penal Inmates, 442 U.S. 1, *and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State.* (Id, Emphasis supplied).

The central principle in Hicks is that once the state has enshrined a criminal procedure in a statute, it is a federal constitutional violation for the state not to follow it. Similarly, in Peeler and here, the Michigan Supreme Court recognized a plainly written statutory right to a preliminary examination for those indicted by a one-person grand jury. If the State denies that right, it would be a due process violation,

19

much like the denial of the sentencing procedure in <u>Hicks</u>.

For <u>Hicks</u>, the failure to follow state statutory procedures resulted in fundamental unfairness rising to the level of a procedural due process violation. According to <u>Peeler,</u> denying a preliminary examination resulted in the same fundamental unfairness to Mr. Baird, depriving him of an essential procedural safeguard to prevent unwarranted prosecutions.

For <u>Hicks</u>, the State's procedural guarantees, once established, must be followed, and failure to do so was a Fourteenth Amendment procedural due process violation. A plain reading of MCL 761.1(g), 767.3, 767.4, 767.42(1), and <u>Peeler</u> established that a preliminary examination was and is a procedural guarantee under state law. Therefore, failure to provide this examination was also a violation of procedural due process, following the logic of <u>Hicks</u> with the consequent "palpable consequences" stated above.

In <u>Coleman v. Alabama</u>, 399 US 1; 90 S Ct 1999; 26 L. Ed. 2d 387 (1970), the preliminary hearing was not a statutory requirement (unlike in Michigan) but a procedural step that Alabama employed in its criminal justice process. (Id, at p. 7). The "purposes of a preliminary hearing are to determine whether there is sufficient evidence against the accused to warrant presenting his case to the grand jury, and, if so, to fix bail if the offense is bailable." (Id, at p. 8). The United States Supreme Court held that a preliminary examination was such a "critical stage" of the

prosecution's case and that the defendant had the constitutional right to legal counsel.

Similarly, in this case, the statutorily guaranteed preliminary examination in Michigan is a "critical stage" in the prosecution, underpinning the criminal defendant's other constitutional rights. It determines whether sufficient evidence justifies holding the defendant to answer for the charges. This prevents individuals from being unjustly deprived of life, liberty, and property without probable cause. It acts as a filtering process to weed out cases that lack sufficient evidence, thereby safeguarding the defendant from unwarranted prosecution. Skilled questioning and cross-examination by defense counsel during the preliminary examination can create valuable impeachment tools for use at trial. Issues raised during the preliminary examination can set the stage for pre-trial motions, such as motions to suppress evidence or dismiss charges based on the lack of probable cause. In sum, the preliminary examination ensures that a defendant is fully aware of the charges and the evidence against them, which is essential for preparing a fair defense, something that a mere arraignment does not safeguard.

The right to a preliminary examination was established before Peeler, which was affirmed in People v. Kennedy, ___NW2d___; 2023 Mich. App. LEXIS 9172 (Mich. Ct. App. Dec. 14, 2023), a Michigan Court of Appeals case discussing Peeler's retroactivity. There, the Court stated that for retroactivity purposes, Peeler did not

announce a new rule of law because MCL 767.4 clearly stated its limited authority since 1951. ("We thus conclude that the <u>Peeler</u> Court did not announce a new principle of law...", at p 8). The Michigan Supreme Court, May 31, 2024, vacated the Court of Appeal's judgment in <u>People v. Kennedy</u>, ___Mich___; 6 N.W.3d 402 (2024) for factual, not legal, reasons. It stated:

> The Court of Appeals erred in its retroactivity analysis because it based that analysis on the incorrect understanding that the defendant did not receive a preliminary examination. The record reflects, however, and the defendant indicates, that he did in fact receive a preliminary examination.

However, it did not reverse the Court of Appeal's reading of the statutes. Also, the Michigan Supreme Court stated in <u>People v. Duncan</u>, 388 Mich 489, 498-99; 201 N.W.2d 629 (1972):

> When the Legislature did intend to provide for a preliminary examination after a one-man grand jury indictment, it did so by specific statutory language. (1927 PA 175, ch VII, § 4, and MCLA 767.4; MSA 28.944.)

### CONCLUSION AND RELIEF REQUESTED

For the reasons stated above, Plaintiff asks this Honorable Court for the following relief:

A. Hold that these Defendants are not immune from suit with absolute or qualified immunity; and

B. Allow the Plaintiff to file his First Amended Complaint.

Respectfully Submitted By:

Dated: August 22, 2024

*/s/ Michael B. Rizik, Jr.*
Michael B. Rizik, Jr. (P33431)
RIZIK & RIZIK
Attorney for Plaintiff
9400 S. Saginaw St., Ste. E
Grand Blanc, MI 48439
Phone: (810) 953-6000
Cell: (810) 610-2673
lawyers@riziklaw.com

Dated: August 22, 2024

*/s/ Michael W. Edmunds*
Michael W. Edmunds (P55748)
Gault Davison, PC
Counsel for Plaintiff
8305 S. Saginaw St., Ste. 8
Grand Blanc, MI 48439
Phone: (810) 234-3633
medmunds@gaultdavison.com

## CERTIFICATE OF SERVICE (E-FILING)

I certify that on August 22, 2024, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to all counsel of record.

*/s/ Michael B. Rizik, Jr.*
Michael B. Rizik, Jr. (P33431)
RIZIK & RIZIK
Attorney for Plaintiff
9400 S. Saginaw St., Ste. E
Grand Blanc, MI 48439