UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD L. BAIRD,

     Plaintiff,

v

DANA M. NESSEL, FADWA A. HAMMOUD, and KYM L. WORTHY,

     Defendants.

No. 2:24-cv-11205

HON. ROBERT J. WHITE

MAG. KIMBERLY G. ALTMAN

**ORAL ARGUMENT REQUESTED**

_____/

## DEFENDANT ATTORNEY GENERAL DANA NESSEL'S REPLY BRIEF IN SUPPORT OF HER MOTION TO DISMISS

Kyla L. Barranco (P81082)
Assistant Solicitor General

Mark E. Donnelly (P39281)
Special Assistant Attorney General

Attorneys for Defendant Nessel
Mich. Dep't of Attorney General
P.O. Box 30212
Lansing, Michigan 48909
517.335.7628
barrancok@michigan.gov
donnellym@michigan.gov

Dated:  September 23, 2024

# TABLE OF CONTENTS

<u>Page</u>

Table of Contents ..................................................................................i

Index of Authorities.............................................................................ii

Argument..............................................................................................1

I.    The Attorney General's alleged conduct stems entirely from her role as an advocate for the State, not from any investigative role. ..............................................................1

II.   Baird fails to overcome the Attorney General's qualified immunity. .......................................................................6

      A.    There is no federal due process right to a preliminary examination..................................................7

      B.    Baird fails to cite any clearly established caselaw in support of his due process claim. .............................9

III.   The evidence cited by Baird shows a lack of personal involvement by the Attorney General. .........................................11

Conclusion and Relief Requested.............................................................14

Certificate of Service (e-file)...................................................................15

Brief Format Certification Form...............................................................16

# INDEX OF AUTHORITIES

<u>Page</u>

**Cases**

*Albright v. Oliver*, 510 U.S. 266 (1994)..................................................7, 9

*Armengau v. Cline*, 7 F. App'x 336 (6th Cir. 2001)...................................3

*Becker v. Kroll*, 494 F.3d 904 (10th Cir. 2007)........................................8

*Burns v. Reed*, 500 U.S. 478 (1991)...........................................................5

*Coleman v. Alabama*, 399 U.S. 1 (1970) ................................................10

*Dillard v. Bomar*, 342 F.2d 789 (6th Cir. 1965) ....................................10

*Hicks v. Oklahoma*, 447 U.S. 343 (1980) ...................................2, 8, 9, 10

*Howell v. Sanders*, 668 F.3d 344 (6th Cir. 2012)......................................5

*Huron Valley Hosp., Inc. v. City of Pontiac*, 887 F.2d 710 (6th Cir.
    1989) ...................................................................................................10

*Ireland v. Tunis*, 113 F.3d 1435 (6th Cir. 1999) ..................................2, 3

*Koubriti v. Convertino*, 593 F.3d 459 (6th Cir. 2010) ..............................6

*Malley v. Briggs*, 475 U.S. 335 (1986)...................................................3, 4

*Manuel v. City of Joliet*, 580 U.S. 357 (2017) .........................................8

*Prince v. Hicks*, 198 F.3d 607 (6th Cir. 1999) ..........................................2

*Radvansky v. City of Olmsted Falls*, 395 F.3d 291 (6th Cir. 2005)........8

*Spurlock v. Thompson*, 330 F.3d 791 (6th Cir. 2003) ..............................1

*Thomas v. Noder-Love*, 621 F. App'x. 825 (6th Cir. 2015)........................4

*United States v. Calandra*, 414 U.S. 338 (1974)......................................5

*United States v. Mulligan*, 520 U.S. 1237 (6th Cir. 1975).......................9

*United States v. Smith*, 343 F.2d 847 (6th Cir. 1965) .............................9

**Statutes**

Mich. Comp. Laws § 767.3 ....................................................... 4, 10

Mich. Comp. Laws § 767.4 ........................................................10

## ARGUMENT

**I.   The Attorney General's alleged conduct stems entirely from her role as an advocate for the State, not from any investigative role.**

The parties agree on the relevant standard when assessing the applicability of absolute prosecutorial immunity:  "the critical inquiry is how closely related is the prosecutor's challenged activity to [her] *role as an advocate* intimately associated with the judicial phase of the criminal process."  *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir. 2003) (citation omitted); (ECF No. 26, PageID.173).  Baird, however, argues that the Attorney General was not acting as an advocate but in an investigatory capacity during the Flint water criminal cases.  (ECF No. 26, PageID.173.)  Not so.

*Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1999), and cases following it, shed light on the distinction between a prosecutor's investigative and advocacy acts:

> A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity. *We have not retreated, however, from the principle that acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity*. Those acts must include

1

the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made. [Emphasis added.]

And while the *Buckley* Court ultimately held that absolute immunity did not apply before the prosecutor had probable cause to have anyone arrested in that case, *id.* at 274, the dividing line "between conduct that is part of a preliminary investigation and conduct that is intimately associated with the judicial phase of a criminal proceeding . . . is *not* the point of determination of probable cause"—"it is the point at which the prosecutor performs functions that are intimately associated with the judicial phase of the criminal process," *Prince v. Hicks*, 198 F.3d 607, 612 (6th Cir. 1999).

The Sixth Circuit further clarified this point in *Ireland v. Tunis*, 113 F.3d 1435, 1145 (6th Cir. 1999), when explaining that "[i]nvestigative acts undertaken in direct preparation of judicial proceedings, including the professional evaluation of evidence, warrant absolute immunity, whereas other acts, such as the preliminary gathering of evidence that may ripen into a prosecution, are too attenuated to the judicial process to afford absolute protection." Thus, contrary to Baird's arguments, (ECF No. 26, PageID.175), acts afforded

immunity include "a prosecutor's decision to file a criminal complaint and seek an arrest warrant and the presentation of these materials to a judicial officer[,]" *Ireland*, 113 F.3d at 1445—all of which may occur prior to indictment.  "In this role, a prosecutor is unquestionably functioning as an advocate for the state in the judicial process . . . ." *Id.* at 1446.  The *Ireland* court therefore held that "[p]resenting the charging documents to a judicial officer and procuring an arrest warrant must be considered part of the formal process of initiating a prosecution and securing the presence of the accused at trial." *Id.* at 1446–47 (citation omitted); *see also Malley v. Briggs*, 475 U.S. 335, 343 (1986) ("[T]he prosecutor's act in seeking an indictment is but the first step in the process of seeking a conviction," for which we shield the prosecutor . . . .").

Like the plaintiff's claim in *Ireland*, Baird's due process claim is also barred by absolute immunity.  In filing an application for the appointment of a one-man grand jury, (*see* Order for Appointment of One-Person Grand Jury, ECF No. 26-5, PageID.242–45),[1] Solicitor

---

[1] Baird discusses this order in his complaint, it is the initiating order for the criminal proceedings on which the complaint is based, and it is a public record. *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001)

General Hammoud sought an indictment—i.e., "the first step in the process of seeking a conviction," *Malley*, 475 U.S. at 343.  The circuit court, being persuaded that there was "probable cause to suspect that a[ ] crime . . . ha[d] been committed[,] . . . order[ed] . . . that an inquiry be made into the matters relating to such [application] . . . ." Mich. Comp. Laws § 767.3.  The prosecution team then presented evidence to the one-man grand jury (i.e., "[t]he appointed judge"—Judge David Newblatt) (ECF No. 26-5, PageID.244, ¶ 4(b)), and, ultimately, Judge Newblatt issued a felony indictment against Baird as well as an arrest warrant finding probable cause.  (ECF No. 29-2, PageID.538–539; ECF No. 29-3, PageID.541–542.)  Baird was arraigned six days later.  (ECF No. 29-4, PageID.546.)  As the *Ireland* court held, "presenting charging documents to a judicial officer and procuring an arrest warrant must be considered part of the formal process of initiating a prosecution and securing the presence of the accused at trial."  113 F.3d at 1446–47 (citation omitted).

---

("[I]f referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings"); *Thomas v. Noder-Love*, 621 F. App'x. 825, 829 (6th Cir. 2015) (courts may consider public records on a 12(b)(6) motion).

