## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

RICHARD L. BAIRD,        )

                  )

       Plaintiff,     )

                  )

v.                    )    Case No. 2:24-cv-11205-RJW-KGA

                  )

DANA M. NESSEL, in her individual )    Judge: Hon. Robert J. White

capacity, FADWA A.HAMMOUD, in )

her individual capacity, and KYM L. )    Mag. Judge: Hon. Kimberly G.

WORTHY, in her individual capacity, )    Altman

                  )

       Defendants.    )    **JURY TRIAL DEMANDED**

## SECOND AMENDED COMPLAINT

Plaintiff Richard L. Baird, by and through his counsel, for his Second Amended Complaint, alleges as follows:

### Nature of the Action

1.     Plaintiff Richard L. Baird seeks damages under 42 U.S.C. §1983 for the Defendants' violation of his due process rights and rights against illegal searches and seizure under the United States Constitution and federal law. Each Defendant, acting individually under color of state law, in conspiracy with one another, while acting in their administrative and/or investigative functions and not in their judicial functions, deprived Baird of his rights, privileges, and immunities secured by the Constitution and laws of the United States when Defendants pursued a criminal indictment of

Baird without probable cause and without a probable cause hearing in violation of his due process rights.

2. Additionally, each Defendant acted to violate Baird's clearly established constitutional rights, and thus acted outside the scope of their employment. Each Defendant agreed on a single plan to violate Baird's constitutional rights to achieve their objective to bring criminal charges against Baird.

### Jurisdiction and Venue

3. This action arises under the United States Constitution and under the laws of the United States, particularly under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, and particularly under the Civil Rights Act, as amended, codified at 42 U.S.C. § 1983, *et seq.*

4. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1334.

5. Venue is proper before this Court pursuant to 28 U.S.C. §1391(b)(2) because substantial events giving rise to this action occurred in this District.

### Parties

6. Plaintiff Richard L. Baird ("Baird") is a resident of Ann Arbor, Michigan. Baird was a defendant in a prior Michigan state-court criminal case, *People of the State of Michigan v Richard Louis Baird,* Case No: 21-047375-FH, in the Genesee County Circuit Court. This now-dismissed criminal case is related to

2

what is commonly known as the "Flint Water Crisis," or issues stemming from problems with the water supply system in Flint, Michigan.

7.     Defendants are residents of the State of Michigan and attorneys licensed by the State Bar of Michigan.

8.     At all relevant times, Defendant Dana M. Nessel was the Attorney General for the State of Michigan pursuant to Mich. Const. 1963, art. 5, § 3, and relevant statutes, including MCL § 14.28. On information and belief, and as stated below, Nessel was involved in the strategy to investigate Baird and others and to use the criminal investigative process and Michigan criminal laws to attempt to bring a criminal case against Baird and others relating to the Flint Water Crisis for political gain.

9.     At all relevant times, Fadwa A. Hammoud was an Assistant Attorney General and Solicitor for the State of Michigan pursuant to an assignment authorized by MCL § 14.28. Hammoud was involved in Baird's criminal investigation and the other criminal cases associated with the Flint Water Crisis.

10.     At all relevant times, Kym L. Worthy was the Wayne County Prosecutor assigned to coordinate Baird's criminal investigation and attempted prosecution pursuant to MCL §14.35 and other authorities. Worthy was involved in Baird's criminal investigation and attempted prosecution and the other criminal cases associated with the Flint Water Crisis.

11.     At all relevant times, Defendants purported to act on behalf of the State

3

of Michigan and they acted under the color of State law. Defendants were members of the so-called Flint Water Prosecution Team.

12.     At all relevant times, and on information and belief, Defendants agreed and conspired to violate Baird's constitutional rights.

13.     At all relevant times, Defendants acted within their investigative capacities when they attempted to prosecute Baird, and improperly indicted Baird, depriving him of his Fourth, Fifth and Fourteenth Amendment rights by, among other things, subjecting Baird to unreasonable seizure and deprivation of liberty and property, without due process of law, without probable cause, and without affording Baird a probable cause hearing, *i.e.*, a preliminary examination hearing under Michigan state law.

14.     Defendants orchestrated the investigative process, resulting in the filing of the purported indictment against Baird in January 2021. Defendants' acts in this process were investigative functions and not judicial or advocacy functions. That purported indictment lacked probable cause, and Defendants denied Baird his right to a probable cause hearing that due process required.

15.     As demonstrated below, Defendants' conduct constituted investigative functions:

> a. At the January 14, 2021 arraignment, Baird was not scheduled for a probable cause conference according to MCL766.4(1) "to be held

4

not less than 7 days or more than 14 days after the date of the arraignment and a date for a preliminary examination of not less than 5 days or more than 7 days after the date of the probable cause conference." Also, see MCR 6.104(E) & 6.108; and

b. The probable cause conference is a critical procedural step that transitions a case from the investigative to the judicial stage. It is designed to facilitate discussions between the state and the criminal defendant regarding potential plea agreements, bail, bond modifications, and other pretrial matters. This conference streamlines the judicial process and potentially resolves the case without the need for a preliminary examination. No probable cause conference was held.

## Facts

16.    Former Governor Rick Snyder is a member of the Republican party and served as Michigan's 48th governor from 2011 to January 1, 2019, when his second term ended. Due to Michigan's term limits, Governor Snyder could not be re-elected.

17.    Governor Gretchen Whitmer is a member of the Democratic party and was elected Michigan's 49th governor with her first term commencing January 1, 2019.

18.    From October 2013 until the end of Governor Snyder's second term

in office, Baird was employed by the State of Michigan as the Governor's Senior Advisor and Transformation Leader.

19.    In 2010 Baird retired from PricewaterhouseCoopers, LLP as global and U.S. leader of people and change management. From 2003-2008, Baird was global managing partner – people, responsible for human resources and learning and education for PwC's 150,000 partners and staff in 150 countries, while serving on the 14-partner global leadership team. Baird also held positions as Operations Partner for the U.S. Assurance and Business Advisory practice through the 1990's.

20.    Prior to his appointment to serve Governor Snyder, Baird was CEO of MI Partners, LLC, a Michigan-based consulting company contracted by the Snyder administration in January, 2011.

21.    Baird faithfully and honestly served the State of Michigan. Baird successfully worked with Governor Snyder and his leadership team to reinvent and transform Michigan. Baird played key roles to address risk, financial solvency, organizational redesign and performance, talent assessment, financially distressed city turnaround strategies, public safety and infrastructure, economic/workforce development and education reform.

22.    Baird was *not* involved in the events that gave rise to the Flint Water Crisis, which commenced in 2014.

23.    As a cost-saving measure, Flint officials switched Flint's municipal

water supply from the Detroit Water and Sewage Department to the Flint River, reviving the previously dormant Flint Water Treatment Plant. Flint residents began receiving water from the Flint River on April 25, 2014, and residents began complaining of water that looked, tasted, and smelled foul within weeks. Other problems emerged, including evidence of E. coli contamination in the water, a localized outbreak of Legionnaires' disease, and a high lead poisoning rate in children. Without proper corrosion-control treatment, lead leached from the aging pipes in Flint's water system into the water. In October 2015, Flint reconnected to its original water sources.

