UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD L. BAIRD,

     Plaintiff,

v

DANA M. NESSEL, FADWA A.
HAMMOUD and KYM L.
WORTHY,

     Defendants.

_____/

No. 2:24-CV-11205

HON. ROBERT J. WHITE

MAG. KIMBERLY G. ALTMAN

**ORAL ARGUMENT
REQUESTED**

**DEFENDANT ATTORNEY GENERAL DANA NESSEL'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED
COMPLAINT**

Defendant Attorney General Dana Nessel, through counsel, brings
this motion under Fed. R. Civ. P. 12(b)(6), and asks this Court to enter
an order dismissing Plaintiff Richard Baird's second amended
complaint for the reasons set forth in the accompanying brief.

Counsel for the Attorney General conferred with counsel for Baird
via telephone on January 3, 2025. During this conference, counsel for
the Attorney General explained the nature of the motion, its legal basis,
and the requested relief. Counsel did not obtain concurrence in the
relief sought.

Respectfully submitted,

*/s/ Kyla L. Barranco*
Kyla L. Barranco (P81082)
Assistant Solicitor General

Mark E. Donnelly (P39281)
Special Assistant Attorney
General

Attorneys for Defendant Nessel
Mich. Dep't of Attorney General
P.O. Box 30212
Lansing, Michigan 48909
517.335.7628
barrancok@michigan.gov
donnellym@michigan.gov

Dated:  January 10, 2025

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD L. BAIRD,

      Plaintiff,

v

DANA M. NESSEL, FADWA A.
HAMMOUD, and KYM L.
WORTHY,

      Defendants.

No. 2:24-cv-11205

HON. ROBERT J. WHITE

MAG. KIMBERLY G. ALTMAN

**ORAL ARGUMENT
REQUESTED**

_____/

**BRIEF IN SUPPORT OF DEFENDANT ATTORNEY GENERAL
DANA NESSEL'S MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT**

Kyla L. Barranco (P81082)
Assistant Solicitor General

Mark E. Donnelly (P39281)
Special Assistant Attorney
General

Attorneys for Defendant Nessel
Mich. Dep't of Attorney General
P.O. Box 30212
Lansing, Michigan 48909
517.335.7628
barrancok@michigan.gov
donnellym@michigan.gov

Dated:  January 10, 2025

# TABLE OF CONTENTS

<u>Page</u>

Table of Contents ..................................................................................i

Index of Authorities.............................................................................ii

Concise Statement of Issues Presented ....................................................v

Controlling or Most Appropriate Authority..............................................v

Statement of Facts ..............................................................................1

Standard of Review ............................................................................8

Argument..........................................................................................9

I.  The Attorney General has absolute prosecutorial immunity
    for all of Baird's claims......................................................................9

II. The Attorney General has qualified immunity for all of
    Baird's claims. ..............................................................................17

III. The Attorney General was not personally involved for
    purposes of § 1983 in the Flint Water criminal cases. .................22

Conclusion and Relief Requested...........................................................25

Certificate of Service (e-file)..................................................................26

Brief Format Certification Form............................................................27

# INDEX OF AUTHORITIES

Page

## Cases

*Albright v. Oliver*, 510 U.S. 266 (1994).....................................................20

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)..................................................18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................8, 22, 25

*Barnett v. Smithwick*, 835 F. App'x 31 (6th Cir. 2020) ...........................18

*Becker v. Kroll*, 494 F.3d 904 (10th Cir. 2007)........................................21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................8, 25

*Bellamy v. Bradley*, 729 F.2d 416 (6th Cir. 1984) ...................................22

*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993).......................10, 12, 14, 17

*Burns v. Reed*, 500 U.S. 478 (1991).....................................................9, 15

*Cady v. Arenac Cnty.*, 574 F.3d 334 (6th Cir. 2009) .................................9

*Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.,* 508 F.3d 327
    (6th Cir. 2007) .......................................................................................4

*Dillard v. Bomar*, 342 F.2d 789 (6th Cir. 1975) .....................................19

*District of Columbia v. Wesby*, 583 U.S. 48 (2018) .................................17

*Gerstein v. Pugh*, 420 U.S. 103 (1975) ....................................................19

*Greene v. Barber*, 310 F.3d 889 (6th Cir. 2002) ......................................24

*Grinter v. Knight*, 532 F.3d 567 (6th Cir. 2008) .....................................22

*Hampton v. Chicago*, 484 F.2d 602 (7th Cir. 1973) ................................13

*Hicks v. Oklahoma*, 447 U.S. 343 (1980) ................................................21

*Higgason v. Stephens*, 288 F.3d 868 (6th Cir. 2002) ...............................10

*Huron Valley Hosp., Inc. v. Pontiac*, 887 F.2d 710 (6th Cir. 1989) ........ 19

*Imbler v. Pachtman*, 424 U.S. 409 (1976) ............................................... 10

*Ireland v. Tunis*, 113 F.3d 1435 (6th Cir. 1999) ............................... 11, 16

*Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019) ................. 22

*Jones v. Bock*, 549 U.S. 199 (2007) ....................................................... 8

