## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RICHARD L. BAIRD,

      Plaintiff,

v.

DANA M. NESSEL, FADWA A.
HAMMOUD, and KYM L. WORTHY,

      Defendants.

_____/

Case No.: 2:24-cv-11205

Judge: Robert J. White

Magistrate: Kimberly G. Altman

**42 USC 1983**
**Oral Argument Requested**

## PLAINTIFF'S ANSWER TO DEFENDANTS' FADWA A. HAMMOUD AND KYM L. WORTHY'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff Richard L. Baird ("Baird"), through his attorneys, answers the Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint as follows:

1. Deny as untrue.

2. Deny as untrue.

3. Deny as untrue. Further, the Plaintiff respectfully requests this Court to find that this defense is frivolous.

4. Deny as untrue.

5. Deny as untrue.

6. Deny as untrue since Defendants' Motion is a Rule 12(b)(6) Motion and nothing outside the four corners of the Complaint may be reviewed by the Court.

Respectfully Submitted By:

*/s/ Michael B. Rizik, Jr.*
Michael B. Rizik, Jr. (P33431)
RIZIK & RIZIK
Attorney for Plaintiff
9400 S. Saginaw St., Ste. E
Grand Blanc, MI 48439
Phone: (810) 953-6000
Cell: (810) 610-2673
lawyers@riziklaw.com


*/s/ Michael W. Edmunds*
Michael W. Edmunds (P55748)
Gault Davison, PC
Co-Counsel for Plaintiff
8305 S. Saginaw St., Ste. 8
Grand Blanc, MI 48439
Phone: (810) 234-3633
medmunds@gaultdavison.com


*/s/ Nancy A. Temple*
Nancy A. Temple (IL-P6205448)
Katten & Temple, LLP
Co-Counsel for Plaintiff
209 S. LaSalle St., Ste. 950
Chicago, IL 60604
Phone: (312) 663-0800
ntemple@kattentemple.com

Dated: February 14, 2025

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RICHARD L. BAIRD,

      Plaintiff,

v.

DANA M. NESSEL, FADWA A.
HAMMOUD, and KYM L. WORTHY,

      Defendants.

_____/

Case No.: 2:24-cv-11205

Judge: Robert J. White

Magistrate: Kimberly G. Altman

**42 USC 1983**
**Oral Argument Requested**

## PLAINTIFF'S BRIEF OPPOSING DEFENDANTS' FADWA A. HAMMOUD AND KYM L. WORTHY'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Michael B. Rizik, Jr. (P33431)
RIZIK & RIZIK
Attorney for Plaintiff
9400 S. Saginaw St., Ste. E
Grand Blanc, MI 48439
Phone: (810) 953-6000
Cell: (810) 610-2673
lawyers@riziklaw.com

Michael W. Edmunds (P55748)
Gault Davison, PC
Co-Counsel for Plaintiff
8305 S. Saginaw St., Ste. 8
Grand Blanc, MI 48439
Phone: (810) 234-3633
medmunds@gaultdavison.com

Nancy A. Temple (IL-P6205448)
Katten & Temple, LLP
Co-Counsel for Plaintiff

209 S. LaSalle St., Ste. 950
Chicago, IL 60604
Phone: (312) 663-0800
ntemple@kattentemple.com

Dated: February 14, 2025

# **TABLE OF CONTENTS**

<u>Page</u>

Table of Contents ………………………………………………...……………i

Index of Authorities …………………………………………………….. iii

Concise Statement of Issues Presented ……………………………….….. vi

Controlling Or Most Appropriate Authority ……………...…………….... vi

Introduction ………………………………………………….….………1

Statement of Facts …………………………………………………… 3

Standard of Review …………………………………………………...3

Argument …………………………………………………………..4

   I.    Defendants are not entitled to absolute prosecutorial immunity……………4

   II.   Defendants are not entitled to qualified prosecutorial immunity ………… 13

        A. Defendants violated Baird's constitutional right to a probable cause determination before being restrained and deprived of his other liberties which were clearly established in January 2021 when Baird was indicted ……………………………………………………… 14

        B. The violation of State law criminal procedure can rise to a level where it violates the U.S. Constitution …………………………...15

        C. Defendants' conduct was objectively unreasonable in light of the clearly established constitutional rights………………………..16

   III.   Baird filed his lawsuit well within the statute of limitations ………………18

   IV.   Baird properly pled a claim for civil conspiracy to violate his constitutional rights …..………...............................................................19

Conclusion and Relief Requested …………………………………………………21

Certificate of Service (E-Filing)……………………………………………...22

# INDEX OF AUTHORITIES

**Cases**                                                                                       <u>Page</u>

Cases

*Albright v. Oliver*,
   510 U.S. 266 (1994).................................................................................14, 15

*Anderson v. Creighton*,
   483 U.S. 635 (1987)........................................................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).....................................................................................4, 10

