## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RICHARD L. BAIRD,

      Plaintiff,

v.

DANA M. NESSEL, FADWA A.
HAMMOUD, and KYM L. WORTHY,

      Defendants.

_____/

Case No.: 2:24-cv-11205

Judge: Robert J. White

Magistrate: Kimberly G. Altman

**42 USC 1983**
**Oral Argument Requested**

---

## PLAINTIFF'S ANSWER TO DEFENDANT ATTORNEY GENERAL DANA NESSEL'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(6)

Plaintiff Richard L. Baird ("Baird"), through his attorneys, concedes that Defendant Dana M. Nessel ("Nessel") has filed her Motion to Dismiss under FRCP 12(b)(6). Plaintiff rejects her claim that she enjoys absolute or qualified prosecutorial immunity for the actions enumerated in the Second Amended Complaint. Further, Baird would not concur with Nessel's Motion to Dismiss.

Respectfully Submitted By:

*/s/ Michael B. Rizik, Jr.*
Michael B. Rizik, Jr. (P33431)
RIZIK & RIZIK
Attorney for Plaintiff
9400 S. Saginaw St., Ste. E
Grand Blanc, MI 48439
Phone: (810) 953-6000

Cell: (810) 610-2673
lawyers@riziklaw.com

*/s/ Michael W. Edmunds*
Michael W. Edmunds (P55748)
Gault Davison, PC
Co-Counsel for Plaintiff
8305 S. Saginaw St., Ste. 8
Grand Blanc, MI 48439
Phone: (810) 234-3633
medmunds@gaultdavison.com

*/s/ Nancy A. Temple*
Nancy A. Temple (P6205448)
Katten & Temple, LLP
Co-Counsel for Plaintiff
209 S. LaSalle St., Ste. 950
Chicago, IL 60604
Phone: (312) 663-0800
ntemple@kattentemple.com

Dated: February 14, 2025

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RICHARD L. BAIRD,

      Plaintiff,

v.

DANA M. NESSEL, FADWA A.
HAMMOUD, and KYM L. WORTHY,

      Defendants.

_____/

Case No.: 2:24-cv-11205

Judge: Robert J. White

Magistrate: Kimberly G. Altman

**42 USC 1983**
**Oral Argument Requested**

## PLAINTIFF'S BRIEF OPPOSING DEFENDANT DANA NESSEL'S
## MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Michael B. Rizik, Jr. (P33431)
RIZIK & RIZIK
Attorney for Plaintiff
9400 S. Saginaw St., Ste. E
Grand Blanc, MI 48439
Phone: (810) 953-6000
Cell: (810) 610-2673
lawyers@riziklaw.com

Michael W. Edmunds (P55748)
Gault Davison, PC
Co-Counsel for Plaintiff
8305 S. Saginaw St., Ste. 8
Grand Blanc, MI 48439
Phone: (810) 234-3633
medmunds@gaultdavison.com

Nancy A. Temple (IL-P6205448)
Katten & Temple, LLP
Co-Counsel for Plaintiff
209 S. LaSalle St., Ste. 950

Chicago, IL 60604
Phone: (312) 663-0800
ntemple@kattentemple.com

Dated: February 14, 2025

## **TABLE OF CONTENTS**

Page

Table of Contents …………………………………………………...……………i

Index of Authorities ……………………………………………….…….…...iii

Concise Statement of Issues Presented ………………………….……...…..v

Controlling Or Most Appropriate Authority ……………...………………........v

Introduction …………………………………………………...….…………1

Statement of Facts ………………………………………………………………3

Legal Standard ……………………...……………………………………...4

Argument …………………………………………………………………..5

   I.   Attorney General Dana Nessel is not entitled to absolute prosecutorial immunity …………………….…....................................................................5

   II.   Attorney General Dana Nessel is not entitled to qualified immunity ………………………………………………………… ……...   12

       a.  Defendants violated Plaintiff's constitutional right to a probable cause determination before being restrained and deprived of other liberties,which was clearly established in January 2021 when the Plaintiff was indicted ……………………………………….....  13

       b.  The violation of State law criminal procedure can rise to a level where it violates the U.S. Constitution …………………………….….....15

       c.  Defendants' conduct was objectively unreasonable in light of the clearly established Constitutional rights …………..……………...16

