UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD L. BAIRD,

      Plaintiff,

v.

DANA M. NESSEL, et al.,

      Defendants.

Case No. 24-cv-11205

Honorable Robert J. White

---

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO
DISMISS THE SECOND AMENDED COMPLAINT**

---

I.    <u>Introduction</u>

Richard Baird commenced this 42 U.S.C. § 1983 wrongful prosecution action against Dana Nessel, Michigan's attorney general, Fadwa Hammoud, the state's former solicitor general, and Kym Worthy, Wayne County's prosecuting attorney. The operative complaint alleges, among other things, that defendants resorted to a state criminal procedure that denied Baird a preliminary examination and instead impermissibly authorized a one-person grand jury, consisting of a sole state circuit judge to indict him.

Before the Court are defendants' motions to dismiss the second amended complaint. (ECF Nos. 46, 48). Baird responded. (ECF Nos. 51-52). Defendants

filed their associated replies. (ECF Nos. 53-54).  The Court will decide the motions

without a hearing pursuant to E.D. Mich. LR 7.1(f)(2).  Because both prosecutorial

and qualified immunity shield defendants from liability, their motions are granted

and the second amended complaint is dismissed with prejudice.

II.    <u>Background</u>

      *A.    Factual History*

Former Michigan Governor Rick Snyder hired Baird as his "Senior Advisor

and Transformation Leader" in October 2013. (ECF No. 41, PageID.747, ¶ 18).

Baird seems to have played the role of statewide troubleshooter.  He advised the

governor on issues concerning "financially distressed city turnaround strategies," to

"public safety and infrastructure," to "economic/workforce development and

education reform." (*Id.*, ¶ 21).

Then came the Flint Water Crisis.  At that time, Governor Snyder tapped Baird

to be the team leader for "Mission Flint," a state-municipal partnership created to

"address problems arising from the water crisis and assist with economic and

workforce development, [and] medical and education initiatives." (*Id.*, PageID.748,

¶ 24).  When investigators began to inquire about official misconduct stemming from

the water crisis, Baird claims that he "voluntarily cooperated by disclosing

documents and information" to Special Counsel Todd Flood and that none of his

activities "could possibly form the basis of any sort of misconduct or criminal

investigation." (*Id.*).  Although Baird remained outside Flood's crosshairs, that all changed when Michigan Attorney General Dana Nessel assumed office. (*Id.*, PageID.749, ¶¶ 26-27).

According to Baird, Nessel fired Flood in April 2019 and initiated a series of politically-motivated prosecutions in coordination with her solicitor general, Fadwa Hammoud, and Wayne County Prosecutor Kym Worthy. (*Id.*, ¶¶ 27-28).  Baird now became the target of a political witch hunt masked as a legitimate criminal prosecution.  As the central exhibit in this narrative, Baird points to the seldom-used procedure defendants employed to investigate and, ultimately, prosecute him – Michigan's one-person grand jury statute. *See* Mich. Comp. Laws §§ 767.3-4.

On January 9, 2020, a state circuit judge granted Hammoud's application for the appointment of a one-person grand jury. (ECF No. 41-1, PageID.789-92).  The order appointed another circuit judge as the one-person grand juror, vested with "judicial investigatory" powers. (*Id.*, PageID.790, ¶ 1; *see also id.*, PageID.789-91, ¶¶ 1-4).  On January 8, 2021, the state circuit judge indicted Baird on charges of perjury, misconduct in office, obstruction of justice, and extortion. (ECF No. 41-2, PageID.794-95).  He issued an arrest warrant after finding that "there is probable cause to believe" Baird committed the charged offenses. (ECF No. 29-3, PageID.542).  A third state circuit judge arraigned Baird on January 14, 2021. (ECF No. 29-4, PageID.544-57).

3

Baird then moved to proceed upon a formal complaint and to remand the case to a state district court for preliminary examination. (ECF No. 41, PageID.762, ¶ 63).  The state circuit judge denied the motion. (*Id.*, ¶ 65).  Baird applied for leave to appeal with the Michigan Court of Appeals unsuccessfully, and after that, applied to the Michigan Supreme Court for the same relief. (*Id.*, PageID.764, ¶¶ 72-74).  The state supreme court consolidated Baird's appeal with two other similarly situated defendants and reversed the state circuit court after holding that Baird was entitled to a preliminary examination. *See People v. Peeler*, 509 Mich. 381, 400 (2022).