Baird does not address this well-established principle and focuses instead on the prosecution team's alleged "egregious disregard for justice." (ECF No. 26, PageID.174.) Putting aside the falsity of this allegation, absolute immunity applies "even if the prosecutor acts with malice and without probable cause." *Howell v. Sanders*, 668 F.3d 344, 354 (6th Cir. 2012) (citation omitted). Even if the prosecution team did "[f]abricat[e] evidence"—a conclusory allegation not in the complaint— or "deviate from proper procedures," they would still be afforded absolute immunity. *Burns v. Reed*, 500 U.S. 478, 486 (1991) (applying absolute immunity for the "alleged knowing use of false testimony at trial and the alleged deliberate suppression of exculpatory evidence").

Baird also attempts to circumvent established caselaw by focusing on Judge Newblatt's investigatory authority. Baird contends that because Judge Newblatt was appointed "to *investigate* the Flint water crisis and determine if charges should be brought," absolute immunity does not apply. (ECF No. 26, PageID.175–178.) But federal grand juries share this investigative power as well. *United States v. Calandra*, 414 U.S. 338, 343–44 (1974) (explaining "[t]he grand jury's investigative power" and that a grand jury proceeding "is an ex parte

5

investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person"). And courts consistently afford prosecutors absolute immunity for preparation for and participation in grand jury proceedings. *Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010) (citation omitted).

In summary, Baird has failed to show that the Attorney General's alleged involvement in his criminal case was not in her role as advocate. This Court should therefore dismiss his due process claim.

## II.   Baird fails to overcome the Attorney General's qualified immunity.

In his response, Baird contends that there is clearly established right to a preliminary examination under both the Fifth and Fourteenth Amendments (due process) and the Fourth Amendment (unreasonable search and seizure).  Because his complaint does not allege a Fourth Amendment violation, the Attorney General does not address it here. (*But see* ECF No. 29, PageID.518–531.)  Regarding Baird's due process claim, he fails to cite a case showing such a clearly established right.

### A.    There is no federal due process right to a preliminary examination.

Baird relies in large part on *Albright v. Oliver*, 510 U.S. 266 (1994), in support of his argument that the Attorney General is not entitled to qualified immunity.  (ECF No. 26, PageID.181–183.)  But *Albright* underscores that Baird does not have a viable due process claim and that the Attorney General thus has qualified immunity.

Albright* involved a claim that the defendant (a police officer) "infringed [the plaintiff's] substantive due process right to be free of prosecution without probable cause."  *Id.* at 271.  The Supreme Court rejected the claim, reasoning that "it is the Fourth Amendment, and not substantive due process, under which petitioner Albright's claim must be judged."  *Id.  Albright*, therefore, does not set forth an avenue to a viable due process claim—it forecloses it altogether.  *Id.* at 274 ("The Framers considered the matter of pretrial deprivations liberty and drafted the Fourth Amendment to address it.").

Other cases support the conclusion that the due process clause is not the appropriate remedy for pretrial criminal violations.  For example, in *Radvanksky v. City of Olmsted Falls*, the Sixth Circuit rejected a claim that an arrest without probable cause violated the due

process clause.  395 F.3d 291, 313 (6th Cir. 2005).  It reasoned that "it is the Fourth Amendment"—not due process guarantees— "which establishes procedural protections in this part of the criminal justice area."  *Id.  See also Manuel v. City of Joliet*, 580 U.S. 357 (2017) ("This Court decided some four decades ago that a claim challenging pretrial detention fell within the scope of the Fourth Amendment."); *Becker v. Kroll*, 494 F.3d 904 (10th Cir. 2007) ("We are not aware . . . of any other circuit that has extended Fourteenth Amendment procedural due process guarantees to pre-trial deprivations of liberty.").  Given that the complained-of restrictions on Baird's liberty occurred *pretrial* (indeed, a trial never took place), his due process claim must fail.  And for this same reason, Baird's reliance on *Hicks v. Oklahoma*, 447 U.S. 343 (1980)—which involved the deprivation of liberty at *sentencing* as opposed to pretrial—is misplaced.  (ECF No. 26, PageID.183–185.)

Baird cannot show a violation of his procedural due process rights.  Consequently, there has been no constitutional violation, and the Attorney General is entitled to qualified immunity.

**B.      Baird fails to cite any clearly established caselaw in support of his due process claim.**

Because courts have held that it is the Fourth Amendment—and not procedural due process guarantees—that may provide a remedy for pretrial liberty deprivations, it follows that there is no clearly established due process right to a preliminary examination.  But even if that caselaw did not exist, Baird has failed to identify a case clearly establishing a due process right to a preliminary examination.