24.    Baird's first involvement was serving as the Team Leader for "Mission Flint" to help coordinate the State's partnership with the City of Flint and the related nearly $300 million appropriation to address problems arising from the water crisis and assist with economic and workforce development, medical and education initiatives. Nothing Baird did or did not do in that role could possibly form the basis of any sort of misconduct or criminal investigation. Defendants knew this.

25.    During Governor Snyder's term, the Office of Special Counsel, Todd Flood, was appointed to investigate potential misconduct and criminal violations arising out of the Flint Water Crisis. Under the leadership of the Office of Special Counsel, the original or "First Wave Investigation" cases were properly charged by complaint authorized by the Office of Special Counsel. Plea agreements were reached

in some of the cases, and the remainder were dismissed on motion of the government after bind over after the defendants had been afforded their Fourth, Fifth and Fourteenth Amendment rights following preliminary examination hearings.

26.     During Flood's First Wave Investigations, Baird was neither a target nor a subject of those Investigations and voluntarily cooperated by disclosing documents and information to Flood as part of the First Wave Investigations.

27.     After Nessel took office as Attorney General, Nessel fired Special Counsel Flood, making untrue allegations. Nessel then orchestrated with Defendant Hammoud and then prosecutor Worthy to pursue the "Second Wave Investigation" cases in a manner to ensure publicly-filed "Indictments" regardless of any probable cause and in violation of Michigan state law procedures guaranteeing the protection of constitutional rights for those criminal targets. The criminal targets were allied with Defendants' political opponents.

28.     Despite Baird's exemplary service to the State of Michigan and lack of involvement in any issues that gave rise to the Flint Water Crisis, Defendants nonetheless, without regard to the facts and for political reasons, pursued criminal investigation of Baird and others in what is commonly referred to as the "Second Wave Investigations" of criminal investigations relating to the Flint Water Crisis.

29.     This lawsuit arises from Defendants' factual, legal, and constitutionally infirm criminal investigations of Baird as part of the Second Wave Investigations of

criminal investigations related to the Flint Water Crisis. Unlike the First Wave Investigations, in the Second Wave Investigations, Defendants violated Baird's Fourth, Fifth and Fourteenth Amendment rights and did not afford Baird any preliminary examination hearing, resulting in significant reputational damages and special damages, including attorneys' fees and costs.

30.    Initially, Defendants continued to pursue criminal charges involving the Flint Water Crisis using the traditional citizens Grand Jury process. However, after a hearing on defendant Lyons' motion challenging the lack of probable cause where it was clear that the trial judge was likely to dismiss for lack of probable cause, Defendants caused Lyons' criminal case to be dismissed without prejudice. Defendants then embarked on a scheme to achieve the desired result of prosecuting criminal charges by circumventing Plaintiff's constitutional rights.

31.    Defendants claimed to support their voluntary dismissal and pivot to a different process based on the allegation that they had just discovered the existence of previously undisclosed documents. That claim was untrue. Those documents had been disclosed to Flood and his investigative team who had reviewed them. Those documents had been securely stored and in the process of the transition from Governor Snyder's administration to the Democrat administration in or about January 2019, Baird ensured that those documents were securely delivered to the new administration's investigative team.

32.     After Defendant Nessel and her prosecuting team dismissed the First Wave cases pending trial in the Genesee County 7th Circuit Court, Defendants sought to the appointment of a One Man Grand Juror to investigate. Specifically, Defendants caused Chief Judge Duncan Beagle to appoint 7th Circuit Court Judge David J. Newblatt to conduct an investigation according to MCL §§ 767.3 and 767.4. Such an investigation has been called a "One Man Grand Jury."

33.     The Order of Appointment for the One-Man Grand Jury was dated January 9, 2020. A true and correct copy of the Order of Appointment is attached as **Exhibit 1**.

34.     The Michigan "One Man Grand Jury" was created by statute in 1917. See *People v. Peeler,* 984 N.W.2d 80 (Mich. 2022); Robert G. Scigliano, *Inquisitorial Proceedings and Separation of Functions: The Case of the Michigan One Man Grand Jury*, 38 U. Det. L.J. 882, 886-89 (l960) (recounting the history of the one-man grand jury).

35.     The statute authorizing the appointment of a One Man Grand Juror to conduct a criminal investigation, MCL § 767.3, provides:

> **767.3. Proceedings before trial; inquiry, order, conducting; summoning witnesses, proceedings, fees, subpoena, appearance; notification to judge; taking testimony; legal counsel; revelation by attorney, penalty; testimony in presence of judge; disqualification of judge, etc.**
>
> Sec. 3. Whenever by reason of the filing of any complaint, which may be upon information and belief, or upon the application of the

prosecuting attorney or attorney general, any judge of a court of law and of record shall have probable cause to suspect that any crime, offense or misdemeanor has been committed within his jurisdiction, and that any persons may be able to give any material evidence respecting such suspected crime, offense or misdemeanor, such judge in his discretion may make an order directing that an inquiry be made into the matters relating to such complaint, which order, or any amendment thereof, shall be specific to common intent of the scope of the inquiry to be conducted, and thereupon conduct such inquiry. In any court having more than 1 judge such order and the designation of the judge to conduct the inquiry shall be made in accordance with the rules of such court. Thereupon such judge shall require such persons to attend before him as witnesses and answer such questions as the judge may require concerning any violation of law about which they may be questioned within the scope of the order. The proceedings to summon such witness and to compel him to testify shall, as far as possible, be the same as proceedings to summon witnesses and compel their attendance and testimony. The witnesses shall not receive any compensation or remuneration other than witness fees as paid witnesses in other criminal proceedings. The witness shall not be employed in any capacity by the judge or by any person connected with such inquiry, within the scope of the inquiry being conducted. Whenever a subpoena is issued by the judge conducting the inquiry, commanding the appearance of a witness before the judge forthwith upon the service of such subpoena, and, following the service thereof, the witness arrives at the time and place stated in the subpoena, the judge issuing the same shall be forthwith notified of the appearance by the officer serving the subpoena, and the judge forthwith shall appear and take the testimony of the witness. Any person called before the grand jury shall at all times be entitled to legal counsel not involving delay and he may discuss fully with his counsel all matters relative to his part in the inquiry without being subject to a citation for contempt. The witness shall have the right to have counsel present in the room where the inquiry is held. All matters revealed to the attorney shall be subject to the requirements of secrecy in section 4, and any revelation thereof by the attorney shall make him subject to punishment as provided in section 4. No testimony shall be taken or given by any witness except in the presence of the judge.