*Kalina v. Fletcher*, 522 U.S. 118 (1997) ........................................... 13, 14

*Malley v. Briggs*, 475 U.S. 335 (1986) .................................................. 12

*Manuel v. City of Joliet*, 580 U.S. 357 (2017) ....................................... 21

*Martin v. City of Broadview Heights*, 712 F.3d 951 (6th Cir. 2013) ...... 17

*Mattera v. Baffert*, 100 F.4th 734 (6th Cir. 2024) .................................... 8

*Miller v. Calhoun Cnty.*, 408 F.3d 803 (6th Cir. 2005) ........................... 22

*Pearson v. Callahan*, 555 U.S. 223 (2009) ........................................... 17

*People v. Green*, 913 N.W.2d 385 (Mich. Ct. App. 2018) .................... 5, 19

*People v. Hall*, 460 N.W.2d 520 (Mich. 1990) ...................................... 19

*People v. Peeler*, 984 N.W.2d 80 (Mich. 2022) ............................... 5, 6, 19

*Prince v. Hicks*, 198 F.3d 607 (6th Cir. 1999) .................................. 11, 15

*Radvanksky v. City of Olmsted Falls*, 395 F.3d 291 (6th Cir. 2005) ...... 21

*Redmond v. Worthinton*, 878 F. Supp. 2d 822 (E.D. Mich. 2012) .......... 18

*Reichle v. Howards*, 566 U.S. 658 (2012) ............................................. 17

*Scott v. Clay Cnty.*, 205 F.3d 867 (6th Cir. 2000) ................................. 20

*Siefert v. Hamilton Cnty.*, 951 F.3d 753 (6th Cir. 2020) .......................... 8

*Snow v. State of Oklahoma*, 489 F.2d 278 (10th Cir. 1973) ................... 19

*Spurlock v. Thompson*, 330 F.3d 791 (6th Cir. 2003) ............................ 10

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) .......................... 16

*United States v. R. Enterprises, Inc.*, 498 U.S. 292 (1991) ..................... 15

*Van Buren v. Crawford Cnty.*, No. 13-14565, 2017 WL 3479546
    (E.D. Mich. Aug. 14, 2017) ................................................................. 22

## Statutes

Mich. Comp. Laws § 767.20 .................................................................... 14

Mich. Comp. Laws § 767.3 ........................................................... *passim*

Mich. Comp. Laws § 767.4 ........................................................... *passim*

## CONCISE STATEMENT OF ISSUES PRESENTED

1. Absolute immunity protects prosecutors acting within the scope of their duties in initiating and pursuing criminal prosecutions.  Even assuming that the Attorney General was personally involved in Baird's criminal case, he alleges conduct squarely tied to the Attorney General's role as an advocate.  Does the Attorney General have absolute prosecutorial immunity?

2. Qualified immunity protects government officials from liability so long as their alleged conduct does not violate clearly established federal rights of which a reasonable person would have known.  Baird cannot show that the Attorney General violated clearly established federal rights.  Does the Attorney General have qualified immunity?

3. To maintain a claim under 42 U.S.C. § 1983, a plaintiff must allege that each defendant had personal involvement in the alleged deprivation of his rights.  Baird sets forth only conclusory and speculative allegations in support of the Attorney General's personal involvement.  Does the second amended complaint fail to allege sufficient personal involvement by the Attorney General?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

_Authority_:  *Burns v. Reed*, 500 U.S. 478 (1991);
*District of Columbia v. Wesby*, 583 U.S. 48 (2018);
*Huron Valley Hosp., Inc. v. Pontiac*, 887 F.2d 710
(6th Cir. 1989);
*Grinter v. Knight*, 532 F.3d 567 (6th Cir. 2008);
*People v. Peeler*, 984 N.W.2d 80 (Mich. 2022);
*People v. Green*, 913 N.W.2d 385 (Mich. Ct. App. 2018);
Mich. Comp. Laws § 767.3;
Mich. Comp. Laws § 767.4.

## STATEMENT OF FACTS

**Baird is indicted under Michigan's one-man grand jury provisions without a preliminary examination.**

This case arises from the Flint Water crisis and the criminal prosecutions that followed this public health crisis in Michigan.  (2nd Am. Compl., ECF No. 41, PageID.743–744, ¶ 6.)  Although the "first wave" of criminal prosecutions stemming from the crisis began under Attorney General Bill Schuette's administration through Todd Flood, (*see id.*, PageID.748–749), a "second wave" of criminal prosecutions began after Attorney General Dana Nessel took office in 2019, (*id.* at PageID.749).  Baird, former-Senior Advisor to Governor Rick Snyder, was prosecuted under this second wave of criminal prosecutions.  (*Id.*)

Baird's criminal proceedings were initiated through Michigan's one-man grand jury provisions, specifically Mich. Comp. Laws §§ 767.3 and 767.4.  (ECF No. 41, PageID.751, ¶ 32.)  The first provision provides in relevant part:

> Whenever by reason of the filing of any complaint . . . or upon the application of the . . . attorney general, any judge of a court of law and of record shall have probable cause to suspect that any crime, offense or misdemeanor has been committed within his jurisdiction, and that any persons may be able to give any material evidence respecting such suspected crime, offense or misdemeanor, such judge in his

1

> discretion may make an order directing that an inquiry be
> made into the matters relating to such complaint . . . .
> [Mich. Comp. Laws § 767.3.]