*Axle of Dearborn, Inc. v. Detroit IT, LLC*,
   No. 21-CV-10163, 2023 WL 3437803 (E.D. Mich. May 12, 2023)...................20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................... 4

*Biggs-Leavy v. Lewis*,
   No. 24-1317, 2025 WL 451369 (6th Cir. Feb. 10, 2025) ................................... 6

*Buckley v. Fitzsimmons*,
   509 U.S. 259 (1993)..............................................................................5, 6, 7, 10

*Cooperrider v. Woods*,
   No. 24-5351, 2025 WL 427283 (6th Cir. Feb. 7, 2025) ................................... 6

*Courser v. Mich. House of*,
   *Rep.*, 404 F. Supp. 3d 1125 (W.D. Mich. 2019) ................................................ 4

*Crockett v. Cumberland Coll.*,
   316 F.3d 571 (6th Cir. 2003) ...........................................................................13

*DiLuzio v. Village of Yorkville*,
   796 F.3d 604 (6th Cir. 2015) ...........................................................................20

*Gerstein v. Pugh*,
   420 U.S. 103 (1975)................................................................................... 14, 15

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982).......................................................................................13

*Heck v. Humphrey*,
   512 U.S. 477 (1994)...................................................................................18, 19

*Hicks v. Oklahoma*,
   447 U.S. 343 (1980)...................................................................................15, 16

*Holloway v. Brush*,
   220 F.3d 767 (6th Cir. 2000) ...........................................................................10

*Imbler v. Pachtman*,
   424 US 409 (1976).......................................................................................... 5

*Jackson v. City of Cleveland,*
   925 F.3d 793 (6th Cir. 2019) ..........................................................................20

*Kalina v. Fletcher,*
   522 U.S. 118 (1997)........................................................................................ 6

*League of Women Voters of Mich v. Secretary of State,*
   508 Mich. 520, 975 N.W.2d 840 (2022)..........................................................17

*Pearson v. Callahan,*
   555 U.S. 223 (2008)........................................................................................14

*People v. Duncan,*
   388 Mich. 489, 201 N.W.2d 629 (1972)......................................................8, 16

*People v. Glass,*
   464 Mich. 266, 627 N.W.2d  (2001)................................................................ 8

*People v. Green,*
   322 Mich. App. 676, 913 N.W.2d 385 (2018) ................................ 11, 12, 16, 17

*People v. Kennedy,*
   513 Mich. 1117, 6 N.W.3d 402 (2024) ...........................................................17

*People v. Peeler,*
   509 Mich. 381, 984 N.W.2d 80 (2022)......................................................passim

*People v. Robinson,*
   2024 WL 2981519 (Mich. App. June 13, 2024) ...............................................17

*People v. Tracy,*
   186 Mich. App. 171, 463 N.W.2d 457 (1990) ................................................. 9

*Prida v. Option Care Enterpises, Inc.,*
   No. 23-3936, 2025 WL 460206 (6th Cir. Feb. 11, 2025) .................................... 4

*Prince v. Hicks,*
   198 F.3d 607 (6th Cir. 1999) ...............................................................5, 7, 13

*Radvansky v. City of Olmsted Falls,*
   395 F.3d 291 (6th Cir. 2005) ........................................................................13

*Rieves v. Town of Smyrna,*
   959 F.3d 678 (6th Cir. 2020) ...............................................................5, 7, 13

*Rondigo, LLC v. Twp of Richmond,*
   641 F.3d 673 (6th Cir. 2011) ........................................................................ 4

*Saucier v. Katz,*
   533 U.S. 194 (2001)...............................................................................13, 14

*Schilling v. White,*
   58 F.3d 1081 (6th Cir. 1995) ........................................................................19

*Shamaeizadeh v. Cunigan,*
   182 F.3d 391 (6th Cir. 1999) ...................................................................18, 19

*Spurlock v. Thompson,*
   330 F.3d 791 (6th Cir. 2003) ........................................................................ 8

*Sturgill v. Am. Red Cross,*
   114 F.4th 803 (6th Cir. 2024) ................................................................. 4
*Van Buren v. Crawford County*,
   No. 13-14565, 2017 WL 3479546 (E.D. Mich. Aug. 14, 2017) ........................19

Statutes
28 U.S.C. § 2254 ..............................................................................................18
42 USC § 1983 ...........................................................................................passim
MCL 764 and 766 ............................................................................................16
MCL 767.3 ................................................................................... 1, 2, 7, 11, 12
MCL 767.4 ............................................................................... 1, 2, 7, 9, 11, 12
MCL 767.42 ..............................................................................................10, 12

Rules
Fed. R. Civ. P 12(d) ......................................................................................... 4

## CONCISE STATEMENT OF ISSUES PRESENTED

1. Whether Defendants are entitled to absolute prosecutorial immunity from a lawsuit under 42 U.S.C. § 1983, when they cut corners during the investigative phase of the criminal prosecution against Plaintiff, secretly indicted him, then refused to allow a preliminary examination in violation of Plaintiff's clearly established constitutional rights.