   III.  Dana Nessel was personally involved in the underlying criminal prosecutions ………………………………………………...………………………....17

i

Conclusion and Relief Requested …………………………………..………..18

Certificate of Service (E-Filing)……………………………………………...19

# INDEX OF AUTHORITIES

**Cases**                                                                                                <u>Page</u>

*Albright v. Oliver*,
  510 U.S. 266 (1994).................................................................................14, 15

*Anderson v. Creighton*,
  483 U.S. 635 (1987)........................................................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................4, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................... 4

*Buckley v. Fitzsimmons*,
  509 U.S. 259 (1993)....................................................................................6, 10

*Burns v. Reed*,
  500 U.S. 478 (1991)......................................................................................... 5

*Courser v. Michigan House of Representatives*,
  404 F. Supp. 3d 1125 (W.D. Mich. 2019)....................................................... 4

*Gerstein v. Pugh*,
  420 U.S. 103 (1975)................................................................................ 14, 15

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982)........................................................................................13

*Hicks v. Oklahoma*,
  447 U.S. 343 (1980).....................................................................................5, 15

*Holloway v. Brush*,
  220 F.3d 767 (6th Cir. 2000) .........................................................................10

*Imbler v. Pachtman*,
  424 U.S. 409 (1976)......................................................................................... 6

*Kalina v. Fletcher*,
  522 U.S. 118 (1997)......................................................................................... 6

*League of Women Voters of Mich. v. Secretary of State*,
  508 Mich. 520, 975 N.W.2d 840 (2022)...........................................................16

*Pearson v. Callahan*,
  555 U.S. 223 (2008)........................................................................................13

*People v. Duncan*,
  388 Mich. 489, 201 N.W.2d 629 (1972).................................................8, 12, 16

*People v. Green*,
  322 Mich. App. 676, 913 N.W.2d 385 (2018) .................................11, 12, 16, 17

*People v. Kennedy*,
  2024 WL 2798900, 513 Mich. 1117, 6 N.W.3d 402 (2024)..........................16, 17

*People v. Peeler*,
   509 Mich. 381, 984 N.W.2d 80 (2022)........................................................passim
*People v. Robinson*,
   2024 WL 2981519 (Mich. App. June 13, 2024) ..........................................16, 17
*People v. Tracy*,
   186 Mich. App. 171, 463 N.W.2d 457, (1990) .................................................. 9
*Prida v. Option Care Enterprises, Inc.,*
   No. 23-3936, 2025 WL 460206 (6th Cir. Feb. 11, 2025) .................................... 4
*Prince v. Hicks,*
   198 F.3d 607 (6th Cir. 1999) ...........................................................................5, 6
*Rieves v. Town of Smyrna,*
   959 F.3d 678 (6th Cir. 2020) ............................................................................ 6
*Rondigo, LLC v. Twp. of Richmond,*
   641 F.3d 673 (6th Cir. 2011) ............................................................................ 4
*Saucier v. Katz*,
   533 U.S. 194 (2001)........................................................................................13
*Spurlock v. Thompson,*
   330 F.3d 791 (6th Cir. 2003) ............................................................................ 8
*Sturgill v. Am. Red Cross,*
   114 F.4th 803 (6th Cir. 2024) ........................................................................... 4
*Wood v. Dow Chem. Co.,*
   72 F.Supp.3d 777 (E.D. Mich. 2014).................................................................17

Statutes
42 USC § 1983 .........................................................................................10, 15
MCL 764 and 766 ...........................................................................................16
MCL 767.3.......................................................................................... 1, 2, 7, 11,12
MCL 767.4.......................................................................................... 1, 2, 7, 9, 11, 12
MCL 767.42........................................................................................10, 12

Rules
Fed. R. Civ. P 12(d) ......................................................................................... 4

## CONCISE STATEMENT OF ISSUES PRESENTED

1. Whether Defendant Dana Nessel enjoys absolute prosecutorial immunity from a lawsuit under 42 U.S.C. § 1983, when she and the other Defendants cut corners during the investigative phase of the criminal prosecution against Plaintiff, secretly indicted him, then refused to allow a preliminary examination in violation of Plaintiff's clearly established constitutional rights.