On remand, the state circuit judge dismissed the indictment as void. https://micourt.courts.michigan.gov/case-search/court/C07/case-details?caseId=2021-0000047375-FH&tenantKey=C07-25-0626170-0000&searchUrl=%2Fcourt%2FC07%2Fsearch%3FlastName%3DBaird%26firstName%3DRichard%26page%3D1. (last visited May 27, 2025).  The Michigan Court of Appeals denied the prosecution's application for leave to appeal the dismissal. (ECF No. 41, PageID.769, ¶ 97).  And the saga concluded on September 20, 2023, when the Michigan Supreme Court denied the prosecution's application for the same relief. (*Id.*, ¶ 98).

B.    *Procedural History*

Baird filed this lawsuit on May 6, 2024. (ECF No. 1).  Defendants moved to dismiss the complaint. (ECF Nos. 20-21).  And Baird moved to amend it. (ECF No.

25). The Court conducted a hearing on the motions on November 14, 2024. (ECF No. 39). In an opinion and order issued the following day, the Court (1) granted Baird's motion to file an amended complaint, (2) denied defendants' motions to dismiss the initial complaint as moot, and (3) granted Baird leave to file a second amended complaint within 21 days of the opinion and order's entry on the docket. (ECF No. 37).

Baird opted to file a second amended complaint. (ECF No. 41). It alleges violations of the Fourth Amendment's probable cause requirement for pretrial confinement, deprivations of due process under the Fifth and Fourteenth Amendments to the United States Constitution, and conspiracy. (*Id.*, PageID.771-84, ¶¶ 109-45). Defendants now move to dismiss the second amended complaint with prejudice. (ECF No. 46, PageID.887; ECF No. 48, PageID.940).

## III. Legal Standards

When reviewing a motion to dismiss the complaint for failing to state a claim, the Court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) (cleaned up); *see also* Fed. R. Civ. P. 12(b)(6). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead sufficient factual matter to render the legal claim plausible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir.

2010) (quotation omitted).   The Court may consider "exhibits attached to the complaint" to decide the motion. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

IV.    Analysis

    *A.    Prosecutorial Immunity*

At the outset, defendants contend that the broad doctrine of prosecutorial immunity shields them from suit entirely. (ECF No. 46, PageID.868-73; ECF No. 48, PageID.924-32).   Prosecutors receive absolute immunity for conduct directly related to initiating and pursuing criminal charges. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *see also Ireland v. Tunis*, 113 F.3d 1435, 1446 (6th Cir. 1997). Officials seeking to invoke prosecutorial immunity bear the burden of showing that it is warranted. *See Cooperrider v. Woods*, 127 F.4th 1019, 1027 (6th Cir. 2025). Whether prosecutorial immunity insulates a prosecutor's specific actions from legal challenge is a question of "function" (*i.e.*, the type of conduct the prosecutor engage in) and "time" (*i.e.*, when during the criminal process did the prosecutor engage in the alleged conduct).

With respect to the "function" prong, courts examine "the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (quotation omitted).   Federal courts "must identify precisely the wrongful acts that a prosecutor has taken and classify those

acts according to their function." *Jackson v. City of Cleveland*, 64 F.4th 736, 743 (6th Cir. 2025) (quotation omitted); *see also Adams v. Hanson*, 656 F.3d 397, 403 (6th Cir. 2011). "The critical inquiry is how closely related is the prosecutor's challenged activity to their role as an advocate intimately associated with the judicial phase of the criminal process." *Jackson*, 64 F.4th at 743 (cleaned up); *see also Ireland*, 113 F.3d at 1443.

"The judicial phase of the criminal process" is where the temporal component enters the analysis. "[T]he timing of the actions taken" is essential to gauging when prosecutorial immunity applies. *Jackson*, 64 F.4th at 743. The prosecutor's role as an advocate may begin as early as the "[i]nvestigative acts undertaken in direct preparation of judicial proceedings, including the professional evaluation of evidence." *Ireland*, 113 F.3d at 1445; *see also Buckley*, 509 U.S. at 273. And the judicial phase of the criminal process extends from that point forward, through trial, through post-conviction proceedings, until prosecutors are "no longer personally involved in" adversarial proceedings in their capacity as an advocate. *Spurlock v. Thompson*, 330 F.3d 791, 799 (6th Cir. 2003); *see also Jackson*, 64 F.4th at 744.