Setting aside *Albright* and *Hicks*, which were discussed above, Baird contends that *United States v. Mulligan*, 520 U.S. 1237 (6th Cir. 1975), is helpful to him.  Specifically, he relies on the court's underlying rationale in holding that a preliminary examination was not necessary in that case: "Action by the grand jury in returning the indictment brought formal charges against the accused and thus superseded the complaint procedure and eliminated the necessity of a preliminary hearing."  520 F.2d at 1329.  But several of the cases cited by the *Mulligan* court for the proposition that "[t]here is no constitutional requirement for . . . a[ ] [preliminary] examination" go a step further.  *Id.*  For example, in *United States v. Smith*, the court held that "a preliminary hearing is not essential to due process of law."  343 F.2d

9

847, 850 (6th Cir. 1965). *Dillard v. Bomar* went even further: "[w]e do not find that the Supreme Court has ever held that an accused has a constitutional right to a preliminary hearing. . . . This Court has held that no such constitutional right exists." 342 F.2d 789, 790 (6th Cir. 1965) (citations omitted). Thus, not only has Baird failed to identify a clearly established due process right to a preliminary examination, caselaw clearly establishes that there is no such right.

Finally, Baird's attempt to invoke a violation of state law, (ECF No. 26, PageID.183), such as Mich. Comp. Laws §§ 767.3 and 767.4, to overcome immunity falls flat because there is no clearly established constitutional right to be protected from a violation of state law under § 1983. *Huron Valley Hosp., Inc. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989). And *Hicks*, which Baird cites as support for his state law violation theory, is inapposite here because it involved a post-trial liberty deprivation. Likewise, *Coleman v. Alabama* involved a claim under the Sixth Amendment (assistance of counsel), and thus, it is also distinguishable. 399 U.S. 1, 8 (1970) ("[N]othing occurring at the preliminary hearing in absence of counsel can substantially prejudice the rights of the accused on trial.").

10

## III.  The evidence cited by Baird shows a lack of personal involvement by the Attorney General.

Baird's attempts to show the Attorney General's personal

involvement in his criminal proceedings fail for two reasons.  First, the

exhibits he cites in his response offer, at most, unpersuasive speculation

about her alleged role in his criminal proceedings.  Second, the

documents referenced in the complaint show a *lack* of involvement.

Beginning with Exhibit 2, Baird cites a June 13, 2019 Department

of Attorney General press release issued.  (ECF No. 26-2, PageID.200–

201.)  In it, the Attorney General provided as follows after the

prosecution team dismissed the first round of criminal charges:

> The depth and breadth of concern for fair and just
> prosecution and justice for the people of Flint is precisely
> why I appointed and entrusted Solicitor General Fadwa
> Hammoud and Wayne County Prosecutor Kym L. Worthy to
> lead the Flint criminal cases. I trust them and if this step is
> necessary for them to do a comprehensive and complete
> investigation[,] I am in absolute support.  [*Id.*]

Baird argues that the Attorney General "would unlikely offer

unequivocal support for something she was unaware of or lacked control

over."  (ECF No. 26, PageID.171.)  Not only is Baird's argument based

entirely on speculation, but the quote itself shows the Attorney

General's lack of involvement—i.e., had she been personally involved

with the prosecution team's decision-making, she would have no need to speculate as to whether the steps they took were "necessary."

Exhibit 3 is similarly unpersuasive. It purports to show the Attorney General outside of the Michigan Supreme Court courtroom during a break in oral arguments in *People v. Lyon*, a case argued by the prosecution team. But the Attorney General listening to oral arguments in a significant case handled by the Department does not in any way show she was personally involved with the prosecution team.

Exhibit 3 also contains "a compiled list showing the number of times in 2019, 2020, and 2021 that Nessel and her Solicitor General . . . met." (ECF No. 26, PageID.171.) Baird asserts that "[i]t is inconceivable that they met 356 times but did not discuss the underlying case." (*Id.*) Again, his argument is entirely speculative. And given Hammoud's role as Solicitor General, it should come as no surprise that she spoke to the Attorney General on a regular basis.

Exhibit 4 is an email chain in which the Attorney General approved a quote for the Detroit Free Press referencing the prosecution team's actions. (ECF No. 26-4, PageID.230.) Merely approving a

quote—nothing more—about *the prosecution team's* publicly reported actions does not rise to the level of personal involvement.