Any judge, prosecuting attorney or special prosecuting attorney, or the attorney general participating in any inquiry under this section which continues more than 30 calendar days shall thereafter be disqualified from appointment or election to any office other than one held at the time of the inquiry. The disqualification shall not extend more than 1 year from date of termination of the inquiry, as determined by final order of the judge entered prior to such date.

36.     The following section in the One Man Grand Juror statute is entitled:

**"767.4. Proceedings before trial; apprehension of suspect; disqualification as examining magistrate; finding as to misconduct in office; disclosures of proceedings, etc., penalty; report of no finding of criminal guilt; period of inquiry; successor judge, appointment,"** and provides the procedures in connection with the criminal investigation authorized in MCL § 767.3:

Sec. 4. If upon such inquiry the judge shall be satisfied that any offense has been committed and that there is probable cause to suspect any person to be guilty thereof, he may cause the apprehension of such person by proper process and, upon the return of such process served or executed, the judge having jurisdiction shall proceed with the case, matter or proceeding in like manner as upon formal complaint. The judge conducting the inquiry under section 3 shall be disqualified from acting as the examining magistrate in connection with the hearing on the complaint or indictment, or from presiding at any trial arising therefrom, or from hearing any motion to dismiss or quash any complaint or indictment, or from hearing any charge of contempt under section 5, except alleged contempt for neglect or refusal to appear in response to a summons or subpoena. If upon such inquiry the judge shall find from the evidence that there is probable cause to believe that any public officer, elective or appointive and subject to removal by law, has been guilty of misfeasance or malfeasance in office or wilful neglect of duty or of any other offense prescribed as a ground of removal, the judge shall make a written finding setting up the offense so found and shall serve said finding upon the public officer, public board or

body having jurisdiction under the law to conduct removal proceedings against the officer. The finding shall be a sufficient complaint as a basis for removal of said officer and the public officer, public board or public body having jurisdiction of removal proceedings against the officer shall proceed in the method prescribed by law for a hearing and determination of said charges. Except in cases of prosecutions for contempt or perjury against witnesses who may have been summoned before the judge conducting such inquiry, or for the purpose of determining whether the testimony of a witness examined before the judge is consistent with or different from the testimony given by such witness before a court in any subsequent proceeding, or in cases of disciplinary action against attorneys and counselors in this state, any judge conducting the inquiry, any prosecuting attorney and other persons who may at the discretion of the judge be admitted to such inquiry, who shall while conducting such inquiry or while in the services of the judge or after his services with the judge shall have been discontinued, utter or publish any statement pertaining to any information or evidence involved in the inquiry, or who shall disclose the fact that any indictment for a felony has been found against any person not in custody or under recognizance, or who shall disclose that any person has been questioned or summoned in connection with the inquiry, who shall disclose or publish or cause to be published any of the proceedings of the inquiry otherwise than by issuing or executing processes prior to the indictment, or shall disclose, publish or cause to be published any comment, opinion or conclusions related to the proceedings of the inquiry, shall be guilty of a misdemeanor punishable by imprisonment in the county jail not more than 1 year or by a fine of not less than $100.00 nor more than $1,000.00, or both fine and imprisonment in the discretion of the court, and the offense when committed by a public official shall also constitute malfeasance in office. The limitations, restrictions and penalties relating to the uttering, publishing or disclosing of any statement pertaining to any information or evidence, imposed by this section, do not apply to disclosures of information or evidence made by a judge conducting such an investigation to another judge concurrently conducting an investigation as provided in section 3. Upon the termination of the inquiry if the judge shall make no presentment of crime or wrongdoing as to any person whose apprehension or removal from office he has not so caused, he may, in his discretion,

with the consent of the person who may be named, file with the clerk of the county in which such inquiry has been conducted, a report of no finding of criminal guilt as to any person or persons involved in such inquiry, either as witness or otherwise, whose involvement in such inquiry has become public.

No inquiry or proceeding under this chapter shall continue longer than 6 months unless extended by specific order of the judge or his successor for an additional period not to exceed 6 months.

In the event any judge conducting such inquiry shall be unable to continue because of physical disability, disqualification, termination of office or death, the presiding circuit judge of Michigan shall appoint a successor.

37.     The One-Man Grand Jury statute, MCL § 767.4, does *not* permit the one-man grand juror to issue an indictment, in specific contrast to the statutes governing citizens grand juries. *Compare* MCL § 767.24(1) ("An indictment for any of the following crimes may be found and filed at any time[.]"); MCL § 767.23 ("No indictment can be found without the concurrence of at least 9 grand jurors; and when so found, and not otherwise, the foreman of the grand jury shall certify thereon, under his hand, that the same is a true bill.").

38.     The Michigan Legislature amended the One-Man Grand Jury statute in 1949 to authorize judges to issue indictments as long as three judges signed the indictment. But, in 1951, the Michigan Legislature repealed the 1949 statutory authority, removing authority for any judge conducting a criminal investigation under Section 767.3 to issue an indictment. *See* MCL § 767.3, as amended by 1951 PA 276; *People v. Peeler,* 984 N.W.2d at 87.

39.    The One-Man Grand Jury statute is clear about what a judge is authorized to do. If, after conducting the inquiry, "the judge shall be satisfied that any offense has been committed and that there is probable cause to suspect any person to be guilty thereof, *he may cause the apprehension of such person by proper process* ...." MCL § 767.4 (emphasis added). In other words, the judge may authorize an *arrest warrant.* The statute clearly does not authorize the judge to issue an arrest warrant and issue an indictment at the same time.

40.    Thus, it was clearly established law that the One-Man Grand Juror was not authorized to issue the purported "Indictment" of Baird in 2021 in which Baird was formally charged with crimes.

41.    The word "indictment" is broadly defined in the Michigan One-Man Grand Jury statute: MCL § 761.1, which provides definitions for MCL § 767.4, states in Section 1(g) that "Indictment" means 1 or more of the following:

> (*i*) An indictment.
> (*ii*) An information.
> (*iii*) A presentment.
> (*iv*) A complaint.
> (*v*) A warrant.
> (*vi*) A formal written accusation.
> (*vii*) Unless a contrary intention appears, a count contained in any document described in subparagraphs (*i*) through (*vi*).

42.    Thus, the One-Man Grand Jury scheme is far different than the citizens grand-jury process and the commonly understood use of the term "indictment" in other criminal investigation and prosecution processes, such as those followed in

federal criminal cases. In short, the use of the word "indictment" to describe the filing of Michigan state criminal charges against Baird did not somehow change the function of Defendants from their investigative functions to judicial functions.

43. On January 14, 2021, a document entitled "Indictment," containing conclusory, one-sentence criminal charges, was issued and filed in the Genessee County Circuit Court by the so-called "One-Man Grand Juror" pursuant to MCL §§ 767.3 and 767.4. Attached as **Exhibit 2** is a true and correct copy of the purported "Indictment."