Consistent with this provision, then-Solicitor General Fadwa

Hammoud[1] filed an application for appointment of a one-person grand

jury in the Genesee County Circuit Court.  (Pl's Ex. 1, ECF No. 41-1,

PageID.789.)

The Order of Appointment, entered on January 9, 2020, and

attached to Baird's second amended complaint, granted "[t]he Solicitor

General's request for the assignment of a judge of this Court to sit as a

one-person grand jury."  (*Id.*)  The court provided that "there is probable

cause to suspect that certain crimes arising out of the Flint Water

Crisis have been committed[,]" and it assigned Judge David Newblatt to

serve as the one-person grand jury.  (*Id.*)  The court further ordered, in

part, the following:

- "The appointed judge shall convene one-person grand jury
  proceedings on January 1, 2020, in Genesee County and
  continue in session from time to time as directed by the
  Court for the purpose of examining the matters relating to

---

[1] Although Baird alleges that "Defendants caused Chief Judge Duncan
Beagle to appoint 7th Circuit Court Judge David J. Newblatt to conduct
an investigation according to MCL §§ 767.3 and 767.4[,]" (ECF No. 41,
PageID.751, ¶ 32), the Order specifies that it was the Solicitor General
who requested the appointment, (ECF No. 41-1, PageID.789).

the Solicitor General's Application and into the common
scope of the inquiry[ ]";

- "[T]he appointed judge shall . . . require the persons
named as possessing material evidence appear and
answer questions as the judge may require . . . [,] summon
or subpoena such witnesses and command appearance of
the same . . . [,] comply with all secrecy provisions . . . [,]
and comply with all other statutory obligations regarding
immunity, docketing, journaling, accounting, etc. . . . ";

- "The appointed judge may . . . request the Solicitor General
. . . , or her designees, to examine witnesses in the presence of
the grand jury, and advise the jury on legal matters, . . . or,
alternatively, entertain a request from the Solicitor General . . .
for her, or her designees, to appear before the grand jury to
offer information regarding any matter cognizable by the grand
jury . . . [,]"; and

- [T]he Solicitor General . . . , or her designees, may issue
subpoenas for those witnesses as may be ordered by the Court,
for the purpose of compelling the attendance of witnesses who
shall be necessary for the purpose of conducting the
investigation." [*Id.*, PageID.790–791.]

The Attorney General was not referenced in the Order of Appointment.

Approximately one year later, on January 8, 2021, Judge

Newblatt, as the one-man grand juror, issued a four-count felony

indictment against Baird.  (Pl's Ex. 2, ECF No. 41-2, PageID.794–795.)

On January 13, 2021, Judge Newblatt issued an arrest warrant for

Baird, which listed the four felonies—perjury during an investigative

subpoena examination, misconduct in office, obstruction of justice, and

3

extortion—and found that there was "probable cause to believe that Richard Louis Baird is guilty" of these crimes and ordered his arrest. (ECF No. 29-3, PageID.541–542).)[2]  As explained in Baird's complaint, the arrest was authorized by Mich. Comp. Laws § 767.4.  (ECF No. 41, PageID.756, ¶ 39, explaining that under Mich. Comp. Laws § 767.4 "the judge may authorize an arrest warrant" (emphasis omitted).)  "Baird surrendered himself voluntarily for booking[,]" and the court subsequently "confiscated Baird's passport" and restricted his travel. (*Id.*, PageID.757–758, ¶¶ 46, 47.)  Consistent with then valid caselaw, no preliminary examination was held.

On March 12, 2021, Baird moved to proceed upon a formal complaint and for remand for a preliminary examination.  (*Id.*,

---

[2] Baird did not attach the arrest warrant to his second amended complaint.  But he references it in that complaint, (ECF No. 41, PageID.772, ¶ 112), his claims are premised in large part on the use of the one-man grand jury provisions to obtain an indictment and arrest warrant simultaneously, (*id.*, PageID.756, 767, 772, ¶¶ 39, 88, 112), as well as the purported lack of probable cause supporting his arrest, (*id.*, PageID.745, 756, 758, ¶¶ 13, 39, 48).  Consequently, the warrant may be considered part of the pleadings.  *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.,* 508 F.3d 327, 335–36 (6th Cir. 2007) ("[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment.").

PageID.762, ¶ 63.)  The trial denied the motion on June 16, 2021.  (*Id.*,

¶ 65.)  Baird filed an application for leave to appeal to the Michigan

Court of Appeals, which denied leave "for lack of merit."  *People v.*

*Peeler*, 984 N.W.2d 80, 82 (Mich. 2022); (ECF No. 41, PageID.764, ¶¶

72–73).  Baird, along with other criminal defendants, then filed

applications for leave to appeal in the Michigan Supreme Court.  (ECF

No. 41, PageID.764, ¶ 74.)