2. Whether Defendants are entitled to qualified immunity from a lawsuit under 42 U.S.C. § 1983 when they cut corners during the investigative phase of the criminal prosecution against Plaintiff, secretly indicted him, then refused to allow a preliminary examination in violation of Plaintiff's clearly established constitutional rights.

3. Whether Plaintiff filed his lawsuit within the statute of limitations.

4. Whether Plaintiff has pled a civil conspiracy cause of action.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

1. *Albright v. Oliver*, 510 U.S. 266; 114 S. Ct. 807 (1994);
2. *Hicks v. Oklahoma*, 447 U.S. 343; 100 S. Ct. 2227 (1980);
3. *Imbler v. Pachtman*, 424 U.S. 409; 96 S. Ct. 984 (1976);
4. *People v. Peeler*, 509 Mich. 381; 984 N.W.2d 80 (2022);
5. *Rieves v. Town of Smyrna,* 959 F.3d 678 (6th Cir. 2020);
6. *Prince v. Hicks,* 198 F.3d 607 (6th Cir. 1999);
7. 42 U.S.C § 1983; and
8. MCL 767.3, 767.4 & 767.42.

## INTRODUCTION

"No one is above the law, regardless of what office they serve. The former Prosecutor severely abused his position of power..." A.G. Dana Nessel, September 13, 2023.

"No one is above the law...." A.G. Dana Nessel, November 6, 2024.

In June 2022, the Michigan Supreme Court rebuked the Attorney General Dana Nessel and her assistants for denying Plaintiff and others their federally protected constitutional rights to procedural due process under Michigan statutes governing criminal investigation and indictment. In a stinging denunciation of the prosecutors, Chief Justice Bridget M. McCormack wrote for the unanimous court that MCL 767.3 and MCL 767.4 are investigative statutes that require a preliminary examination after an indictment by the so-called one-person grand jury. *People v. Peeler*, 509 Mich. 381, 984 N.W.2d 80 (2022). In his concurring opinion, Justice Richard Bernstein stressed that "procedure matters" (*Peeler,* 509 Mich. at 401, 984 N.W.2d at 89), confirming that Defendants did not afford Baird due process. Justice Bernstein admonished Defendants: "The prosecution cannot simply cut corners in order to prosecute defendants more efficiently." *Id*. at 404, 984 N.W.2d at 90. Justice Bernstein wrote that the prosecutor may not whimsically eliminate "the guarantees underpinning that criminal process – such as the statutory right to a preliminary examination...." *Id*.

1

*Peeler* and long-standing Michigan precedent confirm the only reasonable and objective interpretations of Michigan law, specifically that MCL 767.3 and MCL 767.4 are investigative statutes that never authorized prosecutors to use them to indict secretly, which Chief Justice McCormack referred to as "a Star Chamber comeback…."*Peeler*, 509 Mich. at 386, 984 N.W.2d at 81. Defendants cannot shield themselves behind absolute or qualified prosecutorial immunity for systematically denying Plaintiff his constitutional due process rights and rights against unreasonable searches and seizures. In this case, those rights include the right to a preliminary examination. Taken as true, the facts in the Second Amended Complaint ("Complaint" or "ECF 41") establish plausible claims for relief against Defendants for damages caused by their violation of Baird's constitutional rights. Defendants do not and cannot meet their burden of establishing absolute or qualified immunity because the Complaint properly pleads facts showing Defendants engaged in investigative functions prior to the establishment of probable cause and violated clearly established constitutional rights of Baird.

Defendants opened Pandora's box with their misfeasance and malfeasance, inviting endless cycles of retribution by successive administrations from the opposing political parties. This undermines the Constitutional due process system, potentially leading to chaos and violence. In W. B. Yeats's words, "the centre cannot hold." Mr. Baird stands crosswise to this threat and yells, "Stop!" Defendants'

motions should be denied.

## STATEMENT OF FACTS

Defendants generally summarized this case's factual background in their Brief but omitted critical facts in the Complaint, which were the only facts relevant to Defendants' Motion. Defendants ignore that the indictment and Defendants' failure to conduct a probable cause hearing violated long-standing Michigan law. ECF 41, ¶¶30-54. Defendants were personally and politically motivated to pursue criminal prosecutions of Baird and others at all costs, without regard to probable cause, violating the targets' constitutional rights. ECF 41, ¶¶16-31. Defendants knew they lacked probable cause to prosecute Baird, their political opponent, but manipulated the process and violated his well-established rights to a preliminary examination hearing as part of the investigative process to avoid the proper scrutiny. ECF 41, ¶¶29-33. Defendants' use of the obscure one-person grand jury to investigate secretly and issue an arrest warrant was not adequate probable cause for depriving Baird of his liberties without a preliminary examination. Baird also filed his Complaint well within the statute of limitations, as demonstrated below.