2. Whether Defendant Dana Nessel is entitled to qualified immunity from a lawsuit under 42 U.S.C. § 1983 when she cut corners during the investigative phase of the criminal prosecution against Plaintiff, secretly indicted him, then refused to allow a preliminary examination in violation of Plaintiff's clearly established constitutional rights.

3. Whether the Second Amended Complaint alleges that Defendant Dana Nessel was involved in the underlying criminal investigations and prosecutions.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

1. *Albright v. Oliver*, 510 U.S. 266; 114 S. Ct. 807 (1994);

2. *Hicks v. Oklahoma*, 447 U.S. 343; 100 S. Ct. 2227 (1980);

3. *Imbler v. Pachtman*, 424 U.S. 409; 96 S. Ct. 984 (1976);

4. *People v. Peeler*, 509 Mich. 381; 984 N.W.2d 80 (2022);

5. *Rieves v. Town of Smyrna,* 959 F.3d 678 (6th Cir. 2020);

6. *Prince v. Hicks,* 198 F.3d 607 (6th Cir. 1999);

7. 42 U.S.C § 1983; and

8. MCL 767.3, 767.4 & 767.42.

v

## INTRODUCTION

No one is above the law, regardless of what office they serve. The former Prosecutor severely abused his position of power...." A.G. Dana Nessel, September 13, 2023.

"No one is above the law...." A.G. Dana Nessel, November 6, 2024.

In June 2022, the Michigan Supreme Court rebuked Defendants, including Attorney General Dana Nessel and her assistants, for denying Plaintiff and others their federally constitutionally protected rights to procedural due process under the statutes of the State of Michigan. In a stinging denunciation of the prosecutors, Chief Justice Bridget M. McCormack wrote for the unanimous court that MCL 767.3 and MCL 767.4 were investigative statutes that required a preliminary examination after an indictment by the so-called one-person grand jury. *People v. Peeler*, 509 Mich. 381, 984 N.W.2d 80 (2022). In his concurring opinion, Justice Richard Bernstein stressed that "procedure matters" (*Id.* at 401, 984 N.W.2d at 89), confirming that Defendants did not afford Baird due process. Justice Bernstein further admonished Defendants: "The prosecution cannot simply cut corners to prosecute defendants more efficiently." *Id.* at 404, 984 N.W.2d at 90. Justice Bernstein wrote that the prosecutor Defendants may not whimsically eliminate "the guarantees underpinning that criminal process – such as the statutory right to a preliminary examination. . . ." *Id.*

1

*Peeler* and long-standing Michigan precedent confirmed the only reasonable and objective interpretations of Michigan law, specifically that MCL 767.3 and MCL 767.4 are investigative statutes that do not authorize prosecutors to use them for secret indictments, which Chief Justice McCormick referred to as "a Star Chamber comeback." *Peeler,* 509 Mich. at 386, 984 N.W.2d at 81. Defendants cannot shield themselves behind absolute or qualified prosecutorial immunity for systematically denying Plaintiff his constitutional due process rights and rights against unreasonable searches and seizures, which in this case includes the right to a preliminary examination. Taken as true, the facts in the Second Amended Complaint ("Complaint" or "ECF 41"), establish plausible claims for relief against Defendants for these constitutional rights violations. Defendants are not entitled as a matter of law to absolute or qualified immunity because the Complaint properly pleads facts showing that the Defendant prosecutor engaged in investigative functions and violated the clearly established due process rights of Baird. Defendants' Motions should be denied.

Defendants opened Pandora's box with their misfeasance and malfeasance, inviting endless cycles of retribution by successive administrations from the opposing political parties. This undermines the Constitutional due process system, potentially leading to chaos and violence. In W. B. Yeats's words, "the centre cannot hold." Mr. Baird stands crosswise to this threat and yells, "Stop!"

## STATEMENT OF FACTS

The Attorney General's statement of facts ignores critical facts pled in the Complaint, including the fact that the indictment of Baird was inconsistent with long-standing Michigan law. ECF 41, ¶¶30-54. Defendants were politically and personally motivated to pursue criminal prosecutions of Baird and others at all costs, disregarding Baird's and others' constitutional due process rights. ECF 41, ¶¶16-31. Defendants, all Democrats led by Nessel who took over after former Republican Governor Snyder and his leadership team, including Baird, left office, knew they lacked probable cause to prosecute Baird, but manipulated the process and violated his well-established rights to a preliminary examination hearing as part of the investigative process to avoid the proper scrutiny which would have revealed the lack of probable cause. ECF 41, ¶¶29-33.