Baird's position is that defendants resorted to the one-person grand jury statute to obtain an indictment, as opposed to filing a criminal complaint, because they wanted to avoid a preliminary examination that would test the evidentiary

sufficiency of their charges. (ECF No. 41, PageID.784, ¶¶ 141-43).  This theory of liability, though, runs smack into prosecutorial immunity.

The initiation of criminal proceedings "fall[s] squarely within the aegis of absolute prosecutorial immunity." *Ireland*, 113 F.3d at 1446; *see also Nouri v. County of Oakland*, 615 F. App'x 291, 301 (6th Cir. 2015).  And so does a prosecutor's decision regarding the method or manner of initiating criminal charges, since this function "arise[s] from [the prosecutor's] role as an advocate" and occurs at the very inception of the judicial phase of the criminal process. *Maps v. Miami Dade State Atty.*, 693 F. App'x 784, 786 (11th Cir. 2017) (affirming dismissal, on prosecutorial immunity grounds, of claim that an assistant state attorney "violated Maps's constitutional rights by charging him via an information rather than an indictment."); *see also Stephenson v. Washington*, No. 95-35138, 1995 U.S. App. LEXIS 27041, at *2-3 (9th Cir. Sep. 8, 1995) (deciding that prosecutorial immunity barred claim that county prosecutors violated the plaintiff's constitution right "to not be charged with a crime absent a grand jury indictment when they filed charges based on an information instead of an indictment."); *Thomsen v. City of New York*, No. 15-2668, 2016 U.S. Dist. LEXIS 17079, at *13 (S.D.N.Y. Feb. 11, 2016) (ruling that "the decision to hold a preliminary hearing instead of seeking a grand jury indictment is central to prosecutorial discretion.").

Baird disagrees.  In his view, defendants never transitioned from investigators to advocates since the judicial phase of his criminal case never included a preliminary examination – "the procedural mechanism that transitions a case from the investigative phase to the judicial phase." (ECF No. 41, PageID.762, ¶ 62; *see also id.*, ¶ 61; ECF No. 51, PageID.966-67; ECF No. 52, PageID.1000-01).  This argument misconceives both the function and timing aspects of prosecutorial immunity.

Defendants assumed their roles as advocates *even before* the state circuit judge indicted Baird, *i.e.*, with their "[i]nvestigative acts undertaken in direct preparation of judicial proceedings, including the professional evaluation of evidence." *Ireland*, 113 F.3d at 1445; *see also Buckley*, 509 U.S. at 273.  And their subsequent initiation of criminal proceedings against Baird – through the one-person grand jury indictment – is a "core activity protected by absolute [prosecutorial] immunity." *Nouri*, 615 F. App'x at 301.  The Michigan Supreme Court's decision to invalidate this procedure afterwards, in *People v. Peeler*, 509 Mich. 381, 400 (2022), does not render prosecutorial immunity unavailable. *See Ireland*, 113 F.3d at 1444 (holding that the state court's "colorable claim of jurisdiction is sufficient for absolute prosecutorial immunity purposes.").

Because defendants acted in their capacity as advocates when they decided to initiate criminal proceedings against Baird through a one-person grand jury

indictment, and that decision occurred during the "judicial phase of the criminal process," absolute prosecutorial immunity bars all the claims asserted against them.

B.     *Qualified Immunity*

Absolute prosecutorial immunity is the exception to the general rule that qualified immunity "is sufficient to protect government officials in the exercise of their duties." *Burns v. Reed*, 500 U.S. 478, 486-87 (1991); *see Jackson*, 64 F.4th at 743.  Assuming prosecutorial immunity did not preclude Baird's claims, he would still have to surmount the affirmative defense of qualified immunity. *See Taylor v. Davidson Cty. Sheriff's Dep't.*, 832 F. App'x 956, 959 (6th Cir. 2020) (stating that "[q]ualified immunity is an affirmative defense").  The second amended complaint falls short of this task as well.