In addition to these lackluster exhibits, the documents referenced in the complaint also do not serve Baird's argument.  For example, the Order of Appointment, (ECF No. 1, PageID.3, ¶ 13), references "[t]he Solicitor General's request for the assignment of a judge of this Court to sit as a one-person grand jury[,]" (ECF No. 26-5, PageID.242).  In other words, it was the *Solicitor General* who filed an application for the appointment of a one-man jury.  The order explained that "[t]he appointed judge may: . . . request the Solicitor General . . . , or her designees, to examine witnesses in the presence of the grand jury, and advise the grand jury on legal matters, . . . or, alternatively, entertain a request from the Solicitor General . . . for her, or her designees, to appear before the grand jury to offer information regarding any matter cognizable by the grand jury[.]"  (*Id.*, PageID.243–44.)  Nowhere does the order reference the Attorney General.

Likewise, the press release quoted in ¶ 41 of the complaint references the prosecution team's disappointment in the Michigan

13

Supreme Court's decision.  It does not show any involvement by the

Attorney General and, instead, highlights her *lack* of involvement:

> In 2019, upon taking office, Attorney General Dana Nessel
> implemented a conflict wall to ensure the criminal
> investigation and civil litigation following the Flint Water
> Crisis were conducted by completely separate teams. The
> Department . . . was bound to represent the State in defense
> of the civil litigation, and Nessel led the civil litigation team.
> As such, Wayne County Prosecutor Kym Worthy, then-
> Solicitor General Fadwa Hammoud, and a team of
> experienced prosecutors and investigators led the criminal
> prosecutions stemming from the Flint Water Crisis. AG
> Nessel has had no operational involvement with the criminal
> prosecutions and focused her efforts on the civil litigation,
> which resulted in the affected people of Flint receiving
> the largest civil settlement in the history of our state.

If the complaint shows anything about the Attorney General, it shows

that she was *not* involved with the prosecution team.

## CONCLUSION AND RELIEF REQUESTED

For these reasons and those stated in her brief in support of the

motion to dismiss, the Attorney General requests that this Court

dismiss this case with prejudice.

Respectfully submitted,

*/s/Kyla L. Barranco*
Assistant Solicitor General
Attorney for Defendant Attorney
General Dana Nessel

Dated:  September 23, 2024

14

## CERTIFICATE OF SERVICE (E-FILE)

I hereby certify that on September 23, 2024, I electronically filed the

above document(s) with the Clerk of the Court using the ECF System,

which will provide electronic copies to counsel of record.

*/s/Kyla L. Barranco*
Kyla L. Barranco (P81082)
Assistant Solicitor General
Attorney for Defendant Nessel
Mich. Dep't of Attorney General
P.O. Box 30212
Lansing, Michigan 48909
517.335.7628
barrancok@michigan.gov

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RICHARD L. BAIRD, | |
|      Plaintiff, | Case No. 2:24-CV-11205 |
| v. | Honorable Robert J. White |
| DANA M. NESSEL, FADWA A. HAMMOUD AND KYM WORTHY, | |
|      Defendants. | |

**BRIEF FORMAT CERTIFICATION FORM**

     I, Mark Donnelly, certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1, and Judge White's Case Management Requirements, including the following (click each box to indicate compliance):

     ☒ the **original** brief contains a statement regarding concurrence, *see* LR 7.1(a);

     ☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

     ☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

     ☒ the brief and all exhibits are filed in searchable PDF format, *see* Case Management Requirements § III.A;

     ☒ except for footnotes and necessary block quotes, the brief is double spaced (<u>not</u> "Exactly 28 pt" spaced) with one-inch margins, *see* LR 5.1(a)(2);

     ☒ deposition transcripts have been produced in their entirety (<u>not</u> in minuscript), *see* Case Management Requirements § III.A **(not applicable)**;

16

☒ if the brief and exhibits total 50 pages or more, I will mail to chambers a courtesy copy with ECF headers, *see* Case Management Requirements § III.B **(not applicable)**.

I also acknowledge that my brief will be stricken from the docket if the Court later finds that these requirements are not met.

/s/ *Mark Donnelly*
Mark Donnelly
Attorney for Defendant Dana Nessel

17