44. The purported "Indictment" in **Exhibit 2** alleged Baird committed misconduct in office (a five-year felony), MCL § 750.505; perjury during an investigative-subpoena examination (a 15-year felony), MCL § 767A.9; obstruction of justice (a five-year felony), MCL § 750.505; and extortion (a 20-year felony), MCL § 750.213. The purported "Indictment" alleged no facts supporting the charges.

45. The purported "Indictment" was not authorized by Michigan law. Defendants knew or should have known that the purported "Indictment" was not authorized by Michigan law.

46. Immediately after the filing of the "Indictment," Baird surrendered himself voluntarily for booking.

47. After the filing of the "Indictment," the Genessee County Circuit Court

confiscated Baird's passport and severely curtailed his travel within the United States. As a result of State's curtailment of his freedom to travel, Baird was initially unable to visit his daughters in Minneapolis and Virginia. Baird was allowed to travel only to see his Michigan clients, his home in Illinois, and board meetings for Chance for Life, a prisoner rehab program.

48.     Defendants lacked probable cause to pursue the criminal charges in the Indictment. Baird did not violate any of the criminal statutes identified in the Indictment and there was no evidence that could support any probable cause for alleged violation of any of those charges.

49.     Moreover, Defendants failed to afford Baird due process to determine whether the State had probable cause to charge Baird.

50.     MCL § 767.4 expressly provided Baird a right to a preliminary examination hearing upon the filing of the purported "Indictment." That preliminary examination hearing was provided by the Michigan legislature to safeguard Baird's constitutional rights under the Fourth, Fifth and Fourteenth Amendments.

51.     Defendants knew or should have known that Baird was entitled to such a preliminary examination hearing, but Defendants deprived Baird of that constitutionally protected right.

52.     It was clearly established that Baird had the right to a preliminary examination hearing based on the language in MCL § 767.4 and statements by the

Michigan Supreme Court. In 1972, the Michigan Supreme Court stated that MCL § 767.4 is a statute that has "specific statutory language" providing for a preliminary examination when it refers to a "hearing on the complaint or indictment" and disqualifies the judge who conducted the criminal inquiry or investigation from being the "examining magistrate" at that hearing. *See People v. Duncan*, 388 Mich. 489, 498-499, 201 N.W.2d 629 (1972), *overruled in part on other grounds*, *People v. Glass*, 464 Mich. 266, 627 N.W.2d 261 (2001).

53.    It further was well established under Michigan law that the term "examining magistrate" is a term of art used in Michigan law to describe the judge who conducts a preliminary examination hearing. *See, e.g.,* MCL § 766.1 ("The state and the defendant are entitled to a prompt examination and determination *by the examining magistrate* in all criminal causes ....") (emphasis added).

54.    MCL § 767.4 expressly requires that once an accused has been apprehended, "the judge having jurisdiction shall proceed with the case, matter or proceeding in like manner as upon formal complaint." It was also well established that that process requires the court to hold a preliminary examination hearing before an information may issue. *See* MCL § 764.1a(1) ("A magistrate shall issue a warrant or summons upon presentation of a proper complaint alleging the commission of an offense and a finding of reasonable cause to believe that the individual accused in the complaint committed that offense. The complaint must be sworn to before a

magistrate or clerk."); MCL § 767.42(1) ("An information shall not be filed against any person for a felony until such person has had a preliminary examination therefor, as provided by law, before an examining magistrate, unless that person waives his statutory right to an examination."); MCR 6.110(A) ("The defendant may waive the preliminary examination with the consent of the prosecuting attorney.").

55.    Defendants knew or should have known that as a matter of routine practice, preliminary examinations were routinely conducted after a one-man grand jury issued an indictment, including but not limited to the preliminary examinations conducted in the First Wave Investigations concerning the Flint Water Crisis.

56.    For example, in *People v. Bellanca*, 194 N.W.2d 863 (Mich. 1972), the defendant who was charged by a One-Man Grand Jury was entitled to transcripts of witness testimony given before the grand jury before the defendant's preliminary examination on the specific charges.

57.    In addition, in *In re Slattery*, 17 N.W.2d 251 (Mich. 1945), the court stated with regard to the One-Man Grand Jury: "[U]nder the laws of this State, hereinbefore referred to, the testimony is kept secret, but if the judge finds that a crime has been committed, he orders a warrant to be issued, *and an examination held in open court before a magistrate* and, if probable cause is shown, the accused is bound over for trial in the proper court." (Emphasis added).

58.    And in *People v. McCrea*, 6 N.W.2d 489 (Mich. 1942), the court stated:

"As a result of the grand-jury investigation indictments were returned and warrants were issued against McCrea and other defendants. The preliminary examinations were conducted before Judge Ferguson, and McCrea and other defendants were held for trial."

59.    The Michigan Legislature also made clear in a legislative investigation that a preliminary examination is required for a One-Man Grand Jury: *Committee Reports (Special Committee to Study and Report Upon the One-Man Grand Jury Law)* (hereinafter *Committee Reports*), 26 Mich St B J 11, 59 (1947) ("Before there can be a trial there must be an accusation, and in Michigan this may come in either of the following three ways: a. An Indictment voted by **\*394** a 23-Man Grand Jury; or b. A complaint and warrant issued in the customary way by a justice of the peace or other magistrate; or c. A complaint and warrant issued by a 'One-Man Grand Juror'. *In either of the last two instances the defendant is entitled to an examination before being bound over for trial.*" *Committee Reports (Special Committee to Study and Report Upon the One-Man Grand Jury Law),* 26 Mich St B J 11, 59 (1947) (emphasis added).

60.    Defendants knew or should have known there was no probable cause for a bindover of Baird. It was clearly established under Michigan law that Baird was entitled to a preliminary examination hearing to bind him over on felony charges.

61.     The failure to conduct the preliminary examination proves that the Defendants did not transition from the investigative to the judicial stage.

62.     According to Peeler, supra, on page 400: "And if a criminal process begins with a one-man grand jury, the accused is entitled to a preliminary examination before being brought to trial." This highlights that a preliminary examination is the procedural mechanism that transitions a case from the investigative phase to the judicial phase.

63.     On March 12, 2021, Baird filed a Motion to Proceed Upon a Formal Complaint In Conformity with MCL § 767.4 and for Remand for Preliminary Examination ("Due Process Motion"). Defendants opposed Baird's Due Process Motion.

64.     The Circuit Court heard oral argument on Baird's Due Process Motion on April 6, 2021.

65.     On June 16, 2021, the Genesee County Circuit Court entered an Order denying Baird's Due Process Motion.

66.     The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

67.     The Fifth Amendment to the United States Constitution states:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury … nor be deprived of life, liberty, or property, without due process of law.…

68.    The Due Process clause of the Fourteenth Amendment mandates that the State's process for charging a person of a crime must give that person fair notice of the criminal charges against him before depriving any person of life, liberty or property. The Due Process clause, Amendment XIV, §1, states:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

69.    Michigan has established the process for a preliminary examination hearing following the investigation of criminal charges by a One-Man Grand Jury to satisfy the constitutional procedural due process requirements of fair notice of criminal charges and ensuring probable cause exists to deprive a person of his liberty. *See Hicks v. Oklahoma*, 447 U.S. 343 (1980); *Albright v Oliver*, 510 U.S. 266 (1994); *People v. Peeler,* 984 N.W.2d 80 (Mich. 2022).