### The Michigan Supreme Court holds that a defendant charged by a one-man grand jury is entitled to a preliminary examination.

Ultimately, the Michigan Supreme Court granted leave to appeal

the issue of "whether a defendant charged with a felony after a

proceeding conducted pursuant to Mich. Comp. Laws § 767.3 and Mich.

Comp. Laws § 767.4 is entitled to a preliminary examination."  (ECF

No. 41, PageID.765, ¶ 76.)  The court answered in the affirmative on

June 28, 2022.  *Id.* at 84.  In doing so, it relied on the language of the

statutory provisions as well as "historical practice."  *Peeler*, 984 N.W.2d

at 84–85.  However, it also overruled previous case law, including

*People v. Green*, 913 N.W.2d 385 (Mich. Ct. App. 2018), which held that

there was no statutory right to a preliminary examination for those

5

charged under the one-man grand jury provisions. *Peeler*, 984 N.W.2d at 85 ("[T]he Court of Appeals was wrong . . . when it held that the one-person grand-jury procedure 'serve[s] the same function' as a preliminary examination. We overrule *Green*.").

The Michigan Supreme Court further held that the Mich. Comp. Laws § 767.4 "does not grant the judge conducting the inquiry the authority to issue indictments." *Peeler*, 984 N.W.2d at 86. It confirmed, however, that the statute does authorize a judge to issue an arrest warrant if he or she finds " 'that there is probable cause.' " *Id.* at 87 (quoting Mich. Comp. Laws § 767.4). And it did not invalidate either Mich. Comp. Laws § 767.3 or § 767.4. *Peeler*, 984 N.W.2d at 88.

Ultimately, Baird's criminal case was dismissed.

**Baird files suit.**

On May 6, 2024, Baird filed suit against the Attorney General, Hammoud, and Wayne County Prosecutor Kym Worthy in their individual capacities. (Compl., ECF No. 1, PageID.2, 8, ¶¶ 6–9, 48.) The original complaint contained one count, which alleged a procedural due process claim stemming from the Flint Water Prosecution Team's decision to utilize Michigan's one-man grand jury provisions. (*Id.*, ¶

6

48(a).)  In particular, Baird asserted that the failure to provide him with a preliminary examination in connection with those provisions violated his constitutional rights.  (*Id.*, ¶ 48(A)–(L).)

Following the filing of motions to dismiss by the Attorney General, Hammoud, and Worthy (ECF Nos. 20, 21), the filing of a motion for leave to file a first amended complaint by Baird (ECF No. 25), and a hearing on all motions on November 14, 2024, this Court issued an order that (1) granted Baird's motion for leave to amend the complaint, (2) denied as moot and without prejudice Defendants' motions to dismiss, and (3) granted Baird leave to file a second amended complaint.  (11/15/24 Order, ECF No. 37, PageID.651.)

On December 6, 2024, Baird filed a second amended complaint, naming the same Defendants.  It asserts three counts: (1) violation of the Fourth Amendment (unreasonable search and seizure); (2) violation of the Fifth and Fourth Amendments (procedural due process); and (3) conspiracy to violate the Fourth, Fifth, and Fourteenth Amendments.

The Attorney General moves to dismiss under Fed. R. Civ. P. 12(b)(6) and, through counsel, sought Baird's concurrence, which was denied.

## STANDARD OF REVIEW

In reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), the court "must accept all well-pleaded factual allegations as true and construe the complaint in the light most favorable to the plaintiff[ ]." *Mattera v. Baffert*, 100 F.4th 734, 739 (6th Cir. 2024) (citation omitted).  However, "[t]o survive dismissal, the complaint must contain sufficient facts, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Consequently, although a complaint does not need to contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); see also *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Further, a court may dismiss a complaint if an affirmative defense, such as absolute prosecutorial immunity, qualified immunity, or failure to state a claim, "appears on its face." *Jones v. Bock*, 549 U.S. 199, 215 (2007).  See also *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 762 (6th Cir. 2020).

## ARGUMENT

### I.   The Attorney General has absolute prosecutorial immunity for all of Baird's claims.

Like his original complaint, Baird's second amended complaint alleges that his constitutional rights were violated through the Flint Water Prosecution Team's use of the one-man grand jury provisions. Specifically, he contends that the Attorney General, along with Hammoud and Worthy, "acted within their investigative capacities when they attempted to prosecute Baird, and improperly indicted [him] . . . without probable cause, and without affording [him] a probable cause hearing[.]"  (ECF No. 41, PageID.745, ¶ 13.)  But even assuming the Attorney General was involved with the Flint Water Prosecution Team (she was not), she was acting in advocacy capacity and is thus entitled to absolute prosecutorial immunity for all claims.

It is well-settled that "prosecutors are absolutely immune from liability under § 1983 for their conduct insofar as that conduct is intimately associated with the judicial phase of the criminal process." *Cady v. Arenac Cnty.*, 574 F.3d 334, 340 (6th Cir. 2009) (quoting *Burns v. Reed*, 500 U.S. 478, 490–91 (1991) (cleaned up)).  In other words, a prosecutor is protected "in connection with his duties in functioning as a

9

prosecutor." *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002).