## STANDARD OF REVIEW

Defendants incompletely state the legal standard for a Rule 12(b)(6) motion, in which the Court construes the complaint in the light most favorable to the plaintiff, accepts the allegations as true, and draws all reasonable inferences in favor of the

plaintiff. *Prida v. Option Care Enterprises, Inc.,* No. 23-3936, 2025 WL 460206, at *3 (6th Cir. Feb. 11, 2025). The complaint need only state a plausible claim for relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678. In accepting the allegations as true, the Court "must take care to read the complaint's allegations 'as a whole.'" *Sturgill v. Am. Red Cross,* 114 F.4th 803, 807-08 (6th Cir. 2024) (citation omitted). "[W]hen deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court's review is limited to the four corners of the pleading at issue." Fed. R. Civ. P 12(d); *Courser v. Mich. House of Rep.*, 404 F. Supp. 3d 1125, 1139 (W.D. Mich. 2019) (citing *Rondigo, LLC v. Twp of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011)).[1]

## ARGUMENT

### I.   Defendants are not entitled to absolute prosecutorial immunity.

The Complaint asserts that Defendants, acting under the color of state law, violated Plaintiff's federally protected constitutional rights through multiple procedural infractions, including the misuse of the misnamed "one-person grand

---

[1] Defendants' allegations and exhibits outside the Complaint thus must be disregarded. If the Court converts Defendants' motion to a Rule 56 motion, Plaintiff requests leave to file a motion for certain discovery pursuant to Rule 56(d) in order to respond, because much of the detailed evidence is within Defendants' possession and control.

jury" to bypass conventional criminal charging protocols. These claims establish that Defendants' actions were not solely prosecutorial but investigative, negating a claim of absolute prosecutorial immunity.

Absolute immunity only protects a prosecutor if the "official's actions were within the scope of the immunity." *Imbler v. Pachtman*, 424 US 409, 419 n.13 (1976). Absolute immunity applies only when the prosecutor's actions are "intimately associated with the *judicial phase* of the criminal process." *Id.* at 430 (emphasis supplied); *Rieves v. Town of Smyrna,* 959 F.3d 678, 691 (6th Cir. 2020) (reversing dismissal of complaint because prosecutors were not immune for their investigative and administrative activities); *Prince v. Hicks,* 198 F.3d 607, 613 (6th Cir. 1999) (prosecutor involved in preliminary investigation phase did not meet burden of establishing absolute immunity). Absolute immunity does not extend to "a prosecutor's administrative and investigative conduct that 'do[es] not relate to [her] preparation for the initiation of a prosecution or for judicial proceedings.'" *Rieves,* 959 F.3d at 691 (citing *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993)). *Buckley* held that a "prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." 509 U.S. at 274. The distinction between investigative and judicial functions is crucial: while absolute immunity is granted for judicial functions, only qualified immunity *might apply* to actions within the investigative phase, or prior to the independent determination of

probable cause.

It is well established that absolute prosecutorial immunity is inapplicable when the prosecutor's actions are investigative. Thus, when a prosecutor engages in "investigative activities" like a policeman, holds a press conference, or is alleged to have fabricated evidence, he deserves no more immunity than a policeman would have, namely, only "qualified immunity." *Buckley,* 509 U.S. at 273; *Kalina v. Fletcher,* 522 U.S. 118, 125-26 (1997).[2]

Similarly, as here, when a prosecutor misuses an investigatory statute to pursue secretly an indictment and systematically denies a criminal target of an investigation, a statutorily-guaranteed preliminary examination to establish probable cause, such misconduct and due process violations are not within the ambit of protected judicial advocacy functions. Fabricating evidence is an investigative function that violates due process by presenting falsehoods as truths to obtain the false premise of probable

---

[2] The recent decision in *Cooperrider v. Woods*, No. 24-5351, 2025 WL 427283 (6th Cir. Feb. 7, 2025), recognizing absolute immunity for local government officials involved in prosecuting a license-revocation hearing, is distinguishable. In that case, the officials properly followed the state law procedures and there was a legitimate basis, i.e., probable cause. *Id.* at *5-6. Similarly, in *Biggs-Leavy v. Lewis,* No. 24-1317, 2025 WL 451369, at *1-2 (6th Cir. Feb. 10, 2025), a councilwoman had absolute immunity because she properly followed the municipal code. In both of those cases, there were no facts pled establishing a violation of constitutional rights. By contrast, Defendants did not follow Michigan criminal protections, violating Baird's due process rights and rights protecting against unreasonable searches and seizures.

cause. Likewise, when an investigatory statute is misused to obtain an indictment without proper procedures, such as a probable cause conference and a preliminary examination hearing, such misconduct by a prosecutor, as alleged here, is an investigative function, not a judicial function. Both types of misconduct by prosecutors significantly deviate from proper procedures (as noted in Justice Bernstein's concurring opinion in *Peeler*, *supra*) to obtain a desired outcome, violating Baird's due process and rights against unreasonable searches and seizure.