Defendant Nessel was personally involved in the violation of Baird's Constitutional rights. ECF 41, ¶¶91-92. Nessel attended oral arguments before the Michigan Supreme Court in the underlying proceedings, which resulted in *Peeler's* opinion. ECF 41, ¶¶77, 94. Nessel met approximately 400 times regularly with Defendant Hammoud during the relevant time period of Baird's investigation and criminal case. ECF 41, ¶78 and Ex. 3 thereto. Nessel regularly received news reports of the Flint Water cases, and she significantly revised and commented on draft public statements to the media regarding Baird's and the other Flint Water cases. ECF 41,

3

¶¶79-80 and Ex. 4 thereto.

## LEGAL STANDARD

In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Prida v. Option Care Enterprises, Inc.,* No. 23-3936, 2025 WL 460206, at *3 (6th Cir. Feb. 11, 2025) (reversing dismissal). The complaint need only state a plausible claim for relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. In accepting the allegations as true, the Court "must take care to read the complaint's allegations 'as a whole.'" *Sturgill v. Am. Red Cross,* 114 F.4th 803, 807-08 (6th Cir. 2024) (citation omitted).

"[W]hen deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court's review is limited to the four corners of the pleading at issue." Fed. R. Civ. P 12(d); *Courser v. Michigan House of Representatives*, 404 F. Supp. 3d 1125, 1139 (W.D. Mich. 2019) (*citing Rondigo, LLC v. Twp. of Richmond,* 641 F.3d

673, 682 (6th Cir. 2011)). Accordingly, the allegations by Defendants outside the Complaint and its exhibits should be disregarded.[1]

**ARGUMENT**

**I.   Attorney General Dana Nessel is not entitled to absolute prosecutorial immunity.**

The Complaint asserts that Defendants, acting under the color of State law, violated the Plaintiff's federally protected Constitutional rights through multiple procedural infractions, including misusing the misnamed "one-person grand jury" to bypass conventional criminal charging protocols. These facts demonstrate that Defendants' actions were not prosecutorial but investigative, negating a claim of absolute prosecutorial immunity. Nessel asserts that, even if she was involved in the Plaintiff's criminal case (which she denies), her involvement occurred solely during the judicial phase of the proceedings. Nessel ignores, however, the facts that she was involved in the scheme to use the One-Man Grand Juror investigative process to violate Baird's due process rights because she knew from the First Wave of Flint Water prosecution cases that there was no probable cause. ECF 41, ¶¶25, 29 & 55. Nessel has not met the burden of establishing that she is entitled to absolute immunity. *Prince v. Hicks,* 198 F.3d 607, 611 (6th Cir. 1999) (citing *Burns v. Reed,*

---

[1] If this Court converts Defendants' Motion to a Rule 56 Motion, Plaintiff requests leave to file a Motion for certain discovery pursuant to Rule 56(d) in order to respond since much of the details are within Defendants' control.

500 U.S. 478, 486 (1991)).

Absolute immunity only protects a prosecutor if the "official's actions were within the scope of the immunity." *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976). Absolute immunity applies only when the prosecutor's actions are "intimately associated with the *judicial phase* of the criminal process." *Id.* at 430 (emphasis supplied); *Rieves v. Town of Smyrna,* 959 F.3d 678, 691 (6th Cir. 2020) (reversing dismissal of complaint based on absolute immunity); *Prince,* 198 F.3d at 613 (prosecutor involved in preliminary investigation phase did not meet burden of establishing absolute immunity). Absolute immunity does not extend to "a prosecutor's administrative and investigative conduct that 'do[es] not relate to [her] preparation for the initiation of a prosecution or for judicial proceedings.'" *Rieves,* at 691 (citing *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993)). *Buckley* held that a "prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." 509 U.S. at 274.