1.     Qualified Immunity Overview

Section 1983 civil rights plaintiffs must establish that a person acting under the color of state law deprived them of a guaranteed right under the United States Constitution or federal law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-56 (1978). Government officials typically invoke the defense of qualified immunity to shield themselves from personal liability "for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006).  Whether an official should

be entitled to qualified immunity is a legal question for the courts to decide. *Elder v. Holloway*, 510 U.S. 510, 516 (1994); *see also Tucker v. City of Richmond*, 388 F.3d 216, 219 (6th Cir. 2004).

Federal courts use a two-pronged test to evaluate whether qualified immunity is appropriate.  The relevant inquiry is (1) "whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated," and (2) "whether that right was clearly established." *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009) (quotation omitted).  While the plaintiff bears the ultimate burden of showing that the official is not entitled to qualified immunity, *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006), the defendant has the initial burden of showing that his conduct was objectively reasonable under then-existing law. *Tucker*, 388 F.3d at 220.

The burden then shifts to the "plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct." *Gardenhire*, 205 F.3d at 311; *see also Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992).  The violated right must have been "clearly established at the time" of the incident. *Vanderhoef v. Dixon*, 938 F.3d 271, 278 (6th Cir. 2019).  That means courts may "consider only the legal rules existing when the challenged conduct occurred, not legal rules adopted by later caselaw." *Lawler v.*

*Hardeman Cnty.*, 93 F.4th 919, 926 (6th Cir. 2024) (quotation omitted); *see also Kenjoh Outdoor, LLC v. Marchbanks*, 23 F.4th 686, 694 (6th Cir. 2022) (requiring courts to "look to the law at the time the official acted" when ascertaining whether a right is clearly established).

Although "it is generally inappropriate" to conclude that an official is "entitled to qualified immunity at the early stage of a Rule 12 motion," *Saalim v. Walmart, Inc.*, 97 F.4th 995, (6th Cir. 2024) (quotation omitted), district courts have "a duty to address qualified immunity when it is properly raised prior to discovery." *Myers v. City of Centerville*, 41 F.4th 746, 758 (6th Cir. 2022); *see also Skousen v. Brighton High Sch.*, 305 F.3d 520, 527 (6th Cir. 2002) ("the district court was required to determine – prior to permitting further discovery – whether Skousen's complaint alleged the violation of a constitutional right at all, and if so, whether that right was clearly established at the time of the alleged violation."). "This is especially true where granting relief to the plaintiff can only be done by recognizing a novel constitutional right." *Crawford v. Tilley*, 15 F.4th 752, 766 (6th Cir. 2021); *see also Doe v. Purdue Univ.*, 928 F.3d 652, 665 (7th Cir. 2019). In that situation, "the existence of qualified immunity is a purely legal question that the court can address on a motion to dismiss." *Doe*, 928 F.3d at 665 (quotation omitted).

2.      Clearly Established Law – The Fourth Amendment

Without deciding whether defendants violated Baird's rights under the Fourth Amendment to the United States Constitution (*i.e.*, the first qualified immunity prong), one thing is clear: they did not violate a clearly established Fourth Amendment right at the time the state circuit court judge indicted Baird in January 2021. *See O'Malley v. City of Flint*, 652 F.3d 662, 667 (6th Cir. 2011) (stating that the qualified immunity requirements may be considered in any order).

To start with, Baird asserts that he was constitutionally entitled to a preliminary examination. (ECF No. 41, PageID.776).  That right does not exist under the federal constitution. *See United States v. Mulligan*, 520 F.2d 1327, 1329 (6th Cir. 1975) (holding that "[t]here is no constitutional requirement for [a preliminary] examination."); *see also Patterson v. Gray,* No. 20-3872, 2020 U.S. App. LEXIS 35372, at *5-6 (6th Cir. Nov. 9, 2020) (same); *Dillard v. Bomar*, 342 F.2d 789, 790 (6th Cir. 1965).

And while "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest," that finding may be made by a neutral and detached magistrate *or a grand jury*. *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975); *see also id.* at 117 n.19; *Manuel v. City of Joliet*, 580 U.S. 357, 365 (2017).  Defendants satisfied this requirement when they obtained an indictment from the state circuit judge and he issued a warrant for

13

Baird's arrest upon a finding of probable cause. (ECF No. 29-3, PageID.541-42; ECF No. 41-2, PageID.794-95). *See Baker v. McCollan*, 443 U.S. 137, 143 (1979) ("A person arrested pursuant to a warrant issued by a magistrate on a showing of probable cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial."); *see also Cox v. City of Jackson*, 811 F. App'x 284, 286 (6th Cir. 2020).