70.    Defendants orchestrated the criminal investigation process and opposed Baird's Due Process Motion, in violating of Baird's constitutional right to procedural due process, guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. Defendants also violated Baird's Fourth and Fourteenth

Amendment rights to a probable cause hearing before the deprivation of his liberty.

71.    Defendants manipulated the criminal investigation so that as a result, no probable cause hearing was held before or after (a) the filing of the "Indictment," Baird's indictment, (b) the deprivation of Baird's liberty, (c) the seizure of Baird's passport, (d) the restriction of Baird's travel in the United States so as to deprive him of the opportunity to visit his daughters in Minneapolis and Virginia, (e) and the significant expense of Baird's personal funds on attorneys' fees and costs.

72.    On July 2, 2021, Baird filed, with the Michigan Court of Appeals, an Interlocutory Application for Leave to Appeal the June 16, 2021, Order of the Genessee County Circuit Court.

73.    On August 25, 2021, the Michigan Court of Appeals denied the application for leave to appeal.

74.    On October 20, 2021, Baird filed, in the Michigan Supreme Court, an Interlocutory Application for Leave to Appeal the August 25, 2021, denial by the Michigan Court of Appeals.

75.    On March 17, 2022, the Michigan Supreme Court issued an order in Baird's pending Supreme Court application for leave to appeal, as follows:

> On order of the Court, the application for leave to appeal the August 25, 2021 order of the Court of Appeals is considered and, it appearing to this Court that the case of *People v. Peeler* (Docket No. 163667) is pending on appeal before this Court and that the decision in that case may resolve an issue raised in the present application for leave to appeal, we ORDER that the application be

held in ABEYANCE pending the decision in that case.

76.     On March 30, 2022, the Michigan Supreme Court issued another order

in Baird's pending application, holding:

> By order of March 17, 2022, this case was held in abeyance for *People v. Peeler* (Docket No. 163667). On the Court's own motion, we VACATE our abeyance order of March 17, 2022. The application for leave to appeal the August 25, 2021 order of the Court of Appeals is again considered. We direct the Clerk to schedule oral argument on the application for May 4, 2022. MCR 7.305(H)(1).
>
> The parties may file supplemental briefs by 5:00 p.m. on April 14, 2022, addressing whether a defendant charged with a felony after a proceeding conducted pursuant to MCL §§ 767.3 and MCL 767.4 is entitled to a preliminary examination. Each party may file a response brief by 5:00 p.m. on April 21, 2022. MCR 7.314(B)(1). The time allowed for oral argument shall be 10 minutes for each side. The motions to allow supplemental briefing and participate in oral argument are DENIED as moot.

77.     At the May 4, 2022 oral arguments before the Michigan Supreme Court

in Baird's, Lyons' and Peeler's cases, Defendant Nessel appeared in the courtroom.

78.     Attached as **Exhibit 3** is a true and correct copy of a May 4, 2021,

Acknowledgement by the FOIA Coordinator of the Department of Attorney General

reflecting the "meeting times of AG Dana Nessel and Solicator [sic] General Fadwa

Hammoud since January 1, 2019," which total 400 meetings.

79.     Nessel and Hammoud regularly received media clips referencing any

of the AG or SG offices' cases or that contained quotes of staff of the Attorney

General's or Solicitor General's Offices. The Flint Water cases were extensively

reported on by the media and thus Nessel and Hammoud were routinely apprised of the ongoing status and media coverage of them.

80. Moreover, Nessel and Hammoud reviewed, revised and commented on draft statements to the media regarding the Flint Water cases, as reflected by the email communications in **Exhibit 4.**

81. On May 18, 2022, the Michigan Court of Appeals ruled in *People v Baird:*

> The motion to hold the application for leave to appeal in abeyance is GRANTED. It appearing that a decision on the bypass application in *People v. Nicholas Lyon*, Michigan Supreme Court No. 164191, may resolve an issue raised in the present application for leave to appeal, the application is HELD IN ABEYANCE pending a decision in *People v. Nicholas Lyon* or until further order of this Court.

82. On June 28, 2022, the Michigan Supreme Court issued an opinion in *People v. Peeler, People v. Lyon,* and *People v. Baird,* consolidating the three appeals. The Michigan Supreme Court publicly rebuked Defendants in this case for multiple violations of Baird's and the other criminal defendants accused in the Second Wave Investigations in the Flint Water Crisis.

83. Specifically, the Michigan Supreme Court issued an unanimous opinion entitled *People v. Peeler,* stating:

> But for some reason, [the criminal defendants charged in the Second Wave Investigations] were not charged the way that almost everyone in Michigan is charged—with a criminal complaint issued by a prosecutor and followed by a preliminary examination in open court at which the accused can hear and challenge the prosecution's evidence. Instead, the prosecution chose to

25

proceed with these cases using what have become known as the "one man grand jury" statutes, MCL 767.3 and MCL 767.4.

*People v. Peeler,* 984 N.W.2d 80, 81 (Mich. 2022).

84.     This language implies that the lack of a preliminary examination leaves the case in an investigative posture, depriving the criminal defendant of the opportunity to transition into the judicial arena, where his rights are fully protected.

85.     Writing the unanimous opinion, Chief Judge Bridget McCormack stated: "A Genesee County judge served as the one-man 'grand' jury and considered the evidence not in a public courtroom but in secret, a Star Chamber comeback." *Id.*

86.     This characterization reinforces the view that without public judicial procedures like a preliminary examination, the process remains investigatory, lacking the transparency and adversarial testing of a judicial stage.

87.     The Michigan Supreme Court in *People v. Peeler* made clear that Defendants violated Baird's clearly established constitutional rights.

88.     The Michigan Supreme Court concluded unequivocally:

> MCL 767.3 and MCL 767.4 authorize a judge to investigate, subpoena witnesses, and issue arrest warrants. *But they do not authorize the judge to issue indictments. And if a criminal process begins with a one-man grand jury, the accused is entitled to a preliminary examination before being brought to trial.* Accordingly, we reverse the Genesee Circuit Court's orders denying Peeler's and Baird's motions to remand for a preliminary examination and denying Lyon's motion to dismiss. We remand to the Genesee Circuit Court for further proceedings consistent with this opinion.

*People v. Peeler,* 984 N.W.2d at 88 (emphasis supplied).

89.     This conclusion underscores that the case can only transition to the judicial stage with this crucial procedural safeguard.

90.     Despite the Michigan Supreme Court's explicit and unequivocal ruling on June 28, 2022, Defendants pressed on with their Flint Water Prosecution Team. Defendants wrongfully pursued their criminal investigations, seeking their pound of flesh, violating Baird's constitutional rights.