This immunity applies regardless of whether the prosecutor acted

wrongfully or maliciously. *Imbler v. Pachtman*, 424 U.S. 409, 427

(1976). And it applies regardless of whether a court finds an "absence of

evidence to support the charges filed[.]" *Higgason*, 288 F.3d at 878.

In determining whether absolute prosecutorial immunity applies,

"the critical inquiry is how closely related is the prosecutor's challenged

activity to his role as an advocate intimately associated with the judicial

phase of the criminal process." *Spurlock v. Thompson*, 330 F.3d 791,

798 (6th Cir. 2003) (citation omitted). Courts must look to "the nature

of the function performed," *Buckley v. Fitzsimmons*, 509 U.S. 259, 269

(1993), i.e., whether the conduct "was fairly within [the prosecutor's

function as an advocate." *Imbler*, 424 U.S. at 430 n.32. Caselaw sheds

light on which functions qualify for absolute immunity's protection.

In *Buckley*, for example, the Supreme Court focused on the

distinction between a prosecutor's "investigative" and "judicial" acts:

> A prosecutor's administrative duties and those investigatory
> functions that do not relate to an advocate's preparation for
> the initiation of a prosecution or for judicial proceedings are
> not entitled to absolute immunity. *We have not retreated,
> however, from the principle that acts undertaken by a
> prosecutor in preparing for the initiation of judicial*

10

> *proceedings or for trial, and which occur in the course of his*
> *role as an advocate for the State, are entitled to the*
> *protections of absolute immunity.* Those acts must include
> the professional evaluation of the evidence assembled by the
> police and appropriate preparation for its presentation at
> trial or before a grand jury after a decision to seek an
> indictment has been made.  [Emphasis added.]

And while the *Buckley* Court ultimately held that absolute immunity

did not apply before the prosecutor in that case had probable cause to

have anyone arrested, *id.* at 274, the dividing line "between conduct

that is part of a preliminary investigation and conduct that is

intimately associated with the judicial phase of a criminal proceeding

. . . is not the point of determination of probable cause"—"it is the point

at which the prosecutor performs functions that are intimately

associated with the judicial phase of the criminal process," *Prince v.*

*Hicks*, 198 F.3d 607, 612 (6th Cir. 1999).

The Sixth Circuit further clarified this point in *Ireland v. Tunis*,

113 F.3d 1435, 1145 (6th Cir. 1999), when explaining that

"[i]nvestigative acts undertaken in direct preparation of judicial

proceedings, including the professional evaluation of evidence, warrant

absolute immunity, whereas other acts, such as the preliminary

gathering of evidence that may ripen into a prosecution, are too

attenuated to the judicial process to afford absolute protection." Acts afforded immunity include "a prosecutor's decision to file a criminal complaint and seek an arrest warrant and the presentation of these materials to a judicial officer." *Id.* at 1445. "In this role, a prosecutor is unquestionably functioning as an advocate for the state in the judicial process . . . ." *Id.* at 1446. The Sixth Circuit thus held that "[p]resenting the charging documents to a judicial officer and procuring an arrest warrant must be considered part of the formal process of initiating a prosecution and securing the presence of the accused at trial." *Id.* at 1446–47 (citation omitted); *see also Malley v. Briggs*, 475 U.S. 335, 343 (1986) ("[T]he prosecutor's act in seeking an indictment is but the first step in the process of seeking a conviction," for which we shield the prosecutor because "any lesser immunity could impair the performance of a central actor in the judicial process.").

Where a prosecutor acts as a detective or witness, however, courts have *not* found the conduct to be intimately associated with the judicial phase of the criminal process. For example, in *Buckley*, the plaintiff alleged that prosecutors had conspired to manufacture false evidence by "shopp[ing] for experts until they found one who would prove the

opinion they sought."  509 U.S. at 272.  Significantly, "[a]t the time of

this witness shopping the assistant prosecutors were working hand in

hand with the sheriff's detectives under the joint supervision of the

sheriff and state's attorney[.]"  *Id.*  While the Court rejected the

plaintiff's argument that absolute immunity extended "only to the act of

initiation [of the prosecution] itself and to conduct occurring in the

courtroom," *id.*, it explained that when a prosecutor acts as a "detective

or police officer," the prosecutor is not entitled to absolute immunity, *id.*

at 273.  The Court analogized as follows:  "[I]f a prosecutor plans and

executes a raid on a suspected weapons cache, he 'has no greater claim

to complete immunity than activities of police officers allegedly acting

under his direction.' "  *Id.* at 274 (quoting *Hampton v. Chicago*, 484 F.2d

602, 608–09 (7th Cir. 1973).

   *Kalina v. Fletcher* provides another example of a prosecutor

stepping outside of the "advocacy" function.  522 U.S. 118 (1997).