The prosecutorial misconduct in *Buckley, Rieves, Prince,* and as set forth in the Complaint reflects not only violations of the plaintiffs' constitutional rights but also breaches of ethical standards (*e.g.,* ABA Model Rules 3.3, 3.8, 1.1-1.3; MRPC 3.8), and abuses of investigative powers.

In *Peeler*, the Michigan Supreme Court field-dressed Baird's indictment when it reversed Defendants' refusal to allow a preliminary examination. *Peeler,* 509 Mich. at 400, 984 N.W.2d at 88. *Peeler* held that MCL 767.3 and 767.4 authorize an investigation, among other things. However, "they do not authorize the judge to issue indictments." *Id.* Defendants intentionally misapplied investigative tools to secure Baird's indictment and deny him a preliminary examination. In doing so, they exceeded their investigatory authority without properly transitioning into the judicial phase of the criminal process. "[W]here the role as advocate has not yet begun, namely prior to indictment, … absolute immunity does not apply." *Spurlock v.*

*Thompson*, 330 F.3d 791, 799 (6th Cir. 2003). Here, the role as an advocate had not commenced because Defendants were still "prior to the indictment" when they "indicted" Baird under investigatory statutes and then refused to allow a preliminary examination.

Defendants did not afford Baird any of the proper procedures that are the hallmarks of the judicial phase of a criminal case after the indictment out of the One-Man Grand Jury investigation. At the January 14, 2021, arraignment, Baird was not scheduled for a probable cause conference (ECF 41, ¶¶15, 116), which is mandatory after a felony arraignment and involves discussions on plea agreements, bail, and other pretrial matters. There was no probable cause hearing before Baird was deprived of his liberties. ECF, ¶¶71, 114, 118, 132. *The preliminary examination would have been the first "probable cause hearing"* for determining the amount of bail, weeding out groundless charges, and determining travel restrictions, thereby protecting the accused from unnecessary deprivation of liberty. ECF 41, ¶¶2, 13, 14, 70, 71. The Michigan Supreme Court said in *People v. Duncan*, 388 Mich. 489, 501, 201 N.W.2d 629, 634 (1972), *overruled in part on other grounds, People v. Glass,* 464 Mich. 266, 627 N.W.2d 621 (2001):

> The primary purpose of a preliminary hearing is to ascertain whether there is reasonable ground to believe that a crime has been committed and whether there is just cause to believe the defendant committed it. Further purposes are said to be to perpetuate testimony, to determine the amount of bail to be given by the prisoner in case he is held for trial, to weed out groundless or unsupported charges of grave offenses, and

to relieve the accused of the degradation and the expense of a criminal *trial and of the deprivation of his liberty if there is no probable cause for believing that he is guilty of the crime*. (Emphasis supplied).

In *Peeler*, 509 Mich. at 392, 984 N.W.2d at 84, the Michigan Supreme Court, relying on MCL 767.4, concluded that a "hearing on the complaint or indictment" required a preliminary examination. The long-established statutory language specifies that the judge having jurisdiction shall proceed with the case like a formal complaint, which includes holding a preliminary examination. ECF 41, ¶¶36, 54. The Complaint establishes that Defendants never transitioned from the investigative to the judicial stage because they cut corners and circumvented the preliminary examination requirement so they could avoid the requirement to establish probable cause. The transition from the investigatory to the judicial stage did not occur until after Baird's attorney moved on March 12, 2021, for a preliminary examination, which Defendants opposed, leading to *Peeler, supra*. ECF 41, ¶63.

In contrast, the "judicial phase" begins when formal charges are properly filed with a court, marking the initiation of judicial criminal proceedings. This phase includes arraignments, preliminary examinations, trials, and sentencing, and includes constitutional protections, such as the right to counsel and the right to confront witnesses. *See People v. Tracy*, 186 Mich. App. 171, 177-78, 463 N.W.2d 457, 460 (1990). Here, Defendants' conduct at issue remained confined in the investigatory phase. The actions taken were confined to investigative activities

without the oversight that characterizes the judicial phase, such as presenting evidence to an independent judge or a citizen grand jury. This absence of a formal judicial process underscores that Defendants were still engaged in investigative functions. Since there was no citizen grand jury, the proper next step would have been to present this evidence to an independent judge during a preliminary examination through MCL 767.42, allowing an independent assessment of whether probable cause existed for binding Baird over to trial and depriving him of his liberties.

According to *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000):

> The actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor. Qualified immunity represents the norm . . . . The question, then, is whether the prosecutors have carried their burden of establishing that they were functioning as 'advocates' when they performed the actions complained of." (Citing *Buckley*, *supra*, 509 U.S. at 273-74).

Based on these facts in the Complaint, Baird properly pleaded a plausible claim, *i.e.,* Baird has pled "factual content that allows the Court to draw the reasonable inference that the Defendants are liable for the misconduct alleged…." *Ashcroft,* 556 U.S. at 678. The Complaint details the events leading up to Baird's indictment (ECF 41, ¶¶16-45) and alleges that Defendants violated 42 USC § 1983 by using the investigative statutes to indict Baird in violation of his constitutional rights to due process and rights against unreasonable search and seizure without probable cause. *Id.*, Counts I, II, and III.