It is well established that absolute prosecutorial immunity is inapplicable when the prosecutor's actions are investigative. Thus, when a prosecutor engages in "investigative activities" like a policeman, holds a press conference, or is alleged to have fabricated evidence, he deserves no more immunity than a policeman would have, namely, only qualified immunity. *Buckley,* 509 U.S. at 273; *Kalina v. Fletcher*, 522 U.S. 118, 125-26 (1997). Similarly, as here, when a prosecutor misuses an

6

investigatory statute to pursue an indictment secretly, and systematically denies the criminal target of an investigation a statutorily-guaranteed preliminary examination hearing to establish probable cause, such misconduct and due process violations are not within the ambit of protected judicial advocacy functions.

Fabricating evidence is a part of the pre-judicial investigative function that violates due process by presenting falsehoods as truth and denying a defendant a fair chance to challenge the prosecution's case. Similarly, when an investigatory statute is misused to obtain an indictment without proper procedures, such as a probable cause conference and preliminary examination hearing, such misconduct by a prosecutor is an investigative function, not a judicial function. Both actions represent severe prosecutorial misconduct, breaching ethical and legal standards (*e.g.*, ABA Model Rules 3.3, 3.8, 1.1-1.3; MRPC 3.8), and abusing powers meant for investigation, not for acting as an advocate in the judicial phase.

In *Peeler,* the Michigan Supreme Court field-dressed Defendants' indictment of Baird when it reversed Defendants' refusal to allow a preliminary examination. 509 Mich. at 400, 984 N.W.2d at 88. *Peeler* held that MCL 767.3 and 767.4 authorized an investigation, among other things. However, "…they do not authorize the judge to issue indictments." *Id.* Here, Defendants intentionally misapplied investigative tools to secure an illegal indictment and to deny Baird a preliminary examination. In doing so, they exceeded their investigatory authority and did not act in the judicial

phase of the criminal process. "[W]here the role as advocate has not yet begun, namely prior to indictment, … absolute immunity does not apply." *Spurlock v. Thompson*, 330 F.3d 791, 799 (6th Cir. 2003). Here, the role as an advocate had not commenced because Defendants were still acting under the investigatory statutes before any indictment and then refused to allow a preliminary examination after obtaining an "indictment" under the One-Man Grand Jury investigatory statute.

Further, Defendants did not afford Baird any of the proper procedures that are the hallmarks of the judicial phase of a criminal case after the indictment out of the One-Man Grand Jury process. At the January 14, 2021, arraignment, Baird was not scheduled for a probable cause conference (ECF 41, ¶¶15, 116), which is mandatory after a felony arraignment and involves discussions on plea agreements, bail, and other pretrial matters. There was no probable cause hearing before Baird was deprived of his liberties. ECF 41, ¶¶71, 114, 118 & 132. Therefore, a preliminary examination would have been the first "probable cause hearing" for determining the amount of bail, weeding out groundless charges, and determining travel restrictions, thereby protecting the accused from the unnecessary deprivation of liberty. The Michigan Supreme Court said in *People v. Duncan*, 388 Mich. 489, 501, 201 N.W.2d 629 (1972):

> The primary purpose of a preliminary hearing is to ascertain whether there is reasonable ground to believe that a crime has been committed and whether there is just cause to believe the defendant committed it. Further purposes are said to be to perpetuate testimony, to determine

8

the amount of bail to be given by the prisoner in case he is held for trial, to weed out groundless or unsupported charges of grave offenses, and to relieve the accused of the degradation and the expense of a criminal *trial and of the deprivation of his liberty if there is no probable cause for believing that he is guilty of the crime*. (Emphasis supplied).

In *Peeler, supra,* at 392, the Michigan Supreme Court, relying on MCL 767.4, concluded that a "hearing on the complaint or indictment" required a preliminary examination. The long-established statutory language specifies that the judge having jurisdiction shall proceed with the case in like manner as upon formal complaint, which includes holding a preliminary examination. ECF 41, ¶¶36, 54. In sum, the Complaint establishes that Defendants never transitioned from the investigative to the judicial stage because they cut corners and circumvented the preliminary examination requirement. The transition from the investigatory to the judicial stage did not occur until after Baird's attorney moved on March 12, 2021, for a preliminary examination, which was denied and led to *Peeler, supra*. ECF 41, ¶63.

In contrast, the "judicial phase" begins when formal charges are *properly filed* with a court, marking the initiation of judicial criminal proceedings. This phase includes arraignments, a probable cause conference, preliminary examinations, trials, and sentencing. The judicial phase is characterized by applying constitutional protections, such as the right to a speedy trial, the right to counsel, and the right to confront witnesses. *People v. Tracy*, 186 Mich. App. 171, 177-78, 463 N.W.2d 457, (1990).