Insofar as Baird points to the Michigan Supreme Court's decision in *Peeler* as the source of his right to a preliminary examination, that case located the right in Michigan's one-person grand jury statute – a state provision – not the federal constitution or any other federal law. *Id.* at 391 ("We agree with Peeler and Baird that *the statutory language* provides a right to a preliminary examination.") (emphasis added); *see also* Mich. Comp. Laws §§ 767.3-4. And violations of state law are not actionable under section 1983. *See Huron Valley Hospital, Inc. v. Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989) (holding that 42 U.S.C. § 1983 "does not cover official conduct that allegedly violates *state* law.") (emphasis in original).

At any rate, Baird's *state* statutory right to a preliminary examination was not clearly established when the state circuit judge indicted him January 2021. The governing law at that time – the Michigan Court of Appeals' decision in *People v. Green*, 322 Mich. App. 676 (2018) – dispensed with the need for a preliminary examination after the issuance of a one-person grand jury indictment on the ground

that they "both serve the same function: to determine whether there is probable cause to believe that a person committed a crime." *Id.* at 687.  Because *Peeler* expressly overruled *Green* almost a year and a half after Baird's indictment, defendants lacked "fair notice" that depriving Baird of a preliminary examination under the one-person grand jury statute "was unlawful." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quotation omitted); *see also Peeler*, 509 Mich. at 394 ("We overrule *Green*.").

Since defendants did not violate a clearly established federal constitutional right when they obtained a one-person grand jury indictment against Baird in January 2021, they are entitled to qualified immunity on his Fourth Amendment claim.  That cause of action must, therefore, be dismissed.

3.    Constitutional Violation – The Fourteenth Amendment

Switching the order of the qualified immunity analysis to address the Fourteenth Amendment claim, the second amended complaint fails to allege a plausible violation of that amendment's Due Process Clause.

Section 1 to the Fourteenth Amendment prohibits state officials from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  The question here is whether the Due Process Clause supplies the appropriate framework for resolving a federal constitutional challenge to a state's procedures for assessing probable cause to support pretrial deprivations of liberty.  It does not.

The "threshold inquiry in a §1983 suit . . . requires courts to identify the specific constitutional right at issue." *Manuel*, 580 U.S. at 370 (quotation omitted). As far back as *Gerstein v. Pugh*, 420 U.S. 103 (1975), the United States Supreme Court held that "[b]oth the standards *and procedures* for arrest and detention" are rooted in "the Fourth Amendment and its common-law antecedents." *Id.* at 111 (emphasis added). Since then, the Court has consistently resisted the efforts of jurists who believe that "the Due Process Clause offer[s] the better framework." *Manuel*, 580 U.S. at 365; *see id.* at 363, 366-68 (rejecting the Seventh Circuit's view that, after arrest, "the Fourth Amendment gives way to the due process clause as [the] basis for challenging" an unlawful detention); *Albright v. Oliver*, 510 U.S. 266, 274 (1994) ("The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it.").

Even Baird has difficulty extracting his due process claim from the Fourth Amendment's lexicon. The second amended complaint's due process allegations reference the Fourth Amendment's requirement – "probable cause" – prolifically. For instance, Baird alleges repeatedly that defendants "misus[ed]" the one-person grand jury statute to "bring felony charges" against him "that lacked probable cause." (ECF No. 41, PageID.780, ¶ 132(a)-(c)). And he claims that defendants obtained the state circuit judge's indictment "without probable cause." (*Id.*,

PageID.781, ¶ 132(k)).  "Probable cause" means one thing: the invoking party is appealing to the protections afforded under the Fourth Amendment and no place else.

Baird contends that the due process claim tracks a different theory – that defendants violated *federal* due process guarantees when they failed to properly adhere to *Michigan*'s one-person grand jury statute. (*Id.*, PageID.778, ¶ 124).  The problem with this argument is twofold.  *First*, defendants followed the one-person grand jury statute in accordance with the governing interpretation of that provision when they instituted criminal proceedings against Baird. *See People v. Green*, 322 Mich. App. 676 (2018).  And *second*, assuming defendants did somehow depart from the statute's procedural requirements, the "[v]iolation of a state's formal procedure . . . does not in and of itself implicate constitutional due process concerns." *Lauve v. Winfrey*, 852 F. App'x 184, 186 (6th Cir. 2021) (quotation omitted); *see also Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1423 (6th Cir. 1996).