91.     At all relevant times, each Defendant was a member of the Flint Water Prosecution Team.

92.     At all relevant times, Defendant Nessel was involved in the Flint Water Prosecution Team, although she purported to remove herself from the investigation.

93.     Defendant Nessel closely followed the criminal investigations and prosecutions of the Second Wave Investigations, attending numerous meetings regarding the status of such investigations.

94.     Nessel attended oral argument before the Michigan Supreme Court in *People v. Peeler, Baird and Lyon*.

95.     On information and belief, Nessel agreed with and conspired with Hammoud and Worthy to pursue unwarranted criminal investigations and prosecutions of Baird without probable cause and orchestrated and manipulated the One-Man Grand Jury process in a manner to deprive Baird of his constitutional rights because they knew they lacked probable cause to indict pursuant to a properly

conducted preliminary examination hearing.

96.   Baird moved to dismiss the appeal before the Michigan Court of Appeals based on the Michigan Supreme Court's June 28, 2022 decision in *People v. Peeler*. Defendants, however, moved to affirm the trial court decision.

97.   On March 1, 2023, the Michigan Court of Appeals denied the motion to dismiss the appeal, which provided Defendants, as members of the Flint Water Prosecution Team, another opportunity to appeal Genesee County Circuit Court's ruling to the Michigan Supreme Court.

98.   On September 20, 2023, the Michigan Supreme Court denied Defendants' application for leave to appeal the March 1, 2023 order of the Michigan Court of Appeals.

99.   The Flint Water Prosecution Team pressed on, inexorably refusing to surrender to their obvious errors.

100.   In the ongoing criminal prosecution of Governor Snyder, on October 31, 2023, the Michigan Supreme Court denied the Flint Water Prosecution Team's attempt to appeal the dismissal of all criminal charges against Governor Snyder.

101.   Later on that same day, the Flint Water Prosecution Team issued a press release regarding the Michigan Supreme Court's denial of the Flint Water Prosecution Team's appeal of the dismissal of charges against former governor Richard Snyder, stating: "*This ruling effectively closes the door on the criminal prosecutions of the*

*government officials the People alleged to be responsible for the Flint Water Crisis"* and falsely stated *"without the People being permitted to admit a single item of evidence in open court."* (Emphasis supplied).

102.   Except for the initial Genesee County Circuit Court rulings, Defendants lost every substantive motion related to the flawed criminal procedures they employed against Baird.

103.   The heart and soul of this Section 1983 case against Defendants is that they denied Baird his constitutionally guaranteed rights to be free of illegal searches and seizures and to be guaranteed the due process of law.

104.   As Michigan Supreme Court Justice Richard Bernstein forcefully reiterated in his concurring opinion in *People v Peeler*:

> I concur fully with the Court's opinion but write separately to address the significant interests implicated in this case. *Today, this Court recognizes what we have always known to be true: procedure matters.* It is, in fact, the foundation of our adversarial process. Indeed, our adversarial system of justice 'is premised on the well-tested principle that truth—as well as fairness—is best discovered by powerful statements on both sides of the question.' Penson v Ohio, 488 US 75, 84; 109 S Ct 346; 102 L Ed 2d 300 (1988) (quotation marks and citations omitted)."

 *People v. Peeler,* 984 N.W.2d at 89 (emphasis supplied).

105.   Dana Nessel blatantly disregarded the law, as her office willfully failed to protect privileged documents, producing such materials despite requests for a clawback and establishing a taint team, which, on information and beliefs, was not

formed. This indiscriminate disclosure violated a federal bankruptcy court's confidentiality order, leading to a motion for contempt by Governor Snyder. It was reported in the Detroit Free Press that the Attorney General's office argued that prosecutors were unaware of orders protecting the bankruptcy documents. https://www.freep.com/story/news/local/michigan/2023/10/11/flint-water-judge-finds-nessel-agency-in-civil-contempt/71147345007/

106.   Nevertheless, the Bankruptcy Judge held that the "entire department at all times was bound to comply."(Id)

107.   Danny Wimmer, a spokesman for the attorney general's office, stated publicly: "We respect the court's ruling..." (Id)

108.   U.S. Bankruptcy Judge Thomas Tucker then ruled that the state must pay Snyder's legal fees for raising the issue.

### **Count I – 42 U.S.C. § 1983 – Deprivation of Fourth Amendment Rights**

109.   Plaintiff realleges and incorporates by reference all preceding paragraphs.

110.   42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or

omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

111. Defendants violated Plaintiff's Fourth Amendment right to a probable cause determination before restraining his liberty.

112. Defendants did so by indicting Baird using Michigan's One Person Grand Jury, instead of obtaining a warrant for his arrest or indicting him with a traditional citizens Grand Jury.

113. Baird was ordered to turn himself in on penalty of being arrested.

114. When Baird turned himself in to the authorities, his liberty was restrained in the following ways:

    a. He was fingerprinted and his mug shot was taken, and he was not free to go during this process;

    b. He had to surrender his passport;

    c. He was not allowed to leave the State to visit his daughters without permission from the Court;

    d. He could not talk to any of the other defendants in the other Flint Water Crisis cases, who included his friends and colleagues; and

    e. He was compelled to spend hundreds of thousands of dollars to defend himself.

115.   Before restraining Baird's liberty in the above-mentioned ways, Defendants never obtained a ruling from a Court or a Grand Jury that there was probable cause to believe that Baird had committed a crime, or that there was probable cause to bind him over for trial.

116.   Not only did the above-mentioned violations of Plaintiff's Fourth Amendment rights damage him by restraining his liberty, but he was prevented from having a probable cause conference, which would have given him the opportunity to see the evidence that had been presented to the Judge, asking to have the conditions of his bond revisited, asking to have the charges reduced to a misdemeanor, and asking to have the charges dismissed.

117.   In January 2021 when Baird was indicted, the right to a probable cause determination before restraining his liberty was clearly established under the Fourth Amendment, first in *Gerstein v. Pugh,* 420 U.S. 103 (1975), and later in *Albright v. Oliver,* 510 U.S. 266 (1994).

118.   Defendants, acting individually under color of State of Michigan law as licensed attorneys and elected/appointed prosecutors, deprived Baird of his rights against unreasonable searches and seizures violating the Fourth Amendment of the United States Constitution by, among other things:

> a.  Misusing the criminal investigation process in MCL §§ 767.3 and 767.4 to act as a "one-man grand jury" to bring felony charges

against Baird that lacked probable cause, resulting in deprivation of Baird's liberty;

b. Misusing the criminal investigation process contrary to the plain terms of MCL §§ 767.3 and 767.4 to include a purported "Indictment" and then subsequent refusal to afford Baird the due process of a preliminary examination hearing, resulting in the arrest and seizure of Baird without probable cause;

c. Bypassing the well-established processes for a criminal investigation, complaint and a preliminary examination, violating Baird's Fourth Amendment rights to be free from seizure without probable cause;

d. Depriving Baird of his right to a preliminary examination, violating Baird's Fourth Amendment rights to be free from seizure without probable cause;

e. Insisting that the one-man grand juror consider evidence in secret, resulting in a violation of Baird's Fourth Amendment rights to be free from seizure without probable cause;

f. Denying Baird the opportunity to challenge the evidence against him before a judge decided whether to deprive him of his liberties and bind him over for a trial;

g. Failing and/or refusing to provide exculpatory evidence for 6 months,

resulting in Baird's deprivation of his right to challenge his unlawful seizure and deprivation of liberty without probable cause;

h.  Failing and/or refusing to provide the requested discovery to Baird, preventing him from mounting a challenge to the purported "Indictment" and his illegal seizure and deprivation of liberty without probable cause;

i.  Seeking and obtaining a purported "Indictment" after the statutory time limit for the judicial inquiry process had expired (i.e., greater than 6 months after the judicial inquiry had been ordered convened, in fact, more than 12 months later);

j.  Improperly seeking and obtaining two 6-month extensions of the judicial inquiry;

k.  Seeking and obtaining an "Indictment" on January 8, 2021 without probable cause;

l.  Failing and/or refusing to comply with the criminal inquiry statutory provisions in MCL §§ 767.3 and 767.4, resulting in the illegal seizure and deprivation of Baird's liberty without probable cause;

m. Treating Baird differently from other targets of criminal investigations and putative criminal defendants; and

n.  Confiscating Baird's passport, restricting his travel so that he could

not visit his daughters in Minneapolis and in Virginia, forcing him

to post bond, compelling him to spend huge sums of money on

criminal, defense costs, and fees, humiliating him and causing him

severe mental and emotional distress, as a result of the illegal seizure

and deprivation of Baird's liberty without probable cause.

119.   Defendants' conduct deprived Baird of his rights, privileges, or

immunities secured by the Constitution or laws of the United States as stated

throughout this Complaint.

120.   As demonstrated above, each Defendant actively participated in the

violation of Baird's constitutional rights. Defendants know and at all relevant times

knew that Baird has a clearly established right to the right to be free of unreasonable

searches and seizures that can occur only upon establishment of probable cause, and

that probable cause is established at a preliminary examination hearing under

Michigan law. A reasonable person would know that failing to afford Baird a

preliminary examination hearing would violate Baird's constitutional rights.

121.   As a direct and proximate result of Defendants' unlawful actions,

Plaintiff has suffered damages, including:

    a.   Deprivation of liberty, as stated above;

    b.   Mental and emotional distress;

    c.   Conscious pain and suffering;

    d.  Attorney fees approximating $800,000.00 to defend himself in the criminal investigation and related proceedings;

    e.  The money necessary to post a bond; and

    f.  Reputational damage.

118. As detailed above, Defendants' unlawful conduct was intentional, grossly negligent, or amounted to reckless and/or callous indifference to Baird's constitutional rights.

119. As a result of Defendants' unlawful conduct, Baird has incurred attorneys' fees and costs to bring this lawsuit and seeks recovery of those fees and costs pursuant to 42 U.S.C. § 1988.

120. Additionally, Baird seeks punitive damages as a result of Defendants' egregious conduct.

### Count II – 42 U.S.C. § 1983 – Deprivation of Fifth and Fourteenth Amendment Due Process Rights

121. Plaintiff realleges and incorporates by reference all preceding paragraphs.

122. In addition to violating Baird's Fourth Amendment rights by restraining his liberty without a probable cause determination, Defendants also violated Baird's Fifth and Fourteenth Amendment rights by indicting him using the One Person Grand Jury, and not providing him with the rights guaranteed to criminal defendants by Michigan law at MCL 764 and 766, *inter alia*.

36

123.   Although it was a State law that the Defendants violated, the violation of State law violated Baird's Due Process rights under the Fifth and Fourteenth Amendments because he had a constitutional right to expect that Defendants would comply with the State law protections afforded criminal defendants.

124.   The constitutional right to expect that Defendants would follow State law criminal procedure was clearly established in 1980 in *Hicks v. Oklahoma,* 447 U.S. 343 (1980).

125.   Moreover, Defendants knew that it was a violation of Baird's rights to indict him using a One Person Grand Jury instead of getting a warrant or indicting him with a citizens Grand Jury, as evidenced by the fact that they complied with State law when they previously charged other defendants in the Flint Water Crisis cases, such as Nick Lyons.

126.   It became clear when defendant Lyons challenged probable cause with a motion to dismiss, based on the questioning from Genesee County Circuit Court Judge Farah, that Judge Farah was likely to grant the motion and dismiss the claims, so Defendants voluntarily dismissed the case before Judge Farah could issue his ruling.

127.   After pursuing criminal charges using the right criminal procedure with constitutional protections for defendants and not getting what they wanted, Defendants deliberately proceeded with criminal charges against Baird in a way that

they knew was unlawful under Michigan law, to get an indictment against Baird without being required to show probable cause, in violation of State law and in violation of Baird's federal Due Process rights.

128.  The Michigan Supreme Court made it clear in its June 2022 ruling in the *Peeler* case that Defendants had misused the One Person Grand Jury statute and had violated Michigan law by doing so.

129.  The fact that *Peeler* was decided in June 2022 does not negate the fact that it was clearly established in January 2021 that Defendants could not indict Baird using a One Person Grand Jury, because *Peeler* did not make new law.

130.  It is clear from *People v. Duncan*, 201 N.W.2d 629 (Mich. 1972); *People v. Green*, 913 N.W.2d 385 (Mich. App. 2018), *overruled on other grounds in Peeler,* and *People v. Robinson,* No. 365336, 2024 WL 2981519 (Mich. Ct. App. June 13, 2024), that the plain language of the One Person Grand Jury statute does not allow the grand juror judge to indict, but merely to investigate.

131.  As the court in *Robinson* made clear, "*Peeler*'s holdings did not establish any new rule because the Court did not announce a new rule that was not dictated by precedent. Instead, *Peeler*'s decision was based on the proper interpretation of longstanding statutory authority in existence" because the right to a preliminary examination had existed since 1859. *People v. Robinson*, *supra,* at *4.

132.  Defendants, acting individually under color of State of Michigan law

as licensed attorneys and elected/appointed prosecutors, deprived Baird of his procedural due process rights under the Fifth and Fourteenth Amendments to the United States Constitution by, among other things:

a. Misusing the criminal investigation process in MCL §§ 767.3 and 767.4 to act as a "one- man grand jury" to bring felony charges against Baird that lacked probable cause, resulting in violation of Baird's right to due process before deprivation of his liberty;

b. Misusing the criminal investigation process contrary to the plain terms of MCL §§ 767.3 and 767.4 to include a purported "Indictment" and then subsequent refusal to afford Baird the due process of a preliminary examination hearing, resulting in the arrest and seizure of Baird without probable cause;

c. Bypassing the well-established processes for a criminal investigation, complaint and a preliminary examination, violating Baird's rights to due process before deprivation of his liberty without probable cause, including the right to fair notice and an adequate opportunity to be heard by an impartial and unbiased decision-maker;

d. Depriving Baird of his right to a preliminary examination, violating Baird's due process rights;

e. Insisting that the one-man grand juror consider evidence in secret,

resulting in a violation of Baird's due process rights;

f.   Denying Baird the opportunity to challenge the evidence against him before a judge decided whether to deprive him of his liberties and bind him over for a trial;

g.   Failing and/or refusing to provide exculpatory evidence for 6 months, resulting in Baird's deprivation of his due process rights to challenge his unlawful seizure and deprivation of liberty without probable cause;

h.   Failing and/or refusing to provide the requested discovery to Baird, preventing him from mounting a challenge to the purported "Indictment" in violation of his due process rights;

i.   Seeking and obtaining a purported "Indictment" after the statutory time limit for the judicial inquiry process had expired (i.e., greater than 6 months after the judicial inquiry had been ordered convened, in fact, more than 12 months later);

j.   Improperly seeking and obtaining two 6-month extensions of the judicial inquiry;

k.   Seeking and obtaining an "Indictment" on January 8, 2021 without probable cause;

l.   Failing and/or refusing to comply with the criminal inquiry statutory provisions in MCL §§ 767.3 and 767.4, resulting in the violation of

Baird's due process rights to challenge the illegal seizure and deprivation of his liberty without probable cause;

m. Treating Baird differently from other targets of criminal investigations and putative criminal defendants; and

n. Confiscating Baird's passport, restricting his travel so that he could not visit his daughters in Minneapolis and in Virginia, forcing him to post bond, compelling him to spend huge sums of money on criminal, defense costs, and fees, humiliating him and causing him severe mental and emotional distress, as a result of the illegal seizure and deprivation of Baird's liberty without probable cause.

133.   Defendants' conduct deprived Baird of his rights, privileges, or immunities secured by the Constitution or laws of the United States as stated throughout this Complaint.

134.   As demonstrated above, each Defendant actively participated in the violation of Baird's constitutional rights. Defendants know and at all relevant times knew that Baird has a clearly established right to be free of unreasonable searches and seizures that can occur only upon establishment of probable cause, that probable cause is established at a preliminary examination hearing under Michigan law, and that Baird has the right to due process. A reasonable person would know that failing to afford Baird a preliminary examination hearing would violate Baird's

constitutional due process rights.

135.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered damages, including:

   a.  Deprivation of liberty, as stated above;

   b.  Mental and emotional distress;

   c.  Conscious pain and suffering;

   d.  Attorney fees approximating $800,000.00 to defend himself in the criminal investigation and related proceedings;

   e.  The money necessary to post a bond; and

   f.  Reputational damage.

136.   As detailed above, Defendants' unlawful conduct was intentional, grossly negligent, or amounted to reckless and/or callous indifference to Baird's constitutional due process rights.

137.   As a result of Defendants' unlawful conduct, Baird has incurred attorneys' fees and costs to bring this lawsuit and seeks recovery of those fees and costs pursuant to 42 U.S.C. § 1988.

138.   Additionally, Baird seeks punitive damages as a result of Defendants' egregious conduct.

## Count III – 42 U.S.C. § 1983 – Conspiracy to Violate Baird's Constitutional Rights

139.   Plaintiff realleges and incorporates by reference all preceding

paragraphs.

140.   No Defendant acted alone in violating Baird's constitutional rights.

141.   Each Defendant worked together as the Flint Water Prosecution Team in orchestrating the criminal investigation and misusing the One-Man Grand Jury process to violate Baird's constitutional rights under the Fourth, Fifth and Fourteenth Amendments.

142.   The purpose of the conspiracy was to achieve a criminal prosecution against Baird, which Defendants knew could not be done in compliance with Baird's constitutional rights.

143.   The conspiracy resulted in Baird's constitutional rights being violated, including by the filing of a purported "Indictment" without probable cause, resulting in the deprivation of liberty and unreasonable seizure without due process of law.

144.   Defendant Nessel had the ultimate policy-making authority. Conspiracy liability exists under 42 U.S.C. § 1983 to impose liability on each person involved, regardless of who performed the specific acts in the criminal investigation and purported "Indictment" of Baird and ongoing violation of his constitutional rights until the criminal charges against him were dismissed.

145.   Each Defendant, by acting to violate Baird's constitutional rights as detailed above, did not act within the scope of their employment.

**WHEREFORE,** the Plaintiff, Richard L. Baird, respectfully requests that this

Honorable Court enter judgment on all counts and award Plaintiff the following:

    a.  Compensatory damages as determined by a jury at trial, including but not limited to damages for reputational damage, emotional distress, attorney's fees and costs approximating $800,000.00 incurred in the criminal investigation and related proceedings; the cost of posting a bond; and other compensatory damages proven at trial;

    b.  Punitive damages as determined by a jury at trial;

    c.  All other damages allowed by 42 U.S.C. § 1983;

    d.  An award of attorneys' fees and costs under 42 U.S.C. § 1988; and

    e.  Any other legal or equitable relief this Court deems proper.

## Jury Demand

Plaintiff Richard L. Baird demands a trial by jury.

December 6, 2024               Respectfully submitted,

                                      Rizik & Rizik
                                      By: Michael B. Rizik Jr. (P33431)
                                      9400 S. Saginaw St., Ste. E
                                      Grand Blanc, MI 48439
                                        Phone: 810-953-6000
                                        Fax: 810-953-6005
                                        Cell: 810-610-2673
                                        lawyers@riziklaw.com
                                        autumn@riziklaw.com

Michael Edmunds
Gault Davison, PC
8305 S. Saginaw, Suite 8
Grand Blan, MI 48439
Phone: 810-234-3633
Fax: 810-771-5341
medmunds@gaultdavison.com

Nancy A. Temple
Katten & Temple, LLP
209 S. LaSalle St., Suite 950
Chicago, IL 60604
Phone: (312) 663-0800
ntemple@kattentemple.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on **December 6, 2024**, I electronically filed the foregoing **Second Amended Complaint** with the Clerk of the Court using the CM/ECF system which sent notification of filing to all counsel of record.

By: /s/ *Michael B. Rizik, Jr.*

 Michael B. Rizik Jr. (P33431)
Rizik & Rizik
9400 S. Saginaw St., Ste. E
Grand Blanc, MI 48439
Phone: 810-953-6000
Fax: 810-953-6005
Cell: 810-610-2673
lawyers@riziklaw.com
autumn@riziklaw.com

Michael Edmunds
Gault Davison, PC
8305 S. Saginaw, Suite 8
Grand Blan, MI 48439
Phone: 810-234-3633
Fax: 810-771-5341
medmunds@gaultdavison.com

Nancy A. Temple
Katten & Temple, LLP
209 S. LaSalle St., Suite 950
Chicago, IL 60604
Phone: (312) 663-0800
ntemple@kattentemple.com