There, a prosecutor supported her motion for an arrest warrant with a

false statement of fact to which she personally certified under penalty of

perjury.  *Id.* at 121.  Based on her certification, the court "found

probable cause and ordered that an arrest warrant be issued."  *Id.*  In

holding that the prosecutor was not entitled to absolute immunity, the Court rested on the fact that "she was acting as a complaining witness rather than a lawyer when she executed the certification." *Id.* at 129; *see also id.* at 129–30 ("[P]etitioner performed an act that any competent witness might have performed.").

The Attorney General was not acting as a detective or witness in allegedly participating in the one-man grand jury proceedings. This is evident from the statutes and the complaint. Mich. Comp. Laws § 767.3 authorizes a judge to "require such persons to attend before him as witnesses and answer such questions as the judge may require[.]" Mich. Comp. Laws § 767.20 further authorizes the prosecutor to "examine witnesses in the presence of the grand jury, and advise the grand jury on legal matters." (ECF No. 41-1, PageID.791, "[T]he Solicitor General . . . [may] examine witnesses in the presence of the grand jury, and advise the grand jury on legal matters[.]") Nothing in the complaint alleges that the Attorney General acted as witness. Nor does it allege that she was acting as a detective or police officer by "searching for the clues," *Kalina*, 522 U.S. at 126 (quoting *Buckley*, 509 U.S. at 273–74), "witness shopping," *Buckley*, 509 U.S. at 272, or

14

something akin to "execut[ing] a raid on a suspected weapons cache," *id.* at 274 (citation omitted).

Baird instead rests entirely on the fact that no preliminary examination took place to support his argument that the Attorney General was acting in an investigatory role.  (*See, e.g.*, ECF No. 41, PageID.762, ¶ 61, "The failure to conduct the preliminary examination proves that the Defendants did not transition from the investigative to the judicial stage.")  But caselaw does not support this bright-line temporal distinction.  Again, the Supreme Court has endorsed a "functional approach," *see, e.g.*, *Burns*, 500 U.S. at 485–86, and the Sixth Circuit has confirmed that "the dividing line" between the investigatory and judicial phases "is not . . . the point of determination of probable cause," *Prince*, 198 F.3d at 614.  This makes sense as the Supreme Court has held that prosecutors are absolutely immune for conduct before federal grand juries.  *Burns*, 500 U.S. at 490.  This is despite the fact that a federal grand jury serves an investigatory function, *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 297 (1991), and "can investigate merely on suspicion that the law is being violated,

15

or even just because it wants assurance that it is not," *United States v. Morton Salt Co.*, 338 U.S. 632, 642–43 (1950).

Ultimately, the allegations in Baird's second amended complaint fall under absolute prosecutorial immunity.  In filing the application for the appointment of a one-man grand jury, Hammoud sought an indictment—i.e., "the first step in the process of seeking a conviction," *Malley*, 475 U.S. at 343.  The circuit court, being persuaded that there was "probable cause to suspect that a[ ] crime . . . ha[d] been committed[,] . . . order[ed] . . . that an inquiry be made into the matters relating to such [application.]"  Mich. Comp. Laws § 767.3.  The Prosecution Team then presented evidence to the one-man grand jury, (ECF No. 41-1, PageID.790), and, ultimately, Judge Newblatt issued a felony indictment against Baird as well as an arrest warrant, (ECF No. 41-2, PageID.794–795; ECF No. 29-3, PageID.541–542).  As the Sixth Circuit held in *Ireland*, "presenting charging documents to a judicial officer and procuring an arrest warrant must be considered part of the formal process of initiating a prosecution and securing the presence of the accused at trial." 113 F.3d at 1446–47 (citation omitted) (emphasis

16

added). So, too, must the examination of witnesses. *Buckley*, 509 U.S. at 270 (citing *Burns*, 500 U.S. at 489–90).

For these reasons, Baird's claims against the Attorney General should be dismissed.

## II. The Attorney General has qualified immunity for all of Baird's claims.

Even if the Attorney General is not entitled to absolute immunity, she is nonetheless entitled to qualified immunity, which shields government officials from suit unless (1) the official "violated a federal statutory or constitutional right," and (2) "the unlawfulness of their conduct was 'clearly established at the time.' " *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "These two steps may be addressed in any order[,] [b]ut both must be answered in the affirmative" for Baird's claim to proceed. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (citing *Pearson v. Callahan*, 555. U.S. 223, 232 (2009)).

Concerning the second step, when it comes to defining the contours of a constitutional right, courts avoid defining clearly established law "at a high level of generality." *Ashcroft v. al-Kidd*, 563

U.S. 731, 742 (2011).  Although a case does not need to be "directly on point[,] . . . existing precedent must have placed the statutory or constitutional question beyond debate."  *Id.* at 741.  In other words, "[b]road legal platitudes are . . . 'of little help in determining whether' a specific prohibition 'is clearly established.' "  *Barnett v. Smithwick*, 835 F. App'x 31, 36 (6th Cir. 2020) (quoting *al-Kidd*, 563 U.S. at 742).

Baird contends that the Attorney General violated his Fourth, Fifth, and Fourteenth Amendment rights by failing to ensure he received a preliminary examination, i.e., "a probable cause conference." (ECF No. 41, PageID.773, 777, ¶¶ 116, 122.)  And he also asserts that Defendants conspired to violate those rights.  (*Id.*, PageID.784, ¶ 141.) But these claims fail because there is no federal right to a preliminary examination, let alone a clearly established right.

This principle was confirmed by this District in *Redmond v. Worthinton*, 878 F. Supp. 2d 822, 844 (E.D. Mich. 2012), in which the plaintiff alleged that his due process rights were violated when certain crimes "were never adjudicated by the examining magistrate at the preliminary examination[.]"  The court held that "there is no federal constitutional right to a preliminary examination[,]" following both the

U.S. Supreme Court's and Sixth Circuit's caselaw.  *Id.* (citing *Gerstein v. Pugh*, 420 U.S. 103, 125, 125 n.26 (1975); *Dillard v. Bomar*, 342 F.2d 789, 790 (6th Cir. 1975)).  Other federal courts have held similarly.  *See, e.g.*, *Snow v. State of Oklahoma*, 489 F.2d 278, 279 (10th Cir. 1973) (collecting cases).

The Michigan Constitution also does not guarantee such a right. *People v. Hall*, 460 N.W.2d 520, 522 (Mich. 1990).  And while Baird relies on Mich. Comp. Laws §§ 767.3 and 767.4 in attempting to show the right is clearly established, (ECF No. 41, PageID.756, 758–759, ¶¶ 39–40, 52–54), alleged violations of state law are insufficient to state a claim under § 1983.  *Huron Valley Hosp., Inc. v. Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989) (collecting cases).  In any event, at the time Baird was indicted by the one-man grand jury in 2021, Michigan caselaw provided that a preliminary examination was not required when utilizing the one-man grand jury provisions.  *People v. Green*, 913 N.W.2d 385, 391 (Mich. Ct. App. 2018); *see also Peeler*, 984 N.W.2d at 85 ("[T]he Court of Appeals was wrong . . . when it held that the one-person grand-jury procedure 'serve[s] the same function' as a preliminary examination.  We overrule *Green*.").

19

None of the cases cited in Baird's complaint show a clearly established right to a preliminary examination either.  Take, for example, *Albright v. Oliver* (*see* ECF No. 41, PageID.773, ¶ 117), which involved a claim that the defendant "infringed his substantive due process right to be free of prosecution without probable cause."  510 U.S. 266, 271 (1994).  The Court rejected the claim, reasoning that "it is the Fourth Amendment, and not substantive due process, under which petitioner Albright's claim must be judged."  *Id.*  The Court did not, however, "express [any] view as to whether petitioner's claim would succeed under the Fourth Amendment[.]"  *Id.* at 275.  In other words, while *Albright* stands for the unremarkable premise that a plaintiff may bring a Fourth Amendment claim, it does nothing to show that Baird's novel Fourth Amendment claim is viable or clearly established.

*Albright* not only does not clearly establish Baird's Fourth Amendment claim, but it also forecloses his Fifth and Fourteenth Amendment due process claims.[3]  *Albright* itself recognizes that "[t]he

---

[3] Baird's Fifth Amendment claim is barred on an additional ground as well.  Namely, "the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government."  *Scott v. Clay Cnty.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000).

Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." *Id.* at 274.  In other words, "it is the Fourth Amendment"—not due process guarantees— "which establishes procedural protections in this part of the criminal justice area." *Radvanksky v. City of Olmsted Falls*, 395 F.3d 291, 313 (6th Cir. 2005); *Manuel v. City of Joliet*, 580 U.S. 357, 364–65 (2017) ("This Court decided some four decades ago that a claim challenging pretrial detention fell within the scope of the Fourth Amendment."); *Becker v. Kroll*, 494 F.3d 904, 920 (10th Cir. 2007) ("We are not aware . . . of any other circuit that has extended Fourteenth Amendment procedural due process guarantees to pre-trial deprivations of liberty."). Given that the complained-of restrictions on Baird's liberty occurred pretrial (indeed, a trial never took place), he cannot maintain a due process claim.  And for this same reason, his reliance on *Hicks v. Oklahoma*, 447 U.S. 343 (1980)—which involved the deprivation of liberty *at sentencing* as opposed to pretrial—is unhelpful to him.

With no viable or clearly established constitutional claims, Baird's conspiracy claim fails as well.  Indeed, such a claim cannot be sustained where there is no underlying constitutional violation.  *Van Buren v.*

*Crawford Cnty.*, No. 13-14565, 2017 WL 3479546, at *7 (E.D. Mich. Aug. 14, 2017) ("Under both federal and Michigan law, civil conspiracy claims are derivative. They are cognizable only insofar as there is an underlying cognizable legal claim.").  And, in any event, a civil conspiracy claim cannot survive where "all of the defendants are members of the same collective entity," as "there are not two separate 'people' to form a conspiracy."  *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019) (citations omitted).  Baird alleges that the Attorney General, Hammoud, and Worthy were all part of Department's Flint Water Prosecution Team—the same collective entity.  (ECF No. 41, PageID.745.)  Dismissal is warranted.

## III.   The Attorney General was not personally involved for purposes of § 1983 in the Flint Water criminal cases.

Baird's second amended complaint fails for an additional reason: Baird has not sufficiently alleged that the Attorney General was personally involved in the Flint Water criminal prosecutions.  *See Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (explaining that a plaintiff must allege that each defendant had "personal involvement" in the deprivation of rights) (citation omitted).  Claims premised on a

theory of respondeat superior are insufficient under § 1983.  *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005); *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (explaining that the "liability of supervisory personnel must be based on more than the right to control employees") (citation omitted).  And as with any claim, a plaintiff must set forth non-conclusory facts in support of personal involvement.  *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Baird offers little regarding the Attorney General's involvement with his criminal prosecution.  He contends that "Nessel was involved in the strategy to investigate Baird and others and to use the criminal investigative process and Michigan criminal laws to attempt to bring a criminal case against Baird and other related to the Flint Water Crisis for political gain."  (ECF No. 41, PageID.744, ¶ 8.)  He further alleges that after she took office, the Attorney General "fired Special Counsel Flood," and "orchestrated with Defendant Hammoud and then prosecutor Worthy to pursue the 'Second Wave Investigation' cases in a manner to ensure publicly-filed 'Indictments' . . . ."  (*Id.*, PageID.749, ¶

23

27.)  In support of these conclusory allegations, however, Baird relies on speculation and further conclusory allegations.

For example, Baird contends that the Attorney General and Hammoud met hundreds of times from January 1, 2019, onward.  (ECF No. 41, PageID.765, ¶ 78.)  But the fact that they met does not mean that they strategized and orchestrated Baird's criminal prosecution during those meetings.  Indeed, given Hammoud's role as Solicitor General, it should come as no surprise that she spoke to the Attorney General on a regular basis to discuss any number of matters ongoing within the Department.

Baird also cites the Attorney General's receipt and approval of media clips referencing the Attorney General's cases, including Flint Water, (*id.*, PageID.765–766, ¶ 79), as well as the Attorney General's review of draft statements the media regarding Flint Water, (*id.*, PageID.766, ¶ 80).  But reviewing articles involving her Department and approving a quote concerning a question asked by a member of the Michigan Legislature to her during a budget hearing does not rise to the level of personal involvement.  *See Greene v. Barber*, 310 F.3d 889 (6th Cir. 2002) (explaining that personal involvement requires "an

24

active role in the alleged violations") (citation omitted).  The same is true of the Attorney General's viewing of the Michigan Supreme Court's oral arguments in *People v. Lyon*.  (ECF No. 41, PageID.765, ¶ 77.)  At most, this shows the Attorney General acting as any member of the public may.

In sum, Baird's allegations about the Attorney General's involvement in his criminal case rest on conclusory statements and speculation.  That is insufficient to show personal involvement under § 1983 and insufficient to state a claim under *Twombly* or *Iqbal*.

## CONCLUSION AND RELIEF REQUESTED

For these reasons, the Attorney General requests that this Court dismiss this case with prejudice.

Respectfully submitted,

*/s/ Kyla L. Barranco*
Kyla L. Barranco (P81082)
Assistant Solicitor General

Mark E. Donnelly (P39281)
Special Assistant Attorney General

Dated:  January 10, 2025

## CERTIFICATE OF SERVICE (E-FILE)

I hereby certify that on January 10, 2025, I electronically filed the

above document(s) with the Clerk of the Court using the ECF System,

which will provide electronic copies to counsel of record.

/s/*Kyla L. Barranco*
Kyla L. Barranco (P81082)
Assistant Solicitor General
Attorney for Defendant Nessel
Mich. Dep't of Attorney General
P.O. Box 30212
Lansing, Michigan 48909
517.335.7628
barrancok@michigan.gov

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RICHARD L. BAIRD, | |
| Plaintiff, | |
| | Case No. 2:24-cv-11205 |
| v. | |
| | Honorable Robert J. White |
| DANA M. NESSEL, FADWA A. HAMMOUD, AND KYM WORTHY, | |
| Defendants. | |

## BRIEF FORMAT CERTIFICATION FORM

I, Kyla L. Barranco, certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1, and Judge White's Case Management Requirements, including the following (click each box to indicate compliance):

☒ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

☒ the brief and all exhibits are filed in searchable PDF format, *see* Case Management Requirements § III.A;

☒ except for footnotes and necessary block quotes, the brief is double spaced (not "Exactly 28 pt" spaced) with one-inch margins, *see* LR 5.1(a)(2);

27

☒ deposition transcripts have been produced in their entirety (<u>not</u> in minuscript), *see* Case Management Requirements § III.A;

☒ if the brief and exhibits total 50 pages or more, I will mail to chambers a courtesy copy with ECF headers, *see* Case Management Requirements § III.B.

I also acknowledge that my brief will be stricken from the docket if the Court later finds that these requirements are not met.

*/s/ Kyla L. Barranco*
Kyla L. Barranco
Attorney for Defendant Attorney General Dana Nessel

28