The Complaint also establishes that upon the petition of Defendants, Hon. Duncan J. Beagle, Chief Judge of the Seventh Circuit Court in Genesee County, issued an Order appointing Judge David Newblatt to *investigate* the Flint Water Crisis and determine if charges should be brought. ECF 41, ¶¶32,33. Defendants and the One-Man Grand Juror were authorized *to investigate* - nothing more!

Defendants contend that *People v. Green*, 322 Mich. App. 676, 913 N.W.2d 385 (2018), authorized their indictment of Baird without a preliminary exam under MCL 767.3 and 767.4. However, *Green* is inapplicable, as set forth in the Complaint. In that case, the defendant claimed ineffective assistance of counsel, arguing that his attorney failed to challenge violations of the rights to counsel and confrontation from the use of the one-person judicial inquiry. In rejecting the claim, the Michigan appellate court stated that the procedure:

> ...is used to determine whether criminal proceedings should be instituted against an individual by way of an indictment, *there is not yet a formal charge, preliminary hearing, indictment, information, or arraignment that indicates adversarial judicial proceedings have begun*…. 322 Mich. App. at 685, 913 N.W.2d at 390 (emphasis supplied).

*Green* thus recognizes that the judicial officer's role in this unique Michigan statute is confined to investigative functions, not advocacy in the judicial phase. Furthermore, nothing in *Green's* dicta implies that the judicial officer possesses charging authority; it indicates the opposite. *Green* explicitly emphasizes that the inquiry occurs before any "formal charge" or "preliminary hearing." The

11

inconsistency between the language quoted above, the holding in *Green*, and the plain reading of the statutes resulted in the clarification in *Peeler,* but not a change in well-established law.

Finally, Defendants cannot claim ignorance of the proper procedures. In *People v. Nicolas Lyon*, during the "First Wave" of criminal cases, Defendant Nessel and her office investigated Lyon under MCL 767.3 and 767.4. Assistant AG Todd Flood then proceeded with a preliminary examination[3] under MCL 767.42. Despite following proper procedure, on June 13, 2019, Defendant Nessel's office bizarrely announced the dismissal of the *Lyon* criminal case before the judge in that case could issue his indicated ruling that Defendants lacked probable cause to prosecute Lyon. ECF 41, ¶¶ 30-32; Nessel Br. at p.1.

Considering the statutes cited above, the facts in the Complaint, *Peeler* and *Green*, it is a reasonable inference and highly plausible that Defendants acted beyond their authority during the investigatory phase because they knew they lacked probable cause to present at a preliminary examination. Probable cause is assessed based on a reasonable, objective standard. *See Crockett v. Cumberland Coll.,* 316

---

[3] Plaintiff erroneously implied this was a "citizens grand jury" in the Second Amended Complaint. However, it was a preliminary examination. Nevertheless, it is a distinction without a difference because both procedures independently examine probable cause, and Baird was not afforded either. Thus, the argument above remains valid.

F.3d 571, 580 (6th Cir. 2003); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (citation omitted). Prosecutors are not immune for their investigation conduct or advice regarding the existence of probable cause prior to an independent assessment of the existence of probable cause in the judicial phase. *Rieves,* 959 F.3d at 692-93; *Prince,* 198 F.3d at 612-13. Defendants' motion should be denied because they are not entitled to absolute immunity.

**II.    Defendants are not entitled to qualified prosecutorial immunity.**

The doctrine of qualified immunity insulates governmental officials acting in their official capacities from liability for civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818-819 (1982). It is a judicially created right. For a constitutional right to be clearly established, "the law must be clear in regard to the official's particular actions in the particular situation." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Qualified immunity involves a three-step inquiry. The first step is to determine whether a constitutional right has been violated. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the Court determines that the constitutional right has been violated, the second step is to determine whether the right that was violated was clearly established at the time. *Id.* If the court finds that the constitutional right was clearly established at the time of the violation, the third step is to determine whether the

official's conduct was "objectively unreasonable" in light of the established constitutional right. *Id.* A court no longer needs to address the questions in the order spelled out in *Saucier*. *Pearson v. Callahan*, 555 U.S. 223 (2008).

### A. Defendants violated Baird's constitutional right to a probable cause determination before being restrained and deprived of his other liberties, which was clearly established in January 2021 when Baird was indicted.

*Gerstein v. Pugh,* 420 U.S. 103 (1975), was decided well before Defendants prosecuted Baird. The plaintiffs in *Gerstein* were prisoners who sued county prosecutors in Florida, claiming a constitutional right to a probable cause determination. The Supreme Court held, "whatever procedure a State may adopt, it must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest." *Id.* at 125. Otherwise, the State violates the Fourth Amendment prohibition against unreasonable searches and seizures.

The Supreme Court reiterated its holding in *Gerstein* in *Albright v. Oliver*, 510 U.S. 266, 274 (1994): "The Fourth Amendment requires a judicial determination of probable cause as a prerequisite to any extended restraint on liberty following an arrest." The plaintiff in *Albright*, like Baird, was not merely charged with a crime but voluntarily submitted himself to arrest. *Id.*; EFC 41, ¶¶113, 118(b), 132(b).

There has never been a determination of probable cause for Baird before his liberties were deprived. He didn't get a grand jury of his peers, and he didn't get a judicial determination of probable cause. There was simply an illegal indictment issued by a single judge who was authorized only to investigate and was not functioning as an independent judicial officer. Baird was ordered to appear or be arrested. He was fingerprinted and photographed and wasn't free to leave during this process. He had to surrender his passport.  He couldn't leave the State without permission, which meant he couldn't visit his daughters out of state. He couldn't talk to any of the co-defendants who were his friends and colleagues. He wasn't allowed to possess a firearm. ECF 41, ¶¶47, 114, 118(n). Baird suffered all of these violations of his liberties without a determination of probable cause, in violation of *Gerstein* and *Albright*.

## B. The violation of State law criminal procedure can rise to a level where it violates the U.S. Constitution.

Contrary to Defendants' suggestion, their violation of Michigan criminal procedure violated Baird's federal constitutional rights. In *Hicks v. Oklahoma*, 447 U.S. 343 (1980), for example, a man who was sentenced for a drug crime without a jury argued that the statute which allowed it was unlawful under Oklahoma law, and an Oklahoma appellate court agreed.  *Hicks* sued for damages under 42 U.S.C. §1983. The Court rejected the State's defense that the statute at issue was merely a violation of a State procedural right which was of "exclusively State concern."

15

The Supreme Court held: "Where, however, a State has provided for the imposition of criminal punishment in the discretion of the trial jury, it is not correct to say that the defendant's interest in the exercise of that discretion is merely a matter of State procedural law. The defendant in such a case has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion." *Hicks,* 447 U.S. at 346. *Hicks* held that the Oklahoma officials'   misconduct was a violation of the Fourteenth Amendment's due process rights as applied to the states. *Id.*

In the underlying criminal case, Defendants violated MCR 6 and MCL 764 and 766, which list a variety of rights that Michigan criminal defendants are entitled to, including the right to a probable cause conference and a probable cause hearing. Those rights were clearly established long before *Peeler* and as early as 1972, when *Duncan, supra,* was decided.

**C. Defendants' conduct was objectively unreasonable in light of the clearly established constitutional rights**.

Defendants claim they relied on *People v. Green*, 322 Mich, App. 676, 913 N.W.2d 385 (2018). However, the well-established law applicable to the one-man grand jury process was set forth in the plain language of the statute (which did not change), and *Duncan,* which was the binding precedent of the Michigan Supreme Court. When the Michigan Supreme Court stated in *Peeler* that it was overruling *Green*, it was not making new law. It simply restated the law as it existed before the

16

intermediate appellate court in *Green* wrongly misstated it. That has become clear in recent decisions such as *People v. Kennedy*, 513 Mich. 1117, 6 N.W.3d 402 (2024), and *People v. Robinson*, 2024 WL 2981519 (Mich. App. June 13, 2024).

*Kennedy* and *Robinson* both addressed whether *Peeler* applied retroactively. A decision is not applied retroactively if "[t]he decision amounts to a rule of law." *League of Women Voters of Mich v. Secretary of State*, 508 Mich. 520, 566, 975 N.W.2d 840, 865 (2022). "A rule of law is new for purposes of resolving the question of its retroactive application . . . either when an established precedent is overruled or when an issue of first impression is decided." Both *Kennedy* and *Robinson* determined that *Peeler* did not establish a new rule of law. *Robinson, supra,* at *4; *Kennedy*, 513 Mich. at 1118.

Defendants not only should have known that *Green* was wrong, but they did know it was wrong. In a parallel criminal case, they prosecuted Nick Lyons. Procedurally, they did it correctly, *i.e.,* they didn't use the one-man grand jury, and there was a preliminary examination. Lyons challenged probable cause, and Defendants voluntarily dismissed the charges against Lyons when it became clear that the judge in that case was about to dismiss Lyons' criminal case for lack of probable cause. Defendants then manipulated the one-man grand jury investigative statute to use a different, secretive approach with Baird in an effort to avoid his right

to a probable cause hearing, which inevitably would have resulted in dismissal of any charges. ECF, ¶¶30-32.

### III.   Baird filed his lawsuit well within the statute of limitations.

Defendants frivolously argued that Baird filed his lawsuit outside the statute of limitations. That is untrue.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court ruled that a §1983 claim challenging the constitutionality of a conviction or imprisonment is barred unless the conviction has been overturned, expunged, or declared invalid. The Court explained that allowing such claims beforehand would undermine habeas corpus.

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff,  the action should be allowed to proceed, in the absence of some other bar to the suit.

Similarly, in *Shamaeizadeh v. Cunigan*, 182 F.3d 391 (6th Cir. 1999), the court reversed a dismissal of a §1983 claim for damages from an allegedly

unconstitutional search and seizure as time-barred, ruling that the limitations period begins after criminal proceedings are concluded. Although a limitations period typically begins to run when the plaintiff knows or should know of the injury, such as at the time of the unconstitutional search, the Sixth Circuit made clear, based on *Heck,* that the statute of limitations for the Section 1983 claim commenced when criminal charges against the plaintiff in *Shamaeizadeh* were dismissed, not at the time of the search and seizure, making his filing timely.

In short, *Heck* bars §1983 claims challenging convictions until they are invalidated. *Shamaeizadeh* applied *Heck* to pending criminal cases, ensuring §1983 claims don't disrupt their resolution. *See also Schilling v. White,* 58 F.3d 1081, 1087 n.5 (6th Cir. 1995) (no §1983 claim could proceed unless the conviction was first invalidated). Here, there is no dispute that Baird filed this action within the applicable three-year limitations period, which commenced after his underlying criminal case was finally terminated.

## IV.   Baird properly pled a claim for civil conspiracy to violate his constitutional rights.

Defendants' first argument that the conspiracy claim should be dismissed because there is no alleged underlying constitutional violation lacks merit. As described *supra,* Plaintiff properly pled that his Fourth, Fifth and Fourteenth Amendment rights were violated. Defendants improperly rely on *Van Buren v. Crawford County*, No. 13-14565, 2017 WL 3479546 at *7 (E.D. Mich. Aug. 14, 2017), which held

there was no constitutional violation when audio recordings were not preserved by responding officers. By contrast, Plaintiff has properly pled two underlying constitutional violations: 1) a procedural due process violation under the Fifth and Fourteenth Amendments, and 2) a right to be free from unreasonable searches and seizures under the Fourth Amendment. ECF, ¶¶13, 29, 44, 47, 52, 69, 116.

Second, Defendants' reliance on the intracorporate doctrine ignores the exception recognized in *Jackson v. City of Cleveland,* 925 F.3d 793, 819 (6th Cir. 2019), that the intracorporate doctrine does not apply when government employees act outside the scope of their employment. Actions are outside the scope of employment when they are unlawful or for personal motives. In *DiLuzio v. Village of Yorkville,* 796 F.3d 604, 607-08 (6th Cir. 2015), the court found this exception applied where village employees were alleged to have conspired to force a building owner to divest the building by threatening demolition without following proper procedures for requiring demolition. The court held that a jury could infer that the officials had a plan to undertake unlawful actions to force the plaintiff to divest his property. *Id.* at 615-17.

Here, Baird has alleged that Defendants targeted their political opponents (including Baird), without regard for whether probable cause existed, in violation of Baird's constitutional rights, making Defendants' actions unlawful, for personal political reasons, and outside the scope of employment. ECF, ¶¶27, 90; *see also Axle*

*of Dearborn, Inc. v. Detroit IT, LLC*, No. 21-CV-10163, 2023 WL 3437803, at *16–

17 (E.D. Mich. May 12, 2023), *reconsideration denied,* No. 21-CV-10163, 2023 WL

5822754 (E.D. Mich. Aug. 15, 2023) (plaintiff properly alleged conspiracy claim

against defendants by alleging wrongful conduct).

### CONCLUSION AND RELIEF REQUESTED

For the reasons stated above, Plaintiff respectfully requests that this Honorable

Court deny Defendants' motions.

Respectfully Submitted By:

Dated: February 14, 2025

*/s/ Michael B. Rizik, Jr.*
Michael B. Rizik, Jr. (P33431)
RIZIK & RIZIK
Attorney for Plaintiff
9400 S. Saginaw St., Ste. E
Grand Blanc, MI 48439
Phone: (810) 953-6000
Cell: (810) 610-2673
lawyers@riziklaw.com


*/s/ Michael W. Edmunds*
Michael W. Edmunds (P55748)
Gault Davison, PC
Counsel for Plaintiff
8305 S. Saginaw St., Ste. 8
Grand Blanc, MI 48439
Phone: (810) 234-3633
medmunds@gaultdavison.com

*/s/ Nancy A. Temple*
Nancy A. Temple (IL-P6205448)
Katten & Temple, LLP
Co-Counsel for Plaintiff

21

209 S. LaSalle St., Ste. 950
Chicago, IL 60604
Phone: (312) 663-0800
ntemple@kattentemple.com

## CERTIFICATE OF SERVICE (E-FILING)

I certify that on February 14, 2025, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to all counsel of record.

*/s/ Nancy A. Temple*
Nancy A. Temple (IL-P6205448)
Katten & Temple, LLP
Co-Counsel for Plaintiff
209 S. LaSalle St., Ste. 950
Chicago, IL 60604
Phone: (312) 663-0800
ntemple@kattentemple.com