Here, the Defendants' conduct remained confined to the investigatory phase. The actions taken were confined to investigative activities without the oversight that characterizes the judicial phase, such as presenting evidence to an independent judge or a citizen grand jury. This absence of a formal judicial process underscores that Defendants were still engaged in investigative functions. Here, since there was no citizen grand jury, the proper process would have been to present evidence to an independent judge during a preliminary examination through MCL 767.42, allowing an independent person to assess whether probable cause existed for the binding over to trial and to deprive Baird of his various liberties.

According to *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000):

> The actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor. Qualified immunity represents the norm . . . . The question, then, is whether the prosecutors have carried their burden of establishing that they were functioning as 'advocates' when they performed the actions complained of." (Citing *Buckley*, 509 U.S. at 273-74).

Based on these facts alleged in the Complaint, Baird properly pleaded a plausible claim, *i.e.,* Baird has pled *"*factual content that allows the Court to draw the reasonable inference that the Defendants are liable for the misconduct alleged. . . ." *Ashcroft,* 556 U.S. at 678. The Complaint details the events leading up to Baird's indictment (ECF 41, ¶¶16-45), and alleges that Defendants violated 42 USC § 1983 by using the investigative statutes to indict Baird in violation of his constitutional rights. *Id.*, Counts I, II, and III.

10

The Complaint also establishes that upon the petition of Defendants, Hon. Duncan J. Beagle, Chief Judge of the Seventh Circuit Court in Genesee County, issued an Order appointing Judge David Newblatt to *investigate* the Flint water crisis and determine if charges should be brought. ECF 41, ¶¶32, 33. Defendants and the One-Man Grand Juror were authorized *to investigate - nothing more*!

Defendants contend that *People v. Green*, 322 Mich. App. 676, 913 N.W.2d 385 (2018), authorized their indictment of Baird by a one-person grand jury, and without a preliminary exam under MCL 767.3 and 767.4. However, *Green* is inapplicable. In that case, the defendant claimed ineffective assistance of counsel, arguing that his attorney failed to challenge violations of the rights to counsel and confrontation arising from the use of the one-person judicial inquiry. In rejecting the claim, the Michigan appellate court observed that the procedure:

> ...is used to determine whether criminal proceedings should be instituted against an individual by way of an indictment, *there is not yet a formal charge, preliminary hearing, indictment, information, or arraignment that indicates adversarial judicial proceedings have begun*... 322 Mich. App. at 685, 913 N.W.2d at 390 (emphasis supplied).

Despite its odd ruling, *Green* recognizes that the One-Man Grand Juror's role is confined to investigation rather than advocating. Furthermore, nothing in *Green*'s dicta implies that the judicial officer possesses charging authority; it indicates the opposite. *Green* explicitly emphasizes that the inquiry occurs before any "formal charge" or "preliminary hearing." Based on the inconsistency between the language

11

quoted above, the holding in *Green*, and the plain reading of the statutes resulted in the Michigan Supreme Court clarifying *Green's* dicta in *Peeler*.

Finally, Defendants cannot claim ignorance of the proper procedures. In *People v. Nicolas Lyon*, during the "First Wave" of criminal cases, Defendant Nessel and her office investigated Lyon under MCL 767.3 and 767.4. Assistant AG Todd Flood then proceeded with a preliminary examination[2] under MCL 767.42. Despite following proper procedure, on June 13, 2019, Defendant Nessel's office bizarrely announced the dismissal of the *Lyon* criminal case, after it was clear the court was about to rule there was a lack of probable cause. (ECF 41, ¶¶ 30-32; Nessel Br. at p.1).

Considering the statutes cited above, the facts, and the decisions in *Peeler, Green*, and *Duncan*, it is a reasonable inference from the facts in the Complaint and thus highly plausible that Defendants acted beyond their authority during the investigatory phase to violate Baird's constitutional rights because they knew they lacked probable cause. Nessel is not entitled to absolute immunity.

**II.   Attorney General Dana Nessel is not entitled to qualified immunity.**

---

[2] Plaintiff erroneously implied this was a "citizens grand jury" in the Second Amended Complaint. However, it was a preliminary examination. Nevertheless, it is a distinction without a difference because both procedures independently examine probable cause, and Baird was not afforded either. Thus, the argument above remains valid.

The doctrine of qualified immunity insulates governmental officials acting in their official capacities from liability for civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818-819 (1982). It is a judicially created right. For a constitutional right to be clearly established, "the law must be clear regarding the official's particular actions in the particular situation." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Qualified immunity involves a three-step inquiry. The first step is to determine whether a constitutional right has been violated. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the Court determines that the constitutional right has been violated, the second step is to determine whether the right that was violated was clearly established at the time. 533 U.S. at 201. If the Court finds that the Constitutional right was clearly established at the time of the violation, the third step is determining whether the official's conduct was "objectively unreasonable" in light of the established constitutional right. *Id.* The Supreme Court ruled in 2008 that the Court no longer needs to address the questions in the order spelled out in *Saucier. Pearson v. Callahan*, 555 U.S. 223 (2008).

**A. Defendants violated Plaintiff's constitutional right to a probable cause determination before being restrained and deprived of other liberties, which was clearly established in January 2021 when Plaintiff was indicted.**

*Gerstein v. Pugh,* 420 U.S. 103 (1975), was decided long before the Defendants prosecuted this Plaintiff. The plaintiffs in *Gerstein* were prisoners who sued county prosecutors in Florida claiming a constitutional right to a probable cause determination. The Supreme Court held: "Whatever procedure a State may adopt, it must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest." 420 U.S. at 125. Otherwise, the State violates the Fourth Amendment's prohibition against unreasonable searches and seizures.

The Supreme Court reiterated its *Gerstein* holding in *Albright v. Oliver*, 510 U.S. 266, 274 (1994): "The Fourth Amendment requires a judicial determination of probable cause as a prerequisite to any extended restraint on liberty following an arrest." The plaintiff in *Albright*, like Baird, was not merely charged with a crime but voluntarily submitted himself to arrest. *Id.;* EFC 41, ¶¶113, 118(b), 132 (b)).

There has never been a determination of probable cause for Baird before his liberties were deprived. He didn't get a grand jury of his peers and he didn't get a judicial determination of probable cause. A single judge simply issued an illegal indictment. He was ordered to appear or be arrested. He was fingerprinted and photographed, and wasn't free to leave during this process. He had to surrender his passport. He couldn't leave Michigan without permission, so he couldn't visit his

daughters out of State. He couldn't talk to any of the co-defendants who were his friends and colleagues. He wasn't allowed to possess a firearm. (ECF 41, ¶¶47, 114, 118(n)). He suffered all of these indignities and liberty deprivations without a probable cause determination, in violation of *Gerstein* and *Albright*.

**B. The violation of State law criminal procedure can rise to a level where it violates the U.S. Constitution.**

Contrary to Defendants' assertion, violation of state criminal procedural protections can violate the federal Constitution. *Hicks v. Oklahoma*, 447 U.S. 343 (1980), involved a man who was sentenced for a drug crime without a jury. He argued that the statute which allowed it was unlawful under Oklahoma law, and an Oklahoma Court of Appeals agreed. He sued under 42 U.S.C. §1983. The State's defense was that the statute at issue was "merely" a violation of a State procedural right of "exclusively State concern."

The U.S. Supreme Court disagreed, stating, "Where, however, a State has provided for the imposition of criminal punishment in the discretion of the trial jury, it is not correct to say that the defendant's interest in the exercise of that discretion is merely a matter of State procedural law. The defendant in such a case has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion." *Hicks,* 447 U.S. at 346. *Hicks* found this to be a violation of the Fourteenth Amendment's due process rights. *Hicks* held that the violation of a State law can also violate the

U.S. Constitution because there is a legitimate expectation that the State's criminal procedural statutes will be followed. In the underlying criminal case, Defendants violated MCR 6, MCL 764 and 766, which list a variety of rights that criminal defendants are entitled to, including the right to a probable cause conference and a probable cause hearing. Those rights were clearly established long before *Peeler*, and as early as 1972, when *Duncan, supra,* p. 8, was decided.

### C. Defendants' conduct was objectively unreasonable in light of the clearly established constitutional rights.

Defendants claim they relied on *People v. Green*, 322 Mich. App. 676, 913 N.W.2d 385 (2018). However, the applicable precedent was the plain language of the statute and the Michigan Supreme Court's 1972 decision in *Duncan*. When the Michigan Supreme Court stated it overruled *Green* in *Peeler,* it did not make new law. It simply restated the law as it was before *Green* misstated it in dicta. This incoherence was clarified in recent decisions such as *People v. Kennedy*, 2024 WL 2798900, 513 Mich. 1117, 6 N.W.3d 402 (2024), and *People v. Robinson*, 2024 WL 2981519 (Mich. App. June 13, 2024).

*Kennedy* and *Robinson* both addressed whether to apply *Peeler* retroactively. A decision is not applied retroactively if "[t]he decision amounts to a rule of law." *League of Women Voters of Mich. v. Secretary of State*, 508 Mich. 520, 566, 975 N.W.2d 840, 865 (2022). "A rule of law is new for purposes of resolving the question of its retroactive application…either when an established precedent is overruled or

16

when an issue of first impression is decided." *Id.* Both *Kennedy* and *Robinson* determined that *Peeler* did not establish a new rule of law. *Robinson, supra*, at *4; *Kennedy*, 513 Mich. at 1118.

Defendants not only should have known that the *Green* dicta was wrong, but they did know it was wrong. In a parallel criminal case, they prosecuted Nicolas Lyon, (,ECF 41 ¶¶30, 125, 126) Procedurally, they did it correctly, *i.e.,* they didn't use the one-man grand jury, and there was a preliminary examination. *Lyon* challenged probable cause, and Defendants voluntarily dismissed the charges when it became clear that the judge would dismiss Lyon's criminal case for lack of probable cause. Defendants then manipulated the investigative statute in a different, secretive approach as to Baird to avoid having the charges against him dismissed for lack of probable cause, and violated his rights in that process.

## III.   **Dana Nessel was personally involved in the underlying criminal prosecutions.**

Nessel argued she was not involved in the underlying criminal cases, including Baird's, incorrectly claiming the Second Amended Complaint "rests on conclusory statements." Nessel Br., pp. 22-24. Paragraphs 77 to 80, with exhibits attached (ECF 41), allege *facts* this Court must accept as true. It is plausible, based on Nessel's political motivations, personal involvement in 400 meetings, and revision of press releases about the criminal investigation, that she was personally involved in violating Baird's constitutional rights. *See Wood v. Dow Chem. Co.,* 72 F.Supp.3d

17

777, 783 (E.D. Mich. 2014) (*Iqbal/Twombly* "standard is forgiving: 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable,'" particularly when facts are in the possession and control of the defendant).

## CONCLUSION AND RELIEF REQUESTED

For the reasons stated above, Plaintiff asks this Honorable Court to deny Nessel's motion to dismiss.

Respectfully Submitted By:

Dated: February 14, 2025
**/s/ Michael B. Rizik, Jr.**
Michael B. Rizik, Jr. (P33431)
RIZIK & RIZIK
Attorney for Plaintiff
9400 S. Saginaw St., Ste. E
Grand Blanc, MI 48439
Phone: (810) 953-6000
Cell: (810) 610-267
lawyers@riziklaw.com

Dated: February 14, 2025
**/s/ Michael W. Edmunds**
Michael W. Edmunds (P55748)
Gault Davison, PC
Counsel for Plaintiff
8305 S. Saginaw St., Ste. 8
Grand Blanc, MI 48439
Phone: (810) 234-3633
medmunds@gaultdavison.com

Dated: February 14, 2025
**/s/ Nancy A. Temple**
Nancy A. Temple (IL-P6205448)
Katten & Temple, LLP
Co-Counsel for Plaintiff

18

209 S. LaSalle St., Ste. 950
Chicago, IL 60604
Phone: (312) 663-0800
ntemple@kattentemple.com

## CERTIFICATE OF SERVICE (E-FILING)

I certify that on February 14, 2025, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to all counsel of record.

*/s/ Nancy A. Temple*

Nancy A. Temple (IL-P6205448)
Katten & Temple, LLP
Co-Counsel for Plaintiff
209 S. LaSalle St., Ste. 950
Chicago, IL 60604
Phone: (312) 663-0800
ntemple@kattentemple.com