In any event, Michigan law provided Baird an adequate post-deprivation remedy to challenge those procedural defects through state judicial review. *See* Mich. Ct. Rule 7.205 (governing applications for leave to appeal to the Michigan Court of Appeals).  Baird not only pursued this exact remedy; he ultimately prevailed when the Michigan Supreme Court ruled in his favor and directed the state circuit court to conduct a preliminary examination. *See Peeler*, 509 Mich. at 387, 395, 400.

For all these reasons, the Fourteenth Amendment due process claim cannot withstand Rule 12(b)(6) dismissal.

4.     Constitutional Violation – The Fifth Amendment

The Fifth Amendment to the United States Constitution provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  The Fifth Amendment's Due Process Clause "applies only to actions [taken] by the federal government" as opposed to those of state officials. *Johnson v. City of Kentwood*, No. 20-1568, 2021 U.S. App. LEXIS 7518, at *10 (6th Cir. Mar. 15, 2021); *see also Scott v. Clay County*, 205 F.3d 867, 873 n.8 (6th Cir. 2000).  Because defendants are state and county officials their purported misconduct falls outside the Fifth Amendment's due process safeguards.

C.     *Civil Conspiracy*

Lastly, the second amended complaint alleges that defendants conspired to violate Baird's "constitutional rights under the Fourth, Fifth, and Fourteenth Amendments." (ECF No. 41, PageID.784, ¶ 141).  Since he did not suffer an underlying constitutional harm, Baird cannot proceed with a civil conspiracy claim under section 1983. *See Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009) ("Wiley cannot succeed on a conspiracy claim because there was no

18

underlying constitutional violation that injured her."); *see also Bauss v. Plymouth*

*Twp.*, 233 F. App'x 490, 500 (6th Cir. 2007) (same).[1] Accordingly,

IT IS ORDERED that defendants' motions to dismiss the second amended

complaint (ECF Nos. 46, 48) are granted.

---

[1] One final aside.  Defendants maintain that Baird's claims are time-barred since they accrued on January 14, 2021 at the latest (the date of his arraignment) and he filed the initial complaint on May 6, 2024 – more than three years later. (ECF No. 46, PageID.881; ECF No. 54, PageID.1053-54). *See Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 867 n.8 (6th Cir. 2020) ("Section 1983 claims brought in Michigan are subject to its three-year statute of limitations."); *see also* Mich. Comp. Laws § 600.5805(2).   This contention lacks merit, at least with respect to the Fourth Amendment claim.

That cause of action is most akin to a section 1983 malicious prosecution claim because Baird is asserting an unlawful deprivation of his liberty after legal process already issued, *i.e.*, when the state circuit judge indicted him.  And "[f]rom that point on, a plaintiff relying on the law of torts to challenge any continuing detention must assert a malicious-prosecution claim." *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1162 (6th Cir. 2021) (quotation omitted); *see also Wallace v. Kato*, 549 U.S. 384, 390 (2007); *Heck v. Humphrey*, 512 U.S. 477, 484 (1994) (stating that a malicious prosecution claim, "unlike the related cause of action for false arrest or imprisonment, . . . permits damages for confinement imposed pursuant to legal process.").

Since the limitations period for a section 1983 malicious prosecution claim does not accrue "until the favorable termination of criminal proceedings," the statute of limitations did not begin to run until the Michigan Supreme Court denied the prosecution's application for leave to appeal the dismissal of the indictment on September 20, 2023. *King v. Harwood*, 852 F.3d 568, 579 (6th Cir. 2017) (holding that the limitations period for a section 1983 malicious prosecution claim did not begin to run until the plaintiff's "indictment was dismissed").  As a result, the filing of the initial complaint on May 6, 2024 fell well within the three-year statute of limitations.

IT IS FURTHER ORDERED that the second amended complaint (ECF No.

41) is dismissed with prejudice.


Dated: May 30, 2025                    s/ Robert J. White_____
                                       Robert J. White
                                       United States